# EXHIBIT A

1972-75

# EXCESS OF LOSS REINSURANCE AGREEMENT
## $250,000 Excess $250,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH NEW YORK, NEW YORK (including the liability of the Gerling Global Reinsurance Company, Toronto, Ontario, Canada, but only in respect of their interest in the business the subject matter hereof) (hereinafter called the "Company") of the one part,

and

the Companies specified in the respective Interests and Liabilities Agreement to which this Agreement is attached (hereinafter called the "Reinsurer"), of the other part.

WHEREAS the Company is desirous of reinsuring certain of its liabilities arising under business accepted by it in its Facultative Property and Casualty Departments and under its Casualty Excess of Loss Treaties. NOW, THEREFORE, it is hereby agreed by and between the parties:

## ARTICLE I

INSURING CLAUSE

(A) FACULTATIVE PROPERTY-DEPARTMENT

The Reinsurer agrees for the consideration hereinafter appearing to pay to the Company up to but not exceeding $250,000 (Twohundredfifty thousand Dollars) ultimate net loss each and every loss in respect of each and every risk in excess of $250,000 (Twohundredfiftythousand Dollars) each and every loss in respect of each and every risk in the Facultative Property Department covering the perils of fire, allied lines and inland marine, including multiple peril and package policies. All risks will be written by the Company either on an excess of loss reinsurance basis, or on a proportional basis when the original policy is written with a loss deductible of $100,000 (Onehundredthousand Dollars) or more. The Company shall be the sole judge as to what constitutes one risk.

(B) 1. FACULTATIVE CASUALTY DEPARTMENT

The Reinsurer agrees for the consideration hereinafter appearing to pay to the Company up to but not exceeding $250,000 (Twohundredfiftythousand Dollars) ultimate net loss each and every accident and/or occurrence any one original insured in excess of $250,000 (Twohundredfiftythousand Dollars ultimate net loss each and every accident and/or occurrence any one original insured under one or more original policies.

(B) 2.

As respects Products Bodily Injury Liability Insurance assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $250,000 (Twohundredfiftythousand Dollars) aggregate ultimate net loss in excess of $250,000 (Twohundredfiftythousand Dollars) aggregate ultimate net loss in respect of each annual period any one original insured under one or more original policies.

The term "each and every accident and/or occurrence" as used herein shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a) Products Liability, said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product".

(b) All other classes of Bodily Injury Liability, said term shall also be understood to mean, as regards each original insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency".

(c) Property Damage (other than Automobile and Products) risks, said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same."

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that,

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (twelve) consecutive months, and

(ii) the Company may elect the date on which the period of not exceeding 12 (twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (twelve) consecutive months then each consecutive period of 12 (twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

(C) CASUALTY EXCESS OF LOSS TREATIES

The Reinsurer agrees for the consideration hereinafter appearing to pay to the Company up to but not exceeding $250,000 (Twohundredfiftythousand Dollars) ultimate net loss each and every accident and/or occurrence any one treaty in excess of $250,000 (Twohundredfiftythousand Dollars) ultimate net loss each and every accident and/or occurrence in respect of any one treaty. All treaties covered hereunder shall be declared quarterly by the Company to the Reinsurer, specifying:

the contract number
the underlying retention and limit of liability
the estimated annual premium.

ARTICLE II

EXCLUSIONS

1. General, applicable to A, B, C

a) crop hail
b) accident and health
c) fidelity
d) surety
e) credit
f) life stock mortality
g) nuclear risks as per attached wording
h) risks of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

A. Applicable to FACULTATIVE PROPERTY BUSINESS:

a) ocean marine
b) pools and association business (as per clause attached); other than the Mississippi or other Coastal Pools
c) target risks
d) aviation
e) flood when written as such
f) earthquake when written as such

B. Applicable to FACULTATIVE CASUALTY BUSINESS:

a) Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a policy covering Comprehensive or General Liability.

b) Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, policies issued by the Company in respect of Railroads Covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective insurance.

c) Underground Coal Mining - But only as respects Excess Workmen's Compensation.

d) Operation of Aircraft - But only as respects Excess Workmen's Compensation.

e) Fireworks Manufacturers - But only as respects Excess Workmen's Compensation.

f) Fuse Manufacturers - But only as respects Excess Workmen's Compensation.

g) Explosive Risks - But only as respects Excess Workmen's Compensation.

C) Applicable to CASUALTY EXCESS OF LOSS TREATIES:

a) Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a policy covering Comprehensive or General Liability,

b) Fidelity, Surety and Credit.

The above mentioned exclusions other than g and h shall not apply to reinsurance covering originals Assureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purpose of this Contract, "incidental operations" shall be deemed to mean that not more than 10% of the annual revenue from all operations is derived from operation in any of the above exclusions.

2. In the event the Company becomes interested in a prohibited risk or peril as described above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company, either by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (thirty) days thereafter.

ARTICLE III

TERM

This Agreement shall take effect at the date and time specified in the Interests and Liabilities Agreement attached hereto and shall apply to all losses occurring thereafter.

The Agreement may be cancelled by either party at Midnight any December 31, giving the other party at least 3 (three) months notice in advance by registered letter.

## ARTICLE IV

**PREMIUM**

The Company shall pay to the Reinsurer premium calculated at 4.5% (four and a half percent) if its net earned premium income in respect of the subject business accepted by the Company.

By "net earned premium income" is meant the earned proportion of the Company's written premium without deduction of commission in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on reinsurance which inure to the benefit of this Agreement.

The Company shall pay to the Reinsurer at 1st January, One Thousand Nine Hundred and Seventy Two and quarterly thereafter, Reinsurer's proportion of an Annual Deposit Premium of $300,000 (Threehundred-thousand Dollars). Should the premium for each annual period calculated in accordance with the first paragraph of this Article exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be $200,000 (Two-hundredthousand Dollars) for each annual period their Agreement is in force.

## ARTICLE V

**ULTIMATE NET LOSS CLAUSE**

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvages, recoveries and other reinsurance; provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provision of Article VII of this Reinsurance Agreement known as the "Insolvency Clause".

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Agreement shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto, provided always that nothing in this clause shall be construed to mean that losses under this Agreement are not recoverable until the Company's ultimate net loss has been ascertained.

## ARTICLE VI

**ERRORS AND OMISSIONS**

No accidental errors and/or omissions upon the part of the Company shall relieve the Reinsurer of liability provided such errors and/or omissions are rectified as soon after discovery as possible.

## ARTICLE VII

**INSOLVENCY CLAUSE**

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured, without diminution because of the insolvenc y of the Company directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payee under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceedings, and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense or liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Agreement as though such expense had been incurred by the Company.

ARTICLE VIII

LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrangements hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

ARTICLE IX

ARBITRATION

A. Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement, shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise.

B. One (1) arbitrator shall be chosen by the Company and the other by the Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

C. Arbitration shall be initiated by either the Company or the Reinsurer (the petitioner) demanding arbitration and naming its arbitrator. The other party (the respondent) shall then have thirty (30) days, after receiving demand in writing from the petitioner, within which to designate its arbitrator. In case the respondent fails to designate its arbitrator within the time stated above, the petitioner is expressly authorized and empowered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

D. Each party shall submit its case to the Board of Arbitration within thiry (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent, in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award

with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

E. The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph (C) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

ARTICLE X

DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

(a) Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which the Reinsurer hereunder becomes liable, then no expenses shall be payable by the Reinsurer,

(b) Should, however, the sum which is paid in adjustment of such claims or suits result in an amount being recovered under this Agreement, then the expenses shall be borne by the Company and the Reinsurer in the ratio of their respective liabilities as finally determined provided, however, that the Reinsurer shall not be liable for any part of the salaries of officials or of office expenses of the Company.

ARTICLE XI

FEDERAL STAMP TAX CLAUSE (NOT APPLICABLE TO DOMESTIC REINSURERS)

Notice is hereby given that the Reinsurer has agreed to allow for the purpose of paying the Federal Excise Tax 1% (one percent) of the premium payable hereon to the extent that such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurer will deduct 1% (one percent) from the amount of the return and the Company should take steps to

recover the tax from the United States Government.

ARTICLE XI

SERVICE OF SUIT CLAUSE (NOT APPLICABLE TO DOMESTIC REINSURERS)

It is agreed that in the event of the failure of the Reinsurer to pay any amount claimed to be due hereunder, the Reinsurer hereon, at the request of the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the Superintendent of Insurance of Albany, New York, and that in any suit instituted against the Reinsurer upon this Agreement, the Reinsurer will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Reinsurer in any such suit and/or upon the request of the Company to give a written undertaking to the Company that he will enter a general appearance upon behalf of the Reinsurer in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, district of territory of the United States which makes provision therefor, the Reinsurer hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as his true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# POOLS EXCLUSION CLAUSE

## SECTION A

It is agreed that the following is excluded hereunder:

(1) All business derived directly or indirectly from any Pool, Association, or Syndicate which maintains its own reinsurance facilities.

(2) Watts Pool.

(3) "Brush Fire" Pools.

(4) Any Pool or Scheme (whether voluntary or mandatory) formed after March 1, 1968, for the purpose of insuring property whether on a country-wide basis or in respect of designated areas.

(It is agreed that where this clause it attached to catastrophe reinsurance contracts, losses - other than those resulting from riots and civil disorders - arising from participation in "FAIR" Plans or similar arrangements shall not be excluded from the protection afforded by the said catastrophe reinsurance).

## SECTION B

It is agreed that business written by the Company for the same perils which is known at the time to be insured by or in the excess of underlying amounts placed in the following Pools, Associations or Syndicates, whether by way of insurance or reinsurance, is excluded hereunder:

Nuclear Energy Property Insurance Association
Nuclear Energy Liability Insurance Association
Mutual Atomic Energy Reinsurance Pool
Mutual Atomic Energy Liability Underwriters
United States Aviation Insurance Group
Associated Aviation Underwriters
American Aviation Underwriters

It is agreed that Section B does not apply:

i. where the total insured value over all interest of the risk in question is less than $25,000,000; or

ii. to interests traditionally underwritten as Inland Marine or Stock and/or Contents written on a blanket basis; or,

iii. to Contingent Business Interruption except when the Reassured is aware that the peak location is known at the time to be insured in any Pool, Association or Syndicate named above.

1972 -

EXCESS OF LOSS REINSURANCE AGREEMENT

$250,000 Excess $250,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part and ARGONAUT INSURANCE CO., Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part, that the Subscribing Reinsurer shall have a 20% (Twenty percent) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled EXCESS OF LOSS REINSURANCE AGREEMENT - $250,000 Excess $250,000. The share of the Subscribing Reinsurer shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the Subscribing Reinsurer shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m. January 1st, One Thousand Nine Hundred and Seventy Four and may be cancelled as per the attached Agreement and shall supersede the Interests and Liabilities Agreement signed in New York, New York, on February 14, 1972 and in Menlo Park, California, on February 18, 1972.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N. Y. this 15th day of February 1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

Vice President — Vice President & Secretary

and at this day of 1974

GERLING GLOBAL REINSURANCE CORPORATION

U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

I. Nuclear reactor power plants including all auxiliary property on the site, or

II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

(a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

(b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

(a) substantial quantities, and

(b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

(b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

# NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction.

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Class II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies): provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

[illegible]
#[illegible]

ARGO GERLING-HARTFORD 001566

1973 ADDENDUM. 4034

ADDENDUM NO. I

to the

INTERESTS AND LIABILITIES AGREEMENT

EXCESS OF LOSS REINSURANCE AGREEMENT
$250,000 Excess $250,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part

and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California (hereinafter called the "Subscribing Reinsurer").

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1973 the first paragraph of Article IV, "PREMIUM", is amended to read as follows:

"The Company shall pay to the Reinsurer premium calculated at 4% (four percent) of its net earned premium income in respect of the subject business accepted by the Company".

All other terms and conditions remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

[illegible], N.Y., this 16th day of November 1972

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

Assistant Vice President

Vice President & Secretary

and in Menlo Park, CA this 20th day of November 1972

GERLING GLOBAL REINSURANCE CORPORATION

4034

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
NEW YORK, N.Y.

EXCESS OF LOSS REINSURANCE AGREEMENT
$250,000 Excess $250,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part

and

ARGONAUT INSURANCE CO., Menlo Park, California

(hereinafter called the "Subscribing Reinsurer"), of the other part, that the Subscribing Reinsurer shall have a 15.0 %( Fifteen ---------- percent ) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled EXCESS OF LOSS REINSURANCE AGREEMENT - $250,000 Excess $250,000. The share of the Subscribing Reinsurer shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the Subscribing Reinsurer shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m. 1st January, One Thousand Nine Hundred and Seventy Two and may be cancelled as per the attached Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N.Y. this 14th day of February 1972

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

[signature]
Vice-President

[signature]
Secretary

and at Menlo Park this 18th day of February 1972

[signature] Lou Vanadore

GERLING GLOBAL REINSURANCE CORPORATION

1972 - 1975 4030

250 XS 250
FAC. CAS
TREATY CAS. XS
FAC. PROP
XS

ADDENDUM NO. II

to the

INTERESTS AND LIABILITIES AGREEMENT

EXCESS OF LOSS REINSURANCE AGREEMENT
$250,000 Excess $250,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part

and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California

(hereinafter called the "Subscribing Reinsurer"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective as of the inception of this contract Article V-a, "Claims", is added to this contract:

ARTICLE V-a

CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to cooperate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in cooperation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to cooperate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurer's share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

All other terms and conditions remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y., this 29th day of June 1973

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

Assistant Vice President | Vice President & Secretary

and in [illegible] this 27th day of July 1973



# Argonaut Insurance Company

HOME OFFICE: 250 MIDDLEFIELD ROAD • MENLO PARK, CALIFORNIA 94025

Cable: Argonaut

February 27, 1975

Mr. Bernd Vogelsang
Gerling Global Reins Corp
717 Fifth Avenue
New York, N. Y. 10022

RE: GERLING GLOBAL , US BRANCH
GERLING GLOBAL, CANADIAN BRANCH
Your File: 4034
Our File: CX-207

WE ARE PLEASED TO ENCLOSE:

_____ The signed Interests and Liabilities Agreement

_____ The signed Contract Wordings

_____ The signed Endorsement/Addendum No. _____

*** The signed Duplicate of your Feb 20 letter

_____ The signed Binders/Slips

_____ *The signed copies of our Certificate*

Please use our reference number when corresponding. Thanks, Linda Deatrick

Yours very truly,
Linda Deatrick, Secretary

GERLING GLOBAL REINSURANCE CORPORATION

UNITED STATES BRANCH

February 20, 1975

U. S. MANAGER
GERLING GLOBAL OFFICES INC.

717 FIFTH AVENUE
NEW YORK, N. Y. 10022

Argonaut Insurance Companies
Reinsurance Department
250 Middlefield Road
Menlo Park California 94025

Gentlemen:

Re: Excess of Loss Reinsurance Agreement
$250,000 Excess $250,000
Gerling Global Reinsurance Corporation, U.S. Branch/
Gerling Global Reinsurance Company, Toronto, Canada
Our File No. 4034 Your Share: 20 %

Enclosed please find a revised page #3 to the above wording applicable to the contract with us and our affiliate Gerling Global Reinsurance Company, Toronto, Canada. Kindly substitute this page for the one in your file.

The amendment clarifies that coverage applies to "any one ceding Company" rather than "any one treaty" on our casualty excess treaty business.

In calculating the premium payable under these contracts for the past years, we have included the underlying premium for all contracts where the exposure is more than $250,000 any one ceding Company.

To acknowledge receipt of the revised page # 3, please return to us a signed copy of this letter.

R.J. Garland
2/27/75.

Very truly yours,

Bernd Vogelsang
Vice President & Secretary

BV:hl 9x-207

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (twelve) consecutive months, and

(ii) the Company may elect the date on which the period of not exceeding 12 (twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (twelve) consecutive months then each consecutive period of 12 (twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

(C) CASUALTY EXCESS OF LOSS TREATIES

The Reinsurer agrees for the consideration hereinafter appearing to pay to the Company up to but not exceeding $250,000 (Two Hundred Fifty Thousand Dollars) ultimate net loss each and every accident and/or occurrence any one ceding Company in excess of $250,000 (Two Hundred Fifty Thousand Dollars) ultimate net loss each and every accident and/or occurrence in respect of any one ceding Company. All treaties covered hereunder shall be declared quarterly by the Company to the Reinsurer, specifying:

the contract number
the underlying retention and limit of liability
the estimated annual premium.

1973 -

EXCESS OF LOSS REINSURANCE AGREEMENT

$250,000 Excess $250,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part and ARGONAUT INSURANCE CO., Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part, that the Subscribing Reinsurer shall have a 20% (Twenty percent) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled EXCESS OF LOSS REINSURANCE AGREEMENT - $250,000 Excess $250,000. The share of the Subscribing Reinsurer shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the Subscribing Reinsurer shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m. January 1st, One Thousand Nine Hundred and Seventy Four and may be cancelled as per the attached Agreement and shall supersede the Interests and Liabilities Agreement signed in New York, New York, on February 14, 1972 and in Menlo Park, California, on February 18, 1972.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N. Y. this 15th day of February 1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

Vice President | Vice President & Secretary

and at this day of 1974

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

4034

CANCELLATION ADDENDUM

to the



INTERESTS AND LIABILITIES AGREEMENT

EXCESS OF LOSS REINSURANCE AGREEMENT
$250,000 Excess $250,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part

and

ARGONAUT INSURANCE COMPANY, Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is terminated effective at midnight, December 31, 1975. The Subscribing Reinsurer shall be liable for all losses occurring prior to the date of termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Cancellation Addendum, in duplicate, as of the dates undermentioned.

At New York, New York, this 23rd day of September, 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

[signature] Vice President

[signature] Vice President & Secretary

and at Menlo Park Ca. this 27th day of September, 1976

[signature]

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

CANCELLATION ADDENDUM

to the

INTERESTS AND LIABILITIES AGREEMENT

EXCESS OF LOSS REINSURANCE AGREEMENT
$250,000 Excess $250,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH (including the liability of Gerling Global Reinsurance Co., Toronto, Ontario) (hereinafter called the "Company"), of the one part

and

ARGONAUT INSURANCE COMPANY, Menlo Park, California

(hereinafter called the "Subscribing Reinsurer"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is terminated effective at midnight, December 31, 1975. The Subscribing Reinsurer shall be liable for all losses occurring prior to the date of termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Cancellation Addendum, in duplicate, as of the dates undermentioned.

At New York, New York, this 23rd day of September, 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

Vice President | Vice President & Secretary

and at this day of 1976

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH