# EXHIBIT C

*4908*

# GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
## NEW YORK, N. Y.

### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
#### Fourth Excess - $2,000,000 Excess $3,000,000

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH, AND THEIR QUOTA SHARE REINSURERS, (hereinafter collectively called the "Company"), of the one part, and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part, that the Subscribing Reinsurer shall have a 2.5 % ( Two point Five percent ) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT, Fourth Excess - $2,000,000 Excess $3,000,000. The share of the Subscribing Reinsurer shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the Subscribing Reinsurer shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m., 1st January, One Thousand Nine Hundred and Seventy Three and may be cancelled as per the attached Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorised officers, have executed this Agreement, in duplicate, as of the dates under-mentioned.

At New York, N. Y., this        29th day of December,    1972

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
Vice President & Secretary          Senior Vice President

and at _____ this _____ day of _____, 1973

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001653

## REINSURANCE AGREEMENT

### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
#### Fourth Excess - $2,000,000 Excess $3,000,000

between

**GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH, NEW YORK, N.Y., (including the liability of GERLING GLOBAL REINSURANCE COMPANY, TORONTO, ONTARIO, CANADA)**

(hereinafter collectively called the "Company")

of the one part

and

**THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED.**

(hereinafter called the "Reinsurer")

of the other part.

WHEREAS the Company is desirous of reinsuring certain of its liability arising under business accepted by it in its Facultative Casualty Department

NOW, THEREFORE, it is hereby agreed by and between the parties hereto one with the other as respects Facultative Casualty business:

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001654

- 2 -

## ARTICLE I

### INSURANCE CLAUSE

(A)  The Reinsurer agrees for the consideration herinafter appearing to
pay to the Company up to but not exceeding $2,000,000 (Two Million
Dollars) ultimate net loss each and every accident and/or occurrence
any one original insured for which the Company shall become liable
and shall pay in excess of $3,000,000 (Three Million Dollars) ultimate
net loss each and every accident and/or occurrence any one original
insured under one or more original policies.

(B)  As respects Liability assumed by the Company under Policies
containing an aggregate limit of liability, the Reinsurer agrees to pay
to the Company up to but not exceeding $2,000,000 (Two Million
Dollars) aggregate ultimate net loss for which the Company shall
become liable and shall pay in excess of $3,000,000 (Three Million
Dollars) aggregate ultimate net loss in respect of each annual period of
any one original insured under one or more original policies.

(C)  The Reinsurer agrees to accept motor truck cargo business when
written in conjunction with bodily injury and/or property damage
liability in excess of a minimum combined single limit of $2,000,000
(Two Million Dollars). The term "each and every accident and/or
occurrence" as used herin shall be understood to mean "each and
every accident or occurrence or series of accidents or occurrences
arising out of any one event" provided that as respects:

(a)  Products Liability; said term shall also be understood to mean
"injuries to all persons and all damage to property of others pro-
ceeding from the use or consumption of one prepared or acquired
lot of merchandise or product";

(b)  All other classes of Bodily Injury Liability; said term shall also be
understood to mean, as regards each original insured, "injuries to
one or more than one person resulting from infection, contagion,
poisoning or contamination proceeding from or traceable to the same
causative agency";

(c)  Property Damage (other than Automobile and Products) risks; said
term shall, subject to provisions (i) and (ii) below, also be understood
to mean "loss or losses caused by a series of operations, events or
occurrences arising out of operations at one specific site and which
cannot be attributed to any single one of such operations, events or
occurrences but rather to the cumulative effect of same".

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001655

- 3 -

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that:

(i)    the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

(ii)    the Company may elect the date on which the period of not exceeding 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months, then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d)    An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

### ARTICLE II

__UNDERLYING REINSURANCE AND CO-REINSURANCE__

It is warranted that the Company retains within the GERLING Group of Insurance Companies:

> The first $250,000
> 50% of $250,000  Excess $250,000
> 20% of $500,000  Excess $500,000
> 2.5% of $1,000,000  Excess $1,000,000
> 2.5% of $1,000,000  Excess $2,000,000
> 2.5% of this Agreement

ultimate net loss each and every accident and/or occurrence any one original insured under one or more policies.

It is understood and agreed that in calculating the amount of any loss hereunder, and also in computing the amount in excess of which this Agreement attaches, the net loss of the Company shall not be considered as being reduced by any amount or amounts recoverable under the underlying excess of loss reinsurance.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001656

-4-

## ARTICLE III

### EXCLUSIONS

1.     This Agreement shall specifically exclude coverage in respect of Policies of Reinsurance issued by the Company in respect of the following classes or classifications:

(a)     Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

(b)     Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

(c)     Excess Catastrophe Reinsurance Treaties of Insurance Companies;

(d)     Ocean Marine Business when written as such;

(e)     Directors' and Officers' legal liability;

(f)     Underground Coal Mining - but only as respects Excess Workmen's Compensation;

(g)     Operation of Aircraft - but only as respects Excess Workmen's Compensation;

(h)     Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

(i)     Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

(j)     Explosive Risks - but only as respects Excess Workmen's Compensation;

(k)     Risk of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 5 -

policy containing a standard war exclusion clause;

(l)    Pharmaceutical and Drug Manufacturers and Distributors;

(m)    Excess Workmen's Compensation not written in conjunction with Bodily Injury and Property Damage unless excess of at least $100,000 (One Hundred Thousand Dollars) plus self-insured retention;

(n)    Public Utilities unless excess of at least $250,000 (Two Hundred and Fifty Thousand Dollars);

(o)    Nuclear Risks as per attached wording.

The aforementioned exclusions, except c, d, k, l and o shall not apply to reinsurances covering original Assureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purpose of this Contract, "incidental operations" shall be deemed to mean that not more than 10% of the annual revenue from all operations is derived from operations in any of the above exclusions.

2.    In the event the Company becomes interested in a prohibited risk other than o) above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (Thirty) days thereafter.

## ARTICLE IV

### ATTACHMENT

This Agreement shall take effect at the date and time specified in the Interests and Liabilities Agreement attached hereto and shall apply to all losses occurring on and after that date and time.

Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liability Agreement and as of the next renewal or anniversary date of Policies in force.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001658

- 6 -

## ARTICLE V

### CANCELLATION

This Agreement may be cancelled at Midnight any December 31st by either party giving the other at least 100 (One Hundred) days' notice in advance by registered mail.

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on business in force during said period of 100 (One Hundred) days until their natural expiration or next anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

## ARTICLE VI

### PREMIUM

The Company shall pay to the Reinsurer premium calculated at 2% (Two percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $105,000 (One Hundred and Five Thousand Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $80,000 (Eighty Thousand Dollars) for each annual period this Agreement is in force.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001659

-7-

## ARTICLE VII

### ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvages, recoveries and other reinsurance, provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of Article XII of this Reinsurance Agreement known as the "Insolvency Clause".

## ARTICLE VIII

### CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to co-operate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in co-operation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to co-operate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurer's share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

## ARTICLE IX

### DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

ARGO GERLING-HARTFORD 001660

-8-

(a)   Should the claims or suits arising out of any one occurrence be ad-
      justed for a sum not exceeding the amount in excess of which Reinsu-
      rer hereunder becomes liable., then no expenses shall be payable by
      the Reinsurer;

(b)   Should, however, the sum which is paid in adjustment of such claims or
      suits result in an amount being recovered under this Agreement, then
      the expenses shall be borne by the Company and the Reinsurer in the
      ratio of their respective liabilities as finally determined provided,
      however, that the Reinsurer shall not be liable for any part of the
      salaries of officials of or office expenses of the Company.

### ARTICLE X

### COMMUTATION

In the event of the Company becoming liable to make periodical pay-
ments under any business reinsured hereunder, the Reinsurer at any time
after 24 (Twenty Four) months from the date of the occurrence, shall be
at liberty to redeem the payments falling due from it by the payment of a
lump sum.

In such event, the Company and the Reinsurer shall mutually appoint
an Actuary or Appraiser to investigate, determine and capitalize the claim.
The Reinsurer's proportion of the amount so determined shall be considered
the amount of loss hereunder and the payment thereof shall constitute a
complete release of the Reinsurer for its liability for such claim so capital-
ized.

### ARTICLE XI

### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company
shall relieve the Reinsurer of liability provided such errors and/or omissi-
ons are rectified as soon after discovery as possible. Nevertheless, the
Reinsurer shall not be liable in respect of any business which may have
been inadvertently included in the premium computation but which ought not
to have been included by reason of the conditions of this Agreement.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

-9-

## ARTICLE XII

### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured without diminution because of the insolvency of the Company directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payees.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

## ARTICLE XIII

### LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrangements hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

ARGO GERLING-HARTFORD 001662

-10-

## ARTICLE XIV

### ARBITRATION

(a) Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement, shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise.

(b) One (1) arbitrator shall be chosen by the Company and the other by the Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

(c) Arbitration shall be initiated by either the Company or the Reinsurer (the petitioner) demanding arbitration and naming its arbitrator. The other party (the respondent) shall then have thirty (30) days, after receiving demand in writing from the petitioner, within which to designate its arbitrator. In case the respondent fails to designate its arbitrator within the time stated above, the petitioner is expressly authorized and empowered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

(d) Each party shall submit its case to the Board of Arbitration within thirty (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

(e) The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of

GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

ARGO GERLING-HARTFORD 001663

-11-

the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph (C) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

### ARTICLE XV

HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

### ARTICLE XVI

TAXES (Not Applicable to Domestic Reinsurers)

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% (One Percent) of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% (One Percent) from the amount of the return and the Company should take steps to recover the tax from the United States Government.

### ARTICLE XVII

SERVICE OF SUIT (Not Applicable to Domestic Reinsurers)

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001664

-12-

It is further agreed that service of process in such suit may be made upon the Superintendent of Insurance of Albany, New York, and that in any suit instituted against the Reinsurers upon this Agreement, the Reinsurers will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Company to give a written undertaking to the Company that they will enter a general appearance upon behalf of the Reinsurers in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, district or territory of the United States which makes provision therefor, the Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001665

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified in the Limited Exclusion Provision):

Limited Exclusion Provision.

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified in the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

ARGO GERLING-HARTFORD 001666

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above; provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(2) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Clause II of paragraph (3) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, each policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1255

ARGO GERLING-HARTFORD 001667

**U.S.A.**

NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

   I. Nuclear reactor power plants including all auxiliary property on the site, or

   II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

   III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

   IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

   (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

   (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

   (a) substantial quantities, and

   (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (2) hereof, it is understood and agreed that

   (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

   (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

ARGO GERLING-HARTFORD 001668

*1971-1972*

*4968*

## ADDENDUM NO. II

to the

### INTERESTS AND LIABILITIES AGREEMENT
### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
Fourth Excess - $2,000,000 Excess $3,000,000
Dated in New York, N.Y., October 7, 1971

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, N.Y. AND THEIR QUOTA SHARE REINSURERS, of the one part
and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California
of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1972
the following paragraphs or articles are amended to read:

1) **Article I Insuring Clause (B)**
As respects Liability assumed by the Company under Policies
containing an aggregate limit of liability, the Reinsurer agrees to pay
to the Company up to but not exceeding $2,000,000 (Two Million Dollars)
aggregate ultimate net loss for which the Company shall become
liable and shall pay in excess of $3,000,000 (Three Million Dollars)
aggregate ultimate net loss in respect of each annual period any
one original insured under one or more original policies.

2) **Article II Underlying Reinsurance and Co-Reinsurance**
It is warranted that the Company retains within the GERLING Group
of Insurance Companies:
> The first $250,000
> 50% of $250,000 Excess $250,000
> 5% of $500,0000 Excess $500,000
> 2.5% of $1,000,000 Excess $1,000,000
> 2.5% of $1,000,000 Excess $2,000,000
> 2.5% of this Agreement

ultimate net loss each and every accident and/or occurrence any one
original insured under one or more policies.

It is understood and agreed that in calculating the amount of any loss
hereunder, and also in computing the amount in excess of which this
Agreement attaches, the net loss of the Company shall not be considered
as being reduced by any amount or amounts recoverable under the
underlying excess of loss reinsurance.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001669

- 2 -

3) **Article IV Attachment - Paragraph 2**
Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liabilities Agreement and as of the next renewal or anniversary date of Policies in force.

4) **Article V Cancellation - Paragraph 3**
Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

It is furthermore mutually understood and agreed that this Agreement is terminated as of December 31, 1972 in accordance with Article V.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N.Y., this 15th day of December, 1972.

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Assistant Vice President          Vice President & Secretary

and in Menlo Park, California this 22d day of December, 1972

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

44G8

ADDENDUM NO. 1
to the
INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
Fourth Excess - $2,000,000 Excess $3,000,000

between
GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New
York, N.Y., AND THEIR QUOTA SHARE REINSURERS, of the one part
and

ARGONAUT INSURANCE COMPANY, Menlo Park, California

of the other part.

It is hereby understood and agreed that effective January 1, 1972
the third paragraph of ARTICLE VI, Premium, of the attached Agreement is
amended to read as follows:

The Company shall pay to the Reinsurer, in quarterly installments,
Reinsurer's proportion of an annual Deposit Premium of $90,000 (Ninety-
thousand Dollars). Should the Premium for each annual period calculated in
accordance with the first paragraph of this Article exceed the said Deposit
Premium for each annual period, the Company agrees to pay the difference
to the Reinsurer, but should it be less, it is agreed that the Minimum
Premium payable to the Reinsurer shall be its proportion of $75,000 (Seven-
tyfivethousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto, by their respective
duly authorized officers, have executed this Agreement, in duplicate, as of
the dates undermentioned.

At New York, N.Y.                    this 13'th day of January 1972

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice-President                    Secretary

and at MENLO PARK, CALIF.        this 14th day of January 1972

_____          _____
                                 GERLING GLOBAL REINSURANCE CORPORATION
                                 U.S. BRANCH

4458

ADDENDUM NO. 1

to the

REINSURANCE AGREEMENT
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
FOURTH EXCESS $1,000,000 EXCESS $3,000,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH and
THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the
"Company"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED
(hereinafter called the "Reinsurer"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1974,
the first paragraph of Article VI, Premium, shall read:

The Company shall pay to the Reinsurer premium calculated at 1.7 % (One point
seven percent) of its gross net earned income in respect of business accepted
by the Company in its Facultative Casualty Department.

All other terms and conditions of the Agreement, the subject of this
Addendum No. 1, remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Addendum, in duplicate, as of the
dates undermentioned.

At New York, N.Y., this    8th    day of February,    1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at Menlo Park/Calthis    14TH    day of FEB.    1974

ARGONAUT INSURANCE COMPANY

_____          _____
                                  ASST. V.P.
                          GERLING GLOBAL REINSURANCE CORPORATION
                                  U.S. BRANCH

ARGO GERLING-HARTFORD 001672

4-12 8

### ADDENDUM NO. 1

#### to the

### INTERESTS AND LIABILITIES AGREEMENT
### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
#### Fourth Excess $2,000,000 Excess $3,000,000

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "Company"), of the one part, and ARGONAUT INSURANCE COMPANY, Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part, that the "Subscribing Reinsurer" shall have a 4.5% (four point five percent) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT, Fourth Excess - $2,000,000 Excess $3,000,000. The share of the "Subscribing Reinsurer" shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the "Subscribing Reinsurer" shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m. January 1st, One Thousand Nine Hundred and Seventy Four and may be cancelled as per the attached Agreement, and supersedes all other wordings agreed to and signed by the "Subscribing Reinsurer".

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, New York,    this 11th day of February,    1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                            Vice President & Secretary

and at Menlo Park, Cal.    this 14TH day of FEB    1974

ARGONAUT INSURANCE COMPANY

_____          _____
                                                 Asst V.P.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001673

4968

### ADDENDUM NO. 2

to the

### REINSURANCE AGREEMENT
### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### FOURTH EXCESS $2,000,000  EXCESS $3,000,000

between

### GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
### New York, N.Y.

and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "COMPANY"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED (hereinafter called the "REINSURER"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1975,

1. Paragraph 1 (1) of Article III, Exclusions, shall read:

   (1)    Pharmaceutical and Drug Manufacturers,

2. Article VI, Premium, shall read:

   The Company shall pay to the Reinsurer premium calculated at 2.5% (Two and a half percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

   By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

   The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $175,000 (One Hundred and Seventy Five Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $150,000 (One Hundred and Fifty Thousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions of the Agreement, the subject of this Addendum No. 2, remain unchanged.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001674

- 2 -

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, New York, this 14th day of April, 1975

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
Vice President                    Vice President & Secretary
        Menlo Pk,
and at  Calif.        this 18th day of April  1975
        ARGONAUT INSURANCE COMPANY, Menlo Park, California

_____          _____
Linda Sherrick Cx-141             R. J. Gerlach
                                  Ass't V.P.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001675

*1973*

**ADDENDUM NO. 2**

to the

**REINSURANCE AGREEMENT**
**FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT**
**FOURTH EXCESS $2,000,000 EXCESS $3,000,000**

between

**GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH**
**New York, N.Y.**

and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "COMPANY"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED (hereinafter called the "REINSURER"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1975,

1. Paragraph 1 (1) of Article III, Exclusions, shall read:

   (1)     Pharmaceutical and Drug Manufacturers,

2. Article VI, Premium, shall read:

   The Company shall pay to the Reinsurer premium calcucated at 2.5% (Two and a half percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

   By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

   The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $175,000 (One Hundred and Seventy Five Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $150,000 (One Hundred and Fifty Thousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions of the Agreement, the subject of this Addendum No. 2, remain unchanged.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

- 2 -

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, New York, this 14th day of April, 1975

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
     Vice President                     Vice President & Secretary

and at                  this          day of           1975

   ARGONAUT INSURANCE COMPANY, Menlo Park, California

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001677

4908

## CANCELLATION ADDENDUM

to the

## FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

Fourth Excess $2,000,000 Excess $3,000,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, New York, and their QUOTA SHARE REINSURERS,

and 

ARGONAUT INSURANCE COMPANY, Menlo Park, California

IT IS HEREBY UNDERSTOOD AND AGREED that in accordance with Article V of the above Contract the participation of the Subscribing Reinsurer is terminated effective Midnight, December 31, 1975.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y., this 29th day of June, 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                   Vice President & Secretary

and at *Menlo Park, Ca.* this 1st   day of *July,*   1976

_____          _____

OX-141

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH
Up to 1 9 7 5

ARGO GERLING-HARTFORD 001678