# EXHIBIT E

6103

## INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY AGREED

by and between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
New York, N.Y.

and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California

(hereinafter referred to as the "SUBSCRIBING RETROCESSIONAIRE")

that the SUBSCRIBING RETROCESSIONAIRE shall have a 7.5% share in the interests and liabilities of the "Retrocessionaire" as set forth in the attached Contract entitled:

FIRST SURPLUS FACULTATIVE CASUALTY
RETROCESSION CONTRACT
Effective: July 1, 1973

This Agreement shall become effective at July 1, 1973, and shall continue in force until terminated in accordance with the provisions of the attached Contract.

The share of the SUBSCRIBING RETROCESSIONAIRE in the interests and liabilities of the Retrocessionaire with respect to said Contract shall be separate and apart from the shares of the other retrocessionaires and the interests and liabilities of the SUBSCRIBING RETROCESSIONAIRE shall not be joint with those of the other retrocessionaires and the SUBSCRIBING RETROCESSIONAIRE shall in no event participate in the interests and liabilities of the other retrocessionaires.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement in duplicate as of the dates undermentioned at:

New York, N.Y., this   25th   day of   October   1973

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice President                              Vice President & Secretary

and at Menlo Park this 28th day of November 1973

_____
GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001561

# GERLING GLOBAL REINSURANCE CORPORATION

## U.S. BRANCH

### FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT

Effective: July 1, 1973

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, New York, including reinsurances to other members of the Gerling Group of insurance companies (hereinafter referred to as the "Company") of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENT TO WHICH THIS CONTRACT IS ATTACHED (hereinafter referred to as the "RETROCESSIONAIRE") of the other part.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001562

- 2 -

## ARTICLE I

### Classes of Business Reinsured

By this contract the Retrocessionaire obligates itself to accept as reinsurance of the Company and the Company obligates itself to cede to the Retrocessionaire the whole of its First Surplus Liability, as hereinafter defined, under all policies, binders, contracts, and certificates of reinsurance (hereinafter referred to as "certificates") for casualty excess of loss facultative reinsurance assumed through the Company's casualty facultative department as reinsurance of other companies domiciled in the United States of America, its territories and possessions, and Canada.

The liability of the Retrocessionaire as respects each such cession shall commence and expire obligatorily and simultaneously with that of the Company, subject to the following terms and conditions contained herein.

## ARTICLE II

### Exclusions

This Contract shall specifically exclude coverage in respect of certificates of reinsurance issued by the Company in respect of the following classes or classifications:

A. Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a certificate covering Comprehensive or General Liability;

B. Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Contract to cover, but not by way of limitation, certificates issued by the Company in respect of railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

C. Obligatory Reinsurance Treaties of insurance companies;

D. Ocean Marine business when written as such;

E. Directors' and Officers' Legal Liability;

F. Underground Coal Mining - but only as respects Excess Workmen's Compensation;

- 3 -

G. Operation of Aircraft - but only as respects Excess Workmen's Compensation;

H. Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

I. Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

J. Explosive Risks - but only as respects Excess Workmen's Compensation;

K. Risk of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause;

L. Nuclear risks as defined in the "Nuclear Incident Exclusion Clause - Liability - Reinsurance" which is attached to this Contract.

The above-mentioned exclusions other than C, D, K, and L shall not apply to reinsurances covering original insureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purposes of this Contract, "incidental operations" shall be deemed to mean that not more than 10 % of the annual revenue from all operations is derived from operations in any of the above exclusions.

In the event the Company becomes interested in a prohibited risk other than Exclusion L described above, without its knowledge, in respect of which no other reinsurance arrangements are available to the Company, either by an existing insured extending its operations or by an inadvertent acceptance by an agent or otherwise of a reinsured company, this Contract shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding thirty (30) days thereafter.

### ARTICLE III

Definition of First Surplus Liability

A. The term "First Surplus Liability" shall mean that portion of the gross liability of the Company as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured which exceeds the amount of its net retention.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001564

- 4 -

B. The Company is granted permission to carry excess of loss reinsurance covering the classes of business covered hereunder, recoveries under which shall inure solely to the benefit of the Company, and such reinsurance shall not reduce the Company's "net retention" for purposes of this Contract. It is warranted, however, that the Company's pure net retention under such excess of loss reinsurance shall not be less than $250,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

C. It is understood that multiple layers of excess facultative reinsurance written on the same risk and for the same line of business will be aggregated for purposes of determining gross liability for which cessions under this reinsurance are based.

### ARTICLE IV

#### Retention and Limit

A. The Company's net retention with respect to business ceded to this Contract shall not be less than Two Hundred and Fifty Thousand Dollars ($250,000) as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured. Cessions to the Contract shall not exceed an amount equal to the Company's net retention hereunder as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured, and shall be subject to a maximum cession to the Contract of $2,500,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

B. If, in the underwriting judgement of the Company, it appears to be to the benefit of the Retrocessionaire, the Company has the right to restrict allotments with respect to any one cession hereunder in such a manner that the liability of the Retrocessionaire thereon shall be less than the maximum provided for in this Contract.

### ARTICLE V

#### Loss Adjustment or Claims Expense

A. In the event of loss hereunder, the Retrocessionaire shall bear its proportionate share of any allocated adjustment expenses incurred by the Company, whether on its own account or as reimbursement to companies reinsured by the Company for adjustment of expenses under

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001565

- 5 -

the terms of its reinsurance certificate. Such expenses shall include expenses of litigation, if any, and all other allocated loss expenses of the Company and/or reinsured company (except those of their salaried employees and home office expenses) incurred in connection therewith. As respects expenses incurred by the Company for internal claims auditing purposes, only expenses in excess of $1,000 as respects any one loss will be allocated to this Contract and subject to recovery hereunder.

B. The Retrocessionaire's contribution for such adjustment expenses shall be in addition to the Retrocessionaire's liability set forth in Article IV.

ARTICLE VI

Ceding Commission

The Company shall receive a ceding commission equal to the original acquisition cost on all written premium ceded under the Contract plus an override of 7.5 % on all earned premiums under the Contract. Return commission shall be allowed on return premiums at the same rate previously allowed. It is expressly agreed that this ceding commission includes provision for all dividends, commissions, brokerages, taxes, board exchange or bureau assessments, and for all other expenses of whatever nature (excepting loss adjustment expenses).

ARTICLE VII

Reports and Remittances

A. Quarterly

1. Within 60 days following the end of each calendar quarter, the Company shall provide a report to the Retrocessionaire, on forms mutually acceptable, setting forth:

   a) Net written premiums ceded;
   b) Ceding commission broken down between acquisition cost on ceded written premium and override on earned premium;
   c) Net paid losses.

   The balance, if any, of (a) less (b) and (c) shall be remitted by the Company concurrently with the report. Any balance due the Company shall be remitted by the Retrocessionaire as promptly as possible following receipt and verification of the Company's report. It is agreed, however, that when the amount due from the Retrocessionaire

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001566

- 6 -

as a result of loss or losses arising out of or caused by one event exceeds $50,000, the Retrocessionaire will, at the option and upon the demand of the Company, pay by special remittance the amount due immediately upon receipt of a special loss account from the Company containing all relevant details in connection with the loss or losses.

2. Within sixty (60) days following the end of each calendar quarter, the Company shall compute and report summary figures for ceded unearned premium and outstanding losses at the end of the quarter.

B. Annually

The Company shall furnish annually at December 31 to the Retrocessionaire such information as may be required by the Retrocessionaire for preparation of its annual convention statements.

### ARTICLE VIII

Loss Settlement

A. Losses shall be reported as hereinbefore provided except that the Company shall, as promptly as possible, advise the Retrocessionaire of specific cases involving unusual circumstances or large loss possibilities.

B. All payment of claims made by the Company will be binding upon the Retrocessionaire. However, the Retrocessionaire may, at its own expense, participate in an advisory capacity in the defense of any claim.

C. The Retrocessionaire shall receive its proportionate share of all salvages received by the Company.

### ARTICLE IX

Original Conditions

All reinsurance falling under this Contract shall be subject to the same rates, terms, conditions and waivers, and to the same modifications, alterations and cancelments as the respective reinsurance certificate of the Company. The Retrocessionaire shall be credited with its exact proportion of the premiums received by the Company prior to any disbursement of dividend.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 7 -

## ARTICLE X

### Errors and Omissions

The position of the Company shall not be prejudiced by any error or omission in reporting cessions or cancellations under this Contract or in claiming losses collectible hereunder.

## ARTICLE XI

### Access to Records

The Retrocessionaire by its duly appointed representatives shall have the right at any reasonable time to examine all papers in the possession of the Company referring to business effected hereunder.

## ARTICLE XII

### Insolvency

A. In the event of the insolvency of the reinsured Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Retrocessionaire of the pendency of a claim against the Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Retrocessionaire within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Retrocessionaire may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses that it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Retrocessionaire shall be chargeable, subject to the approval of the Court, against the Company as part of the expense of the conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Retrocessionaire.

B. Where two or more retrocessionaires are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Contract as though such expense had been incurred by the Company.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001568

- 8 -

C. It is further understood and agreed that, in the event of insolvency of the Company, the reinsurance under this Contract shall be payable directly by the Retrocessionaire to the Company or to its liquidator, receiver or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Contract specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the Retrocessionaire with the consent of the direct insured or insureds has assumed such policy obligations of the Company as direct obligations of the Retrocessionaire to the payees under such policies and in substitution for the obligations of the Company to such payees.

### ARTICLE XIII

#### Arbitration

A. As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration. One Arbiter shall be chosen by the Company, the other by the Retrocessionaire, and an Umpire shall be chosen by the two Arbiters before they enter upon arbitration, all of whom shall be active or retired disinterested executive officers of insurance or reinsurance companies. In the event that either party should fail to choose an Arbiter within 30 days following a written request by the other party to do so, the requesting party may choose two Arbiters who shall in turn choose an Umpire before entering upon arbitration. If the two Arbiters fail to agree upon the selection of an Umpire within 30 days following their appointment, each Arbiter shall name three nominees, of whom the other shall decline two, and the decision shall be made by drawing lots.

B. Each party shall present its case to the Arbiters within 30 days following the date of appointment of the Umpire. The Arbiters shall consider this Contract as an honorable engagement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of the Arbiters shall be final and binding on both parties but failing to agree, they shall call in the Umpire and the decision of the majority shall be final and binding upon both parties.

C. If more than one retrocessionaire is involved in the same dispute, all such retrocessionaires shall constitute and act as one party for purposes of this Article and communications shall be made by the Company to each of the

- 9 -

retrocessionaires constituting one party, provided, however, that nothing herein shall impair the rights of such retrocessionaires to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the retrocessionaires participating under the terms of this Contract from several to joint.

D. Each party shall bear the expense of its own Arbiter, and shall jointly and equally bear with the other the expense of the Umpire and of the arbitration. In the event that the two Arbiters are chosen by one party, as above provided, the expense of the Arbiters, the Umpire and the arbitration shall be equally divided between the two parties.

E. Any arbitration proceedings shall take place at New York, New York.

### ARTICLE XIV

#### Unlicensed Retrocessionaires

Retrocessionaires not registered or licensed in the State of New York agree to receive premiums on an earned basis and to deposit with the Company the proportionate share of outstanding losses in either cash, securities or Letter of Credit acceptable to the Company. Such request shall be completed within ten (10) days after notification.

### ARTICLE XV

#### Commencement and Termination

A. This Contract shall become effective at 12:01 A.M., July 1, 1973, with respect to business issued or renewed at or after that time and date, and shall remain in force until terminated as provided in paragraph B.

B. Either party may terminate this Contract at any December 31 by giving to the other party not less than ninety (90) days prior notice by registered letter, stating the effective time and date of termination.

C. Unless otherwise mutually agreed, reinsurance hereunder shall remain in full force and effect on all business in force at the effective time and date of termination until expiration, cancellation, or next premium anniversary date of such business, but in no event exceeding twelve (12) months following the date of termination. However, the Company may, by notifying the Retrocessionaire prior to the date of termination, exercise

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001570

- 10 -

the option of reassuming the in force liability at the date of termination
Should this option be exercised, the Retrocessionaire shall return to the
Company the unearned premium at the date of termination, computed on
a monthly pro rata basis, less a ceding commission equal to the following:

Acquisition cost, determined by dividing the commission paid for the last
twelve (12) months by the premiums written for the last twelve (12) months.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001571

**U.S.A.**

### NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE
*(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)*

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to {injury, sickness, disease, death or destruction / bodily injury or property damage} with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
   (a) become effective on or after 1st May, 1960, or
   (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to {injury, sickness, disease, death or destruction / bodily injury or property damage}
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to {immediate medical or surgical relief / first aid}, to expenses incurred with respect to {bodily injury, sickness, disease or death / bodily injury} resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

GL ARG 001572

III. Under any Liability Coverage, to *injury, sickness, disease, death or destruction* bodily injury or property damage resulting from the hazardous properties of nuclear material, if
  (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
  (c) the { *injury, sickness, disease, death or destruction* bodily injury or property damage } arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only to { *injury to or destruction of property at such nuclear facility.* property damage to such nuclear facility and any property thereat. }

IV. As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means
  (a) any nuclear reactor,
  (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
{ With respect to injury to or destruction of property, the word "injury" or "destruction" "property damage" includes all forms of radioactive contamination of property. includes all forms of radioactive contamination of property. }

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided that this paragraph (3) shall not be applicable to
  (i) Garage and Automobile Policies issued by the Reassured on New York risks, or
  (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

*NOTE. The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

21/9/67
N.M.A. 1590

GL ARG 001573



# Argonaut Insurance Company

HOME OFFICE: 250 MIDDLEFIELD ROAD • MENLO PARK, CALIFORNIA 94025

Cable: Argonaut

March 23, 1976

MAR 25 1976

Mr. Bernd Vogelsang
Vice President/Secretary
Gerling Global Reinsurance Corporations
717 Fifth Avenue
New York, NY 10022

Re: First Surplus Facultative Casualty
Retrocession Contract 1975
Gerling Global Reins. Co., Toronto
Gerling Global Reins. Corp., U.S.
Your Ref: #6103, Our Ref: Q8-73

WE ARE PLEASED TO ENCLOSE:

_____ The signed Interests and Liabilities Agreement

_____ The signed Contract Wordings

___X___ The signed Endorsement/Addendum No. **Termination**

~~_____ The signed Duplicate~~

_____ The signed Binders/Slips

_____ The signed copies of our Certificate

Yours very truly,

Carol C. Seyfried, Property Facultative Reis

GL ARG 001558

## CANCELLATION ADDENDUM

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY AGREED by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, N.Y., and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California (hereinafter referred to as the "Subscribing Retrocessionaire") that the Subscribing Retrocessionaire's 7.5 % (seven point five percent ---------------) share in the interests and liabilities of the "Retrocessionaire", as set forth in the attached Contract entitled "FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT", shall be cancelled effective at midnight December 31, 1975.

In accordance with Article XV, paragraph C, second sentence, the Subscribing Retrocessionaire shall be relieved of all liability for business in force at the date of termination against return of the unearned premium, but shall be liable for all losses occurring on or before the date of termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y., this 16th day of March, 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at Menlo Park, Ca. this 22ND day of March 1976

_____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001559

**GERLING**
GLOBAL REINSURANCE COMPANY

## CANCELLATION ADDENDUM

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY AGREED by and between GERLING GLOBAL REINSURANCE COMPANY, Toronto, Ontario, Canada and ARGONAUT INSURANCE COMPANIES, Menlo Park, California, U.S.A. (hereinafter referred to as the "SUBSCRIBING RETROCESSIONAIRE") that the SUBSCRIBING RETROCESSIONAIRE'S 7.5% (seven point five percent) share in the interests and liabilities of the "Retrocessionaire", as set forth in the attached Contract entitled "FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT", shall be cancelled effective at midnight December 31, 1975.

The Subscribing Retrocessionaire shall be relieved of all liability for business in force at the date of termination but shall be liable for all losses occurring on or before the date of termination until their final settlement.

IN CONSIDERATION OF THE FOREGOING, the Subscribing Retrocessionaire shall return to the Company 7.5% (seven point five percent) of the ceded unearned premium under this Contract at midnight December 31, 1975 less the previously paid ceding commission.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At Toronto, Ontario, Canada, this 5th day of March, 1976

GERLING GLOBAL REINSURANCE COMPANY

_____        _____
Assistant Vice-President        Senior Vice-President & Sec.-Treas.

and at Menlo Park, California, U.S.A., this 22ND day of March, 1976

ARGONAUT INSURANCE COMPANIES

_____        _____

GL ARG 001560