UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | : | Civil Action No. |
| | : | **07 CV 8196 (PKC)** |
| GLOBAL REINSURANCE CORPORATION - U.S. BRANCH, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| -against- | : | |
| | : | |
| ARGONAUT INSURANCE COMPANY, | : | |
| Respondent. | : | |
| | : | |

| | | |
|---|---|---|
| In the Matter of the Arbitration Between: | : | Civil Action No. |
| | : | **07 CV 8350 (PKC)** |
| GLOBAL REINSURANCE CORPORATION - U.S. BRANCH, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| -against- | : | |
| | : | |
| ARGONAUT INSURANCE COMPANY, | : | |
| Respondent. | : | |
| | : | |

---

## MEMORANDUM OF LAW OF PETITIONER GLOBAL REINSURANCE CORPORATION - U.S. BRANCH IN RESPONSE TO THE COURT'S NOVEMBER 28, 2007 ORDER TO SHOW CAUSE

---

BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Attorneys for Petitioner,
Global Reinsurance Corporation - U.S. Branch

On the Brief:
Joseph J. Schiavone, Esq.
Jeffrey S. Leonard, Esq.
Ivan V. Miletic, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

A.  The Petition to Confirm the XOL Arbitration Award .................................................. 3

B.  The Petition to Confirm the U.S. Branch-Hartford/First State Awards ..................................... 7

ARGUMENT ..................................................................................................... 11

Point I ......................................................................................................... 11

    Since The Court Is Only Being Asked To Play A Limited Role In These
    Unopposed Petitions To Confirm Arbitral Awards, the Documents are Not
    Judicial Documents.............................................................................................. 11

Point II ........................................................................................................ 16

    The Countervailing Reasons for Sealing or Redacting the Documents Outweigh
    Any Presumption of Public Access ............................................................................ 16

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page**

Commercial Union Insurance Co. v. Lines, 239 F. Supp.2d 351, 358-9
(S.D.N.Y. 2002)............................................................................................14

DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997).................................13

Ello v. Singh, 2007 WL 3084979 (S.D.N.Y. Oct. 19, 2007)..........................................................14

Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Management, Inc.,
2005 WL 1522783 at *3 (E.D.N.Y. June 28, 2005).................................................17

Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004)..............................................17

Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir.2004) .............................................12

In re Omnicom Group, Inc. Securities Litigation, 2006 WL 3016311
(S.D.N.Y. Oct. 23, 2006)............................................................................................15

In Re Zyprexa Injunction, 474 F.Supp.2d 385, 394 (E.D.N.Y. Feb. 13, 2007) .........................18

Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.,
2005 WL 1216292 (S.D.N.Y. May 23, 2005) .............................................13

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006) .................1, 12, 16

Mitchell v. Metropolitan Life Ins. Co., Inc., 2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004)..........18

Securities & Exchange Comm. v. TheStreet.com, 273 F.3d 222, 233 (2d Cir. 2001) .................15

Standard Investment Chartered, Inc. v. National Assoc. of Securities Dealers, Inc.,
2007 WL 2790387 (S.D.N.Y. Sept. 26, 2007) .............................................15

Travelers Ins. Co. v. Conn. Gen. Life Ins. Co., 2003 WL 22413681
(Conn. Super. Oct. 14, 2003)......................................................................................13

United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ............................................................1

U.S. v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ...................................................................12

## STATUTES AND RULES

Federal Arbitration Act, (New York Convention) 9 U.S.C §201-203 .......................................3, 7

## OTHER AUTHORITIES

ARIAS-U.S., Practical Guide, Chapter III: The Organizational Meeting,
3.8. Confidentiality, Comment C.................................................................................18

ii

## PRELIMINARY STATEMENT

These two cases involve *unopposed* petitions to confirm arbitral awards — with confidentiality orders or agreements issued by the arbitration panels — that, along with the harm that would flow from unfettered public access, weigh in favor of the modified relief that Petitioner now seeks with respect to sealing or redacting select documents in the Court file. Indeed, there are important competing interests here of the public's right to access versus the parties' privacy expectations and the court's paramount public policy goal of fostering and encouraging arbitration. The Court's Memorandum and Order dated November 28, 2007 directed the parties to show cause:

(1) why all submissions in support or opposition to the petitions to confirm arbitration awards ought not to be considered judicial documents to which a presumption of public access attaches. United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)("Amodeo I") and Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-120 (2d Cir. 2006). The parties shall also address why any counterbalancing considerations outweigh the presumption. Lugosch, 435 F.3d at 119; and

(2) any party seeking to maintain a document under seal shall submit an affidavit (or affidavits) by a person (or persons) with knowledge of the facts, i.e. not merely counsel of record, containing the following: (a) identification with particularity (i.e. page and line) the precise information (whether in the party's own submission or that of an adversary) which the party maintains should be kept under seal; (b) demonstrating the particular need for sealing the information; and (c) annexing a proposed redacted page together with the unredacted version for the Court's in camera review.

For reasons set forth herein, the two petitions[1] to confirm arbitration awards filed by Petitioner Global Reinsurance Corporation – U.S. Branch ("Global") and the submissions relating thereto,

---

[1] For the sake of brevity, Global is submitting one brief with respect to both of these cases, even though the cases have not been formally consolidated, as the parties are the same and the legal issues herein identical so that a combined brief discussing both matters is most economical of the Court's time. However, in an effort to keep distinct the prior pleadings in both cases so that the Court can easily discern what documents and information Global is now seeking to keep either under seal or in redacted form, we have submitted two Declarations of Barry Keogh, one for the matter under civil action number 07-Civ.-8196(PKC)(involving the arbitration commonly

are not judicial documents as the petitions to confirm the arbitration awards are unopposed by Respondent Argonaut Reinsurance Company ("Argonaut"). However, to the extent that these may be considered judicial documents, for which a presumption of public access attach, the presumption of public access is weak and there are strong countervailing factors that weigh in favor of the limited sealing that Global now seeks. The underlying arbitrations for which confirmation is sought were conducted pursuant to either a confidentiality order or a confidentiality agreement issued by the panels that required that the parties file these documents under seal. Importantly, confidentiality is a hallmark of private arbitrations. The courts have expressly sought to foster and encourage arbitration which would be frustrated and stifled if confidentiality orders and agreements issued by panels were tossed aside once a party seeks confirmation or enforcement of the award.

In an effort to narrow the scope of the sealing orders in light of the Court's concerns expressed in its November 28, 2007 Order, Global is now only seeking to keep under seal the panels' arbitration awards and to redact select documents that quote from, or disclose, the contents of those arbitration awards. Global will be harmed if the arbitration awards are open to the public because Global relied on the confidentiality orders issued by the panels, the arbitrations dealt with the details of highly sensitive and confidential commutations that Global entered into with its cedents, and Global, which is in run-off, will be harmed in its dealings and commutation negotiations with other cedents (as well as its retrocessionaires) if the Court were to give no effect to the confidentiality orders of the panels. Reinsurance arbitrations are normally done pursuant to confidentiality orders and agreements and those in the industry rely on them in their dealings. Unlike judicial opinions that are important in developing a body of law,

_____

referred to by the parties as the "XOL arbitration") and another for civil action number 07-Civ.-8350(PKC)(involving the arbitration referred to as the "Hartford arbitration").

private arbitrations and the decisions by the arbitrators usually have little or no reasoning detailed in the awards and are not precedent. Thus, the public has no legitimate interest in the awards such that they should remain under seal and the limited documents that quote from the awards should be redacted.

## STATEMENT OF FACTS

### A. The Petition to Confirm the XOL Arbitration Award

Global, a foreign reinsurer, and Argonaut, its retrocessionaire, are parties to various retrocessional reinsurance contracts ("Treaties") under which Argonaut reinsures Global. The treaties contain a broad arbitration clause. Global commenced an arbitration to recover amounts due under the contracts. As the parties have recently had several arbitrations, they have commonly referred to this arbitration as the "XOL Arbitration." The XOL Arbitration, conducted before a three-member arbitration panel of industry professionals, related, in part, to commutations that Global entered into with three of its cedents.

The XOL Arbitration was conducted under a Confidentiality Order issued by the panel on May 15, 2006. See Confidentiality Order, at ¶3, attached as Exh. 1 to the Declaration of Barry Keogh ("Keogh XOL Declaration") dated December 5, 2007 under docket 07-cv-8196.[2] Following discovery and hearing, the panel issued a final award on 27 June 2007 (the "June 27, 2007 Award").

On September 19, 2007, Global filed a petition pursuant to the New York Convention of the Federal Arbitration Act, 9 U.S.C §201-203, to confirm the June 27, 2007 Award issued in the XOL Arbitration between Global and Argonaut. Pursuant to the Confidentiality Order issued by

---

[2] The Confidentiality Order was previously submitted as Exh. G to the Declaration of Ivan V. Miletic ("Miletic Declaration") dated September 19, 2007.

3

the panel, Global sought and obtained an Order sealing the court file signed by the Hon. Thomas Duffy on September 19, 2007.

Along with the Petition to Confirm, Global filed the following related documents: Motion to File All Documents Under Seal; proposed Order to Seal; Notice of Petition to Confirm Arbitration Award; Declaration of Ivan V. Miletic ("Miletic Declaration") with Exhibits A through I; and Memorandum of Law in Support of Petition to Confirm Award and Motion to Seal.

Global had good cause to seek to seal the documents as the parties are required to keep confidential "Arbitration Information" which requires that in connection with any court proceeding to confirm, modify or vacate an award "the parties agree, subject to court approval, all submissions of Arbitration Information to a court shall be sealed." Keogh XOL Declaration, ¶2, Exh. 1. The definition of Arbitration Information is broad and includes "all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings...." Id., at Exh. 1, ¶2.

The Confidentiality Order further provides that "in all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." Id., Exh. 1, ¶3.

The parties also recognized "that serious injury could result to any party and its business if the other breaches its obligations under this Agreement [order]." See Keogh XOL Declaration, Exh. 1, ¶6.

Under the broad definition of "Arbitration Information," all of the exhibits to the Miletic

4

Declaration previously filed with the Court, with the exception of the Confidentiality Order itself (Exhibit G) which would be disclosed to establish its existence, are "Arbitration Information" to be kept confidential.   These documents included Global's demand for arbitration, the retrocessional Treaties that were exchanged in discovery,[3] the Panel's arbitration Award of June 27, 2007 and Argonaut's subsequent election to pay the amounts under paragraph 7 of the Award.  See Miletic Declaration, previously submitted at Exhibits A to E (Treaties); Exhibit F (arbitration demands); Exhibit H (June 27, 2007 Award) and Exhibit I (Argonaut's July 27, 2007 e-mail electing paragraph 7 provision in Award).  Likewise, those portions of the accompanying Petition to Confirm and Memorandum of Law filed on September 19, 2007 that described these documents are also considered Arbitration Information.

However, given the Court's concerns as expressed in its November 28, 2007 Order and in an effort to narrow the scope of the existing Sealing Order that seals the entire record in this case, and with the understanding and agreement from Argonaut that it will not assert that Global is somehow violating the Confidentiality Order, Global requests that the following information and documents now before the Court under seal, essentially the XOL Arbitration Award of June 27, 2007 and documents describing its content, remain either under seal and/or submitted in a redacted form:

- Redact paragraph 17 of Global's Petition to Confirm Arbitration Award that quotes from the arbitration Award dated June 27, 2007.  Copies of the redacted pages of the Petition are annexed to the Keogh XOL Declaration as Exhibit 2 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Redact portions of pages 7 to 8 of Global's Memorandum of Law in Support of Petition to Confirm Arbitration Award and Motion to Seal, dated September 19, 2007, that quotes from the arbitration Award dated June 27, 2007.  Copies of the redacted pages of the

---

[3] Both the arbitration demands and the Treaties were exchanged in discovery and marked as hearing exhibits.

5

Memorandum are annexed to the Keogh XOL Declaration as Exhibit 3 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Continue to seal the arbitration Award dated June 27, 2007 attached to the Miletic Declaration as Exhibit H. A copy of Exhibit H to the Miletic Declaration is being submitted to the Court for an in camera review.

The above-information and exhibit concerning the Award are clearly "Arbitration Information" under the definition of the XOL panel's Confidentiality Order. For the reasons expressed in the accompanying Keogh XOL Declaration and as discussed herein, Global will be harmed if the June 27, 2007 Award is not kept under seal and the above-portions of Global's pleadings are not redacted. Keogh XOL Declaration, ¶¶7-12.

When Global filed the Petition, it anticipated that Argonaut may attempt to challenge the June 27, 2007 Award and, had that occurred, it was expected that more Arbitration Information would be submitted to the Court such as hearing transcripts, briefs and exhibits. The Arbitration Information included details of Global's commutation targets and negotiations, including pricing models and strategies, and projections of claim exposures and the like, all of which are proprietary and confidential and would be harmful to Global if released to the public. The underlying commutations agreements themselves have confidentiality provisions. Keogh XOL Declaration. Id., ¶8.

As it turned out, Argonaut has not challenged the confirmation of the June 27, 2007 Award. When Argonaut filed its Answer on or about October 17, 2007, it asked for no affirmative relief and filed no counter-petition to vacate or modify. Id., ¶9.[4] Although Argonaut filed a Declaration along with its Answer, the Declaration attached copies of Treaties that the

---

[4] Global expects that the parties will be able to agree to a proposed Order confirming the Awards in both of these cases.

parties have now agreed need not be kept under seal. Thus, Global does not seek to keep under seal Argonaut's Answer, nor its counsel's Declaration.

## B. The Petition to Confirm the U.S. Branch-Hartford/First State Awards

Global commenced another arbitration against Argonaut to recover amounts due under the Treaties. This arbitration, referred to as the U.S. Branch-Hartford/First State ("Hartford Arbitration") was conducted before another three-member arbitration panel of industry professionals, related, in part, to commutations that Global entered into with another one of its cedents.

The Hartford Arbitration was also conducted under confidentiality pursuant to a Confidentiality Agreement issued by the panel on May 17, 2006. See Confidentiality Order, at ¶3, attached as Exh. 1 to the Declaration of Barry Keogh ("Keogh Hartford Declaration") dated December 5, 2007 under docket 07-cv-8350. Following discovery and hearing, the Hartford panel issued a Final Award dated May 23, 2007 and a Supplemental Order dated June 27, 2007 regarding further dispute resolution mechanism that it incorporated into its Final Award (collectively the "Hartford Awards").

On September 25, 2007, Global filed a petition pursuant to the New York Convention of the Federal Arbitration Act, 9 U.S.C §201-203, to confirm the May 23, 2007 and June 27, 2007 Awards issued in the Hartford Arbitration between Global and Argonaut. Pursuant to the Confidentiality Agreement issued by the panel, Global sought and obtained an order sealing the court file signed by the Hon. Thomas Duffy on September 25, 2007.

Along with the Petition to Confirm, Global filed the following related documents: Motion to File All Documents Under Seal; proposed Order to Seal; Notice of Petition to Confirm

7

Arbitration Award; Declaration of Ivan V. Miletic ("Miletic Declaration") with Exhibits A through K; and Brief in Support of Petition to Confirm Award and Motion to Seal.

The Confidentiality Agreement issued by the Hartford panel contained almost identical language to the Confidentiality Order issued by the XOL panel as both were adapted from the sample form of confidentiality agreement from a leading industry arbitration association, the AIDA Reinsurance and Insurance Arbitration Society a/k/a ARIAS-U.S.[5]

Global had good cause to seek to seal the Hartford arbitration documents as, like in the XOL matter, the parties are required to keep confidential "Arbitration Information" which requires that in connection with any court proceedings to confirm, modify or vacate an award "subject to court approval, all submissions of Arbitration Information to a court shall be sealed." Keogh Hartford Declaration, ¶2, Exh. 1. The Hartford Confidentiality Agreement contained the same broad definition of Arbitration Information as in the XOL matter which included "the award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings...." Id., at Exh. 1, ¶2.

The Hartford Confidentiality Agreement, which survives the conclusion of the proceedings, further provides that "in all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." Id., Exh. 1, ¶3. The parties also recognized that serious harm could result from a breach of the Confidentiality Agreement. Id., at Exh. 1, ¶6.

Under the broad definition of "Arbitration Information," all of the exhibits to the

---

[5] ARIAS-U.S. is "a not-for-profit corporation that promotes the improvement of insurance and reinsurance arbitration process for the international and domestic markets" that provides "training and continuing in-depth conferences and workshops in the skills necessary to serve effectively on an insurance/reinsurance arbitration panel" and "certifies a pool of qualified arbitrators." See "About ARIAS-U.S." at www.arias-u.s,org.

September 25, 2007 Miletic Declaration previously filed with the Court in connection with the confirmation of the Hartford Awards, with the exception of the Confidentiality Agreement itself (Exhibit I), are "Arbitration Information" to be kept confidential. These documents included Global's demand for arbitration, the retrocessional Treaties that were exchanged in discovery,[6] and the panel's arbitration Awards of May 23, 2007 and June 27, 2007. See Miletic Declaration, previously submitted at Exhibits A to G (Treaties); Exhibit H (arbitration demand); Exhibit J (May 23, 2007 Final Award) and Exhibit K (June 27, 2007 Supplemental Order Setting Forth the Dispute Resolution Mechanism and Protocol to the Panel's May 23, 2007 Final Award). Likewise, those portions of the accompanying Petition to Confirm and Brief in Support of Petition to Confirm and Motion to Seal filed on September 25, 2007 that described these documents are also Arbitration Information.

As previously indicated with respect to the XOL matter and in an effort to narrow the scope of the existing Sealing Order that seals the entire file in this case, and with the understanding and agreement from Argonaut that it will not assert that Global is somehow violating the Confidentiality Agreement, Global requests that the following information and documents now before the Court under seal, essentially the Hartford Awards of May 23, 2007 and June 27, 2007 and discussion concerning their content, remain either under seal and/or submitted in a redacted form:

- Redact paragraph 17 of Global's Petition to Confirm Arbitration Award that quotes from the Hartford Panel's Final Award dated May 23, 2007. Copies of the redacted pages of the Petition are annexed to the Keogh Hartford Declaration as Exhibit 2 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Redact portions of pages 8 to 11 of Global's Brief in Support of Petition to Confirm Arbitration Award and Motion to Seal, dated September 25, 2007, that quotes from the

---

[6] Both the arbitration demands and the Treaties in the Hartford arbitration were exchanged in discovery and marked as hearing exhibits.

9

Final Award of May 23, 2007 and/or the June 27, 2007 Supplemental Order. Copies of the redacted pages of the Memorandum are annexed to the Keogh Hartford Declaration as Exhibit 3 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Continue to seal the Hartford panel's Final Award dated May 23, 2007 and its Supplemental Order of June 27, 2007 attached to the September 25, 2007 Miletic Declaration as Exhibits J and K. A copy of Exhibits J and K to the Miletic Declaration are being submitted to the Court for an in camera review.

The above-information and exhibits concerning the Hartford Awards are clearly "Arbitration Information" under the definition of the Confidentiality Agreement. For the reasons discussed above and as expressed in the accompanying Keogh Hartford Declaration, Global will be harmed if the Hartford Awards are not kept under seal and the above-portions of Global's pleadings are not redacted. Keogh Hartford Declaration, ¶¶7-12.

Like the XOL arbitration, Global had good reason to believe that Argonaut may challenge the confirmation of the Hartford Awards, even though there is no legal basis to challenge these panels' awards. Global anticipated that Arbitration Information from the Hartford Arbitration which included details of Global's commutation targets and negotiations, including pricing models and strategies, and projections of claim exposures and the like, all of which are proprietary and confidential and would be harmful to Global if released to the public, would have to be submitted to the Court in connection with the confirmation proceedings. Keogh Hartford Declaration. Id., ¶8.

However, Argonaut has not challenged the confirmation of the Hartford Awards. When Argonaut filed its Answer on or about October 17, 2007, it asked for no affirmative relief and filed no counter-petition to vacate or modify the Awards. Id., ¶9. Although Argonaut filed a similar Declaration as it did in the XOL matter along with its Answer in the Hartford matter, the

Declaration attached copies of Treaties that the parties have now agreed need not be kept under seal.

The one notable distinction between the XOL Final Award and the Hartford Awards is that the Hartford Panel has retained jurisdiction, as specified in the Supplemental Order of June 27, 2007, to hear future disputes that may arise with respect to the Hartford claims for the time period set forth in the Supplemental Order, which time period has yet to expire.  Id., ¶13, together with Exhibit K to Miletic Declaration (Exhibit K submitted to court for in camera review).

It is against this background that the Court must view Global's request to leave sealed the Awards themselves and those limited portions of the pleadings and briefings that discuss the panels' Awards from these two arbitrations.

## ARGUMENT

### Point I

### Since The Court Is Only Being Asked To Play A Limited Role In These Unopposed Petitions To Confirm Arbitral Awards, the Documents are Not Judicial Documents

In Amodeo I, the Second Circuit held that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." 44 F.3d at 145.  In order to be classified as a "judicial document," the filed document "must be relevant to the performance of the judicial function and useful in the judicial process." Id.

Once the court has determined that a document is a judicial document to which a common law presumption of access attaches, the next step is to determine the weight of that presumption:

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

Lugosch, 435 F.3 at 119, quoting U.S. v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").    After determining the "weight of the presumption of access, the court must 'balance competing considerations against it.'" Lugosch, 435 F.3d at 120, citing Amodeo II, 71 F.3d at 1050. Such countervailing factors include, but are not limited to, the "danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id.

In addition to a common law right of access, the public may also have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents. Id., citing Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir.2004).    Even if a court concludes that a qualified First Amendment right of access to certain judicial documents exists, the documents may be sealed if specific, on the record, findings are made "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 120.

In discussing the continuum or weight of the presumption of access, "where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." Lugosch, 435 F.3d at 121.  Documents that have been held to be "judicial documents" that have a "strong" presumption of access under the common law and First Amendment include summary judgment papers. Id.  "Moving down the continuum, away from 'matters that directly affect an adjudication' and towards 'matters that come within a court's purview solely to insure their irrelevance,' we explained that 'the weight of the presumption declines.' ...[and] [a]t the low end of the continuum, '[w]here testimony or documents play only a negligible role in the

12

performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.'" Id. (internal cites omitted).

We found no federal cases that directly answered the question of whether *unopposed* petitions to confirm arbitral awards in confidential arbitrations are "judicial documents."[7]

In the context of contested court proceedings to either confirm or vacate arbitration awards, federal courts have generally respected the parties' confidentiality agreements or orders issued in the underlying arbitration. For example, in DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997), decided post-Amodeo, a contested confirmation proceedings, the Second Circuit upheld the district court's decision to seal the entire file, absent the courts orders and opinions, since the district court found that it was "not feasible to attempt a partial unsealing within the context of the parties' confidentiality agreement." There, the Second Circuit did not reach the issue of whether, as argued by the defendants, most of the documents did not play a role in or were "on the periphery of the adjudicatory process." The Second Circuit indicated it need not reach the issue because, even assuming some presumption of access attached to the documents, the district court did not abuse its discretion in entering the final sealing order. Id. at 827.

In Liberty Re (Bermuda) Ltd. v. Transamerica Occidential Life Ins. Co., 2005 WL 1216292 (S.D.N.Y. May 23, 2005), the court, in the context of a confirmation proceeding and opposing motion to stay the award and remand to the panel for clarification, upheld the parties'

---

[7] In Travelers Ins. Co. v. Conn. Gen. Life Ins. Co., 2003 WL 22413681 (Conn. Super. Oct. 14, 2003), the court while granting the parties' uncontested confirmation of the arbitration award agreed to seal the award and accompanying documents. However, in later proceedings to enforce the judgment stemming from that confirmed award, the court noted that the state practice rules had changed regarding sealing records, and relying on Third Circuit case law, found that the parties had not demonstrated that the confidential financial documents regarding the enforcement proceeding should be sealed simply because the parties had a prior confidentiality agreement. Id. at *4.

13

request to seal the entire court record, absent the court's orders and decisions. In so finding, the court balanced the parties' confidentiality agreement and the federal policy of fostering arbitration:

> The parties argue that their strong interest in confidentiality coupled with the federal policy of encouraging arbitration justify sealing the entire Court record. With respect to the documents the parties submitted to this Court that do not form the basis of our opinion, we agree. Applying the standard discussed above [presumption of public access in Amodeo II], the presumption of public access in these background documents is minimal, while the parties have an interest in keeping the detailed record of their arbitration from public view.
> In the case of this Court's opinion, however, the strong presumption of public access to judicial decisions outweighs the parties' interests in privacy.

Id. at *6.

Similarly, in another contested arbitration proceeding, Commercial Union Insurance Co. v. Lines, 239 F. Supp.2d 351, 358-9 (S.D.N.Y. 2002), vacated and remanded on other grounds, 378 F.3d 204 (2d Cir. 2004), the district court granted in part the respondents' motion to maintain the court record under seal but noted that they had not demonstrated why the entire court record should be sealed and found that, at a minimum, the court's orders and decisions should be available for public view. The Commercial Lines Court ordered that the parties' to meet and confer in good faith to determine which materials were subject to the parties' confidentiality agreement.[8]

Recent decisions from within this District, albeit not involving arbitration confirmations and panels' confidentiality orders, that have addressed the issue of what is a judicial document have looked to the underlying issue for which the document was filed and whether the court could look to those documents in making a judicial decision. For example, in Ello v. Singh,

---

[8] The parties had executed two confidentiality agreements, the first of which, unlike the ones at issue here, did not require the party to submit documents under seal with the court. The second confidentiality agreement, which did require sealing of court papers by the parties, only applied to "redomestication" documents. Commercial Union, 239 F. Supp.2d at 358, f.n.8.

2007 WL 3084979 (S.D.N.Y. Oct. 19, 2007), since the Second Circuit had yet to rule on whether documents submitted in connection with a Fed.R. Civ. 12 (b)(6) motion, under which he was analyzing the plaintiff's opposed motion to file a second amended complaint, had a *constitutional* right of access, District Judge Karas analyzed the defendant's motion to seal certain documents, i.e. the proposed second amended complaint, under a *common law* right of access. The Court found the proposed second amended complaint document was a judicial document, for which the presumption had "considerable" weight since he relied upon it in forming his decision on the motion to amend. Id. at *22-23. Weighing the countervailing interests, Judge Karas found that the request to seal three paragraphs in the complaint that implicated the attorney-client privilege may be sealed, and gave the plaintiff ten days to explain why they should not be sealed. However, he would not seal the entire complaint on the basis of alleged "mudslinging." Id. at *23.

In Standard Investment Chartered, Inc. v. National Assoc. of Securities Dealers, Inc., 2007 WL 2790387 (S.D.N.Y. Sept. 26, 2007), District Judge Kram found that exhibits submitted in connection with a Rule 12(b)(6) motion, which were not considered by the court as the motion was not converted to a summary judgment motion, were not judicial documents. On the other hand, documents submitted in connection with a Rule 12(b)(1) motion where the court could take such documents into consideration, were judicial documents for which the public had a presumptive right to access. Id. at *7.

In a similar vein, documents submitted in support of, or in opposition to, a discovery motion, have been held to be judicial documents. See In re Omnicom Group, Inc. Securities

Litigation, 2006 WL 3016311 (S.D.N.Y. Oct. 23, 2006).[9]

Here, since Argonaut has not filed any counter-petitions to vacate or modify the awards, and has not sought any relief, the Petitions and relating documents are not judicial documents. There is no "adjudicatory" process or motion that the Court is being asked to rule upon so the documents should not be considered, under the above cases, "judicial documents."

### Point II

### The Countervailing Reasons for Sealing or Redacting the Documents Outweigh Any Presumed Access

Alternatively, should the court consider these documents that Global now seeks to protect from disclosure (i.e. the Awards themselves and portions of documents that quote or reveal their contents) as being judicial documents, the weight to be attached to the presumption of public access should be minimal as these documents "play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Lugosch, 435 F.3d at 121.

The countervailing interests are important. The panels issued the Confidentiality Order and Confidentiality Agreement, both of which require that the parties, subject to the court's approval, file under seal all Arbitration Information, which include the panels' orders and

---

[9] Conversely, discovery documents, not filed with the court, are not considered judicial documents as they do not directly affect an adjudication or "significantly determine litigants' substantive rights." See Securities & Exchange Comm. v. TheStreet.com, 273 F.3d 222, 233 (2d Cir. 2001). In the case of non-judicial documents that have been placed under seal pursuant to a protective order, there is a "strong presumption *against* public access" where the party claiming privacy has reasonably relied on the protective order. Id. at 234. In TheStreet.com, the deponents, whose discovery depositions had been taken, did not have a presumption *against* public access since they could not have reasonably relied on the protective orders. Interested third parties, who had not been bound by the order, attended the deposition or the testimony had been given prior to the entry of the protective order. Id. at 233-4. Here, Global filed its documents pursuant to sealing orders, and as discussed herein, that should be given great consideration.

Awards. The Confidentiality Order and Confidentiality Agreement further provide that "in all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." See, e.g., Keogh XOL' Declaration, Exh. 1, ¶3. Global has proposed a very limited Sealing Order relating to the Awards themselves and redaction of specific portions of the Petitions to Confirm and the accompanying Memorandum of Law (or Brief) that discloses the contents of those Awards.

As found in Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Management, Inc., 2005 WL 1522783 at *3 (E.D.N.Y. June 28, 2005), there is a strong policy interest involved in protecting the expectations of confidentiality belonging to parties who have chosen alternative dispute resolution such as arbitration. Id., citing Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004).[10] "Federal policy, as evidenced by the enactment of the Alternative Dispute Resolution Act of 1998 and the Federal Arbitration Act, favors alternative dispute resolution ('ADR') and particularly arbitration." Fireman's Fund, at *3. Thus, protecting confidentiality agreements "promotes the federal policy and encourages ADR by ensuring that parties in an arbitration proceeding get the protections for which they contracted." Id.

In addition, these arbitrations involved confidential commutations agreements entered into between Global and four of its cedents. Global is in run-off and is no longer writing new business and its commutation program, which is on-going, is an important aspect of Global's finances and business. As part of its commutation process, Global and its cedents typically

---

[10]  In Gambale, which involved a confidential settlement agreement, not arbitration, the Second Circuit found that the amount of the settlement agreement was confidential and should remain confidential. The "weak" presumption of access to the transcript, where the settlement amount was disclosed in casual questioning by the court during a hearing, was not considered part of the adjudication of the litigation. 377 F.3d at 144.

17

exchange highly confidential and proprietary information and projections concerning past, current and future liabilities. See Keogh Declarations, ¶11. Global's on-going commutation program will be severely harmed if Global's' cedents cannot be assured, by way of confidentiality agreements and orders entered into by arbitration panels, that the information that they disclose to Global and Global discloses to them during this process remain confidential. See Keogh Declarations, ¶11. Although Global is permitted to share certain information with its interested retrocessionaires regarding these confidential commutations, it is done pursuant to confidentiality agreements. If cedents believe that Global cannot maintain that confidentiality when it goes to court to confirm its arbitration awards against its own retrocessionaires, then cedents are unlikely to share confidential business information with Global or enter into commutation agreements with Global. This, in turn, will severely harm Global. Id.

Financial analyses, business plans and other sensitive company information are entitled to be protected from disclosure from competitors and others that have no legitimate need for the documents. See, e.g., Mitchell v. Metropolitan Life Ins. Co., Inc., 2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004)(permitting Met Life to redact personal identifying information of employees from documents sought in discovery, and designating as confidential, and protected from the public's view, earnings and expense analyses and business plans of Met Life to be produced in discovery); In Re Zyprexa Injunction, 474 F.Supp.2d 385, 394 (E.D.N.Y. Feb. 13, 2007) ("sealing of documents are designed to permit litigants and courts to examine a party's internal records which may include...valuable business secrets and commercial data, without unnecessarily exposing them to the public's and competitor's views").

In the reinsurance industry, arbitrations are typically done pursuant to confidentiality agreements – one of the prime reasons parties chose to arbitrate, rather than litigate their

disputes.  See Keogh Declarations, ¶12; see also ARIAS-U.S., Practical Guide, Chapter III: The Organizational Meeting, 3.8. Confidentiality, Comment C ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement.").[11]  A party should not lose the confidentiality that a panel has ordered solely because the party files a confirmation proceeding in the court.  Indeed, in the Hartford Arbitration, the panel still has ongoing jurisdiction for a limited time period of any future disputes relating to the issues in that matter.

Both parties recognized the "serious injury" that could result if a breach of the confidentiality order/agreement occurred, by permitting an aggrieved party to seek equitable relief in court to prohibit further breaches.  Keogh Declarations, Exh. 1, at paragraph 6.[12]

If this Court were to permit disclosure of the sealed Awards and information describing those Awards, Global will not only lose the expectation of privacy that it had pursuant to the panels' confidentiality order/agreement but also on the reliance it had in the court's prior Sealing Orders pursuant to which it submitted these documents.  Allowing the public access to arbitration awards (as well as other Arbitration Information as the case may be) simply because a party has sought to confirm it would provide enormous leverage to the party aggrieved by the arbitration results as the other party would fear going into court to confirm the award if the courts were to release confidential Arbitration Information.  At the heart of any arbitration is the award.  It should remain confidential.

Arbitration awards, which are usually done with little or no reasoning, are not precedent

---

[11] Available at www.arias-us.org.

[12] To the extent that Argonaut may argue that nothing should remain under seal or redacted, the provision of the Confidentiality Order and Confidentiality Agreement requiring the parties to assist and resist disclosure of Arbitration Information would be violated.

like an opinion or decision of a court, so there is no public interest in accessing these Awards and the limited portions of the documents that describe them.

Accordingly, even though in connection with these unopposed petitions to confirm awards it is doubtful that the public has any presumptive right of access, Global has demonstrated good cause – by way of specific harm – that may befall it if the requested documents are not kept under seal or redacted. Global has also narrowly tailored the scope of what it now seeks to remain under seal.

## CONCLUSION

Global requests that the Court continue to seal the limited exhibits, i.e., the panel's Awards in these two matters, and permit redaction of the documents that describe those exhibits in the court file. This will serve the interests of the public as well as the parties and preserve the confidentiality and privacy rights of the parties.

Dated: Short Hills, New Jersey
      December 6, 2007

                  BUDD LARNER, P.C.
                  150 John F. Kennedy Parkway
                  Short Hills, New Jersey 07078
                  (973) 379-4800
                  Attorneys for Petitioner
                  GLOBAL Reinsurance Corporation - U.S. Branch

                  BY: _____
                      Joseph L. Schiavone (JS 7303)
                      Jeffrey S. Leonard (JL 5931)
                      Ivan V. Miletic (IM 9922)

661049w

20