UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between: | : Civil Action No. |
| | : **07 CV 8350 (PKC)** |
| GLOBAL REINSURANCE CORPORATION - U.S. BRANCH, | : |
| | : |
| | : |
| Petitioner, | : **DECLARATION OF BARRY** |
| | : **KEOGH** |
| -against- | : |
| | : |
| ARGONAUT INSURANCE COMPANY, | : |
| Respondent. | : |
| | : |
| | : |

I, Barry Keogh, declare the following to be true under the penalty of perjury and pursuant to 28 U.S.C. §1746:

1. I am a Senior Vice President at Global Reinsurance Department Corporation – U.S. Branch ("Global"). I submit this Declaration in response to the Court's November 28, 2007 Memorandum and Order on Sealed Submissions. I have personal knowledge of the facts set forth herein, including the facts surrounding the arbitration hearing, commonly referred to as the U.S. Branch-Hartford/First State arbitration that is the subject matter of Global's Petition to Confirm the Arbitration Award filed with the Court on September 25, 2007.

2. The arbitration Panel issued a Confidentiality Agreement dated May 17, 2006. In accordance with that Confidentiality Agreement, the parties are required to keep confidential "Arbitration Information" which requires that in connection with any court proceedings relating to the arbitration award that "subject to court approval, all submissions of Arbitration Information to a court shall be sealed." See Confidentiality

Agreement, at paragraph 3, previously submitted as Exhibit I to the Declaration of Ivan V. Miletic ("Miletic Declaration") dated September 25, 2007, which for convenience is also annexed hereto Exhibit 1.

3.    The definition of Arbitration Information is broad and includes "all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings...." Id., at paragraph 2.

4.    The Confidentiality Agreement further provides that "in all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." See Exhibit 1, paragraph 3.

5.    Under the broad definition of "Arbitration Information," all of the exhibits to the Miletic Declaration previously filed with the Court, with the exception of the Confidentiality Agreement itself (Exhibit I) which would be disclosed to establish its existence, are "Arbitration Information" to be kept confidential.   These documents included Global's demand for arbitration, the retrocessional Treaties that were exchanged in discovery, and the Panel's arbitration Awards of May 23, 2007 and June 27, 2007. See Miletic Declaration, previously submitted at Exhibits A to G (retrocessional Treaties); Exhibit H (arbitration demand); Exhibit J (May 23, 2007 Final Award) and Exhibit K (June 27, 2007 Supplemental Order Setting Forth the Dispute Resolution Mechanism and Protocol to the Panel's May 23, 2007 Final Award).   Likewise, those portions of the

accompanying Petition to Confirm and Memorandum of Law filed on September 25, 2007 that described these documents are also considered Arbitration Information.

6.    However, given the Court's concerns as expressed in its November 28, 2007 Order and in an effort to narrow the scope of the existing Sealing Order that seals the entire record in this case, and with the understanding and agreement from Argonaut that it will not assert that Global is somehow violating the Confidentiality Agreement, Global requests that the following information and documents now before the Court under seal, essentially the arbitration Awards of May 23, 2007 and June 27, 2007 and discussion concerning their content, remain either under seal and/or submitted in a redacted form:

- Redact paragraph 17 of Global's Petition to Confirm Arbitration Award that quotes from the arbitration's Final Award dated May 23, 2007.  Copies of the redacted pages of the Petition are annexed hereto as Exhibit 2 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Redact portions of pages 8 to 10, and portions of page 11, of Global's Brief in Support of Petition to Confirm Arbitration Award and Motion to Seal, dated September 25, 2007, that quotes from the Final Award dated May 23, 2007 and/or the June 27, 2007 Supplemental Order.  Copies of the redacted pages of the Brief are annexed hereto as Exhibit 3 and a set of the redacted and unredacted pages are being submitted to the Court for an in camera review.

- Continue to seal and prohibit from public access the arbitration's Final Award dated May 23, 2007 and the Supplemental Order dated June 27, 2007 attached to the Miletic Declaration as Exhibits J and K, respectively.   Copies of Exhibits J

and K to the Miletic Declaration are being submitted to the Court for an <u>in camera</u> review.

7.    The above-information and exhibit concerning the Award are clearly "Arbitration Information" under the definition of the Panel's Confidentiality Agreement. The parties conducted the arbitration pursuant to the Confidentiality Agreement and expected that the Awards and decisions of the Panel would remain confidential and not open to public view.

8.    When Global filed its Petition to Confirm the Arbitration Award, it complied with the Confidentiality Agreement and submitted its papers to the Court along with a Motion to Seal.  When it did so, Global anticipated that there may be more Arbitration Information that would later be submitted to the Court such as hearing transcripts, exhibits and briefs before the Panel that discussed in detail Global's commutation program including its confidential and propriety targets for commutation and pricing methodologies used for commutations.   As Global is in run-off and is continuing its commutation program such information would be detrimental to Global if released as it would put Global at a disadvantage in negotiating other commutations with its cedents.

9.    As it turned out, the Petition to Confirm has been unopposed by Argonaut which has not filed any motion or cross-petition to vacate the Awards.  Argonaut's Answer, although it did dispute that two of the Treaties were complete copies, did not ask for any affirmative relief, nor did it challenge the confirmation of the Awards.

10.    It is my understanding that the parties, through counsel, are in the process of attempting to agree on the wording for a stipulation and order to confirm the Awards.

11.  Global will be harmed if the Awards and quotations from them, made during a confidential and private arbitration with one of its retrocessionaires, Argonaut, are made public.  For example, Global is concerned that its on-going commutation program with its own cedents will be hampered if those cedents become concerned that the commutations may become the subjects of future arbitrations between Global and its retrocessionaires -- that despite confidentiality orders by an arbitration panel -- will nonetheless become a matter of public record once an award is confirmed or vacated.  Typically, during these commutation negotiations both sides release to one another very confidential information about projections of past, current and future liabilities as well as privileged claim information, and the commutation agreements themselves contain confidentiality provisions.  Although Global is normally permitted to share such information with its retrocessionaires for collection purposes, it is done so pursuant to confidentiality agreements with the retrocessionaires.

12.  In the reinsurance industry, arbitrations are typically done pursuant to confidentiality agreements or orders such as the Agreement entered by the Panel in this arbitration.  Global relied on that Confidentiality Agreement in placing the Awards and the quotations from them before this Court and the Awards and quotations should remain confidential and under seal.

13.  Global and Argonaut are also subject to the continuing jurisdiction of the same Panel for dispute resolution as outlined in the June 27, 2007 Supplemental Order of the Panel.  In the Confidentiality Agreement, which was signed by the parties and the Panel, all concerned recognized the need for confidentiality and the serious injury that could result if a breach were to occur.  See Exhibit 1, at paragraph 6.

14. Since the proceedings before the Panel may commence again if disputes arise between the parties relating to this arbitration, it is even more important that confidentiality remain intact.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this ___5^{74}___ day of December, 2007, in Cologne, Germany.

BARRY KEOGH

660951W

# EXHIBIT 1

In the Matter of the Arbitration Between  :

GLOBAL REINSURANCE CORP. -   :  James J. Phair, Umpire
U.S. BRANCH f/k/a GERLING    :  Richard L. White, Arbitrator
GLOBAL REINSURANCE CORP -   :  Paul C. Thomson, III, Arbitrator
U.S. BRANCH,         :

        Petitioner,  :

    - and -      :

ARGONAUT INSURANCE COMPANY, :

        Respondent. :

## CONFIDENTIALITY AGREEMENT

1. The parties intending to be bound by this agreement are:

  a. GLOBAL REINSURANCE CORP - U.S. BRANCH, f/k/a GERLING GLOBAL REINSURANCE CORP. - U.S. BRANCH ("GLOBAL"), and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

  b. ARGONAUT INSURANCE COMPANY ("ARGONAUT") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, GLOBAL and ARGONAUT agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this

Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b. counsel for a party or employees of counsel's law firm who are assisting counsel;

    c. employees and agents of the parties for purposes consistent with this agreement;

    d. an y party's deposition or trial witness;

    e. any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

    f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party(ies) in writing as soon as possible after the subpoena, request or court order is received, to permit the other party(ies) to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party(ies), the obligated party will cooperate (at the expense of the requesting other party(ies)) in the defense of a demand.

6. The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another

party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED: _____ for _____ Petitioner

_____ for _____ Respondent

Dated: _____

3

EXHIBIT A

| In the Matter of the Arbitration Between | : |
|---|---|

In the Matter of the Arbitration Between :
                                           :
GLOBAL REINSURANCE CORP. -    : James J. Phair, Umpire
U.S. BRANCH f/k/a GERLING       : Richard L. White, Arbitrator
GLOBAL REINSURANCE CORP -    : Paul C. Thomson, III, Arbitrator
U.S. BRANCH,                            :
                                      :
                   Petitioner,   :
                                      :
           - and -             :
                                      :
ARGONAUT INSURANCE COMPANY,   :
                                      :
                   Respondent.  :

AFFIDAVIT

_____, being duly sworn, deposes and says:

1. I live at _____
_____

2. I am employed as (position) by (name and address of employer),
_____

3. I am aware that the parties to In the Matter of the Arbitration Between GLOBAL REINSURANCE CORP - U.S. BRANCH, f/k/a GERLING GLOBAL REINSURANCE CORP. - U.S. BRANCH ("GLOBAL"), ARGONAUT INSURANCE COMPANY ("ARGONAUT") have entered into a Confidentiality Agreement dated _____. I have received and read a copy of that Confidentiality Agreement.

4. I agree to review or otherwise use the material produced in the instant arbitration by _____ only under supervision of a party's counsel and only in connection with this particular arbitration.

5. I agree that I am bound by the terms of the Confidentiality Agreement as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____
_____

4

or _____
to or with any person other than those permitted access to such material under the Confidentiality
Agreement.

(Signature)_____

Sworn to before me this
_____ day of _____, 20____.


_____
Notary Public (SEAL)


596580.W

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Redacted Version

In the Matter of the
Arbitration Between

GLOBAL Reinsurance Corporation
- U.S. Branch,

                    Petitioner,

- against -

Argonaut Insurance Company,

                    Respondent

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:



Docket No.

VERIFIED PETITION TO CONFIRM
ARBITRAL AWARD

**FILED UNDER SEAL**

        Petitioner GLOBAL Reinsurance Corporation – U.S.
Branch ("Global"), by and through its attorneys, Budd
Larner, P. C., alleges as follows:

                    <u>Nature of the Petition</u>

        1.   This is a Petition pursuant to 9 U.S.C. §§9 and
201-203 to confirm a reinsurance arbitration award issued
on 23 May 2007 (the "May 23, 2007 Award") between the
parties entitled In the Matter of the Arbitration between
GLOBAL Reinsurance Corp. -U.S. Branch, f/k/a Gerling Global
Reinsurance Corp. – U.S. Branch, Petitioner, against
Argonaut Insurance Company, Respondent.   As the parties
have recently had several arbitrations, the parties have

commonly referred to this arbitration as the "USB – Hartford/First State" arbitration.

<u>The Parties, Jurisdiction and Venue</u>

2.    Global is a branch of a foreign reinsurance company organized and existing under the laws of Germany, with its principal place of business in Cologne, Germany. It is authorized to write certain insurance and reinsurance in New York, and it maintains a place of business in New York, New York.

3.    Upon information and belief, Argonaut is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

4.    The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 9 U.S.C. §201-203. The arbitration agreements at issue are contained in retrocessional reinsurance contracts between Global and Argonaut. Those contracts constitute commercial agreements between a citizen of a foreign country and a citizen of the United States. The foreign country, Germany, and the United States are signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq*.

5.   In   addition,   the   Court   has   subject   matter jurisdiction over this matter based on alienage pursuant to 28 U.S.C. §1332.   This proceeding ancillary to the USB-Hartford/First State arbitration is between a citizen of a certain state, Argonaut, as a citizen of Illinois, and Global,   a   foreign   corporation,   and   the   amount   in controversy in this action exceeds the sum of $75,000.

6.   Venue is proper in this district pursuant to 28 U.S.C.   §1391   (b)(2)   and   9   U.S.C.   §204,   because   the contracts between Global and Argonaut provide for the arbitration to take place in New York, New York, and although   the   parties   mutually   agreed   to   re-locate   the arbitration to New Jersey, a substantial part of the events giving   rise   to   the   claim   occurred   in   this   district. Additionally, venue is proper under 28 U.S.C. §1391 (c) as Argonaut is subject to service of process in this district.

<u>Factual Background</u>

A.   <u>The Retrocessional Contracts and Arbitration Clauses</u>

7.   Reinsurance   enables   an   insurance   company   to insure   its   liability   under   insurance   policies   that   it issues to its insureds.  In reinsurance, the insurer (often referred to in this context as the "cedent") transfers a portion of its liability to a reinsurer.

3

8.   A retrocessional contract is reinsurance that reinsurers a reinsurer.   The reinsurer in this context is sometimes referred to as the "retrocessionaire."

9.   Global and Respondent Argonaut Insurance Company ("Argonaut") are parties to certain retrocessional reinsurance contracts (the "Contracts") under which Argonaut reinsures Global.   A copy of the Excess of Loss Reinsurance Contract, effective from January 1, 1972 through December 31, 1975 is attached to the Declaration of Ivan V. Miletic dated September 25, 2007 ("Miletic Decl.") as Exhibit A; a copy of the First Excess of Loss Facultative Casualty Contract, effective January 1, 1966 through December 31, 1975 is attached to the Miletic Decl. as Exhibit B; a copy of the Fourth Casualty Excess of Loss Contract, effective January 1, 1971 through December 31, 1975 is attached to the Miletic Decl. as Exhibit C; a copy of the Quota Share Retrocessions Agreement, effective July 26, 1963 through December 31, 1965 is attached to the Miletic Decl. as Exhibit D; a copy of the First Surplus Facultative Casualty Retrocessions Contract, effective July 1, 1973 through December 31, 1975 is attached to the Miletic Decl. as Exhibit E; a copy of the Clash Treaty No. 4777, effective January 1, 1973 through December 31, 1975

4

is attached to the Miletic Decl. as Exhibit F; and a copy of the Clash Treaty No. 4753, effective October 1, 1970 through December 31, 1975 is attached to the Miletic Decl. as Exhibit G.

10. The Contracts, although having slight variances of language, contain an arbitration clause that provides in part that:

> A. Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise."

Miletic Decl., Exhibit A at Article IX; Exhibit B at Article XV; Exhibit C at Article XIV; Exhibit D at Article IX; Exhibit E at Article XIII; Exhibit F at Article XV; and Exhibit G at Article XV.

11. Under the Contracts, all disputes are required to be resolved by arbitration before a three-member Board of Arbitration (also referred to herein as the "Panel"), with each party designating an arbitrator and the two arbitrators selecting an umpire. Miletic Decl., Exhibit A at Article IX; Exhibit B at Article XV; Exhibit C at

5

Article XIV; Exhibit D at Article IX; Exhibit E at Article

XIII; Exhibit F at Article XV; and Exhibit G at Article XV.

12. The Contracts, although having slight variances

of language, all provide that the agreements are honorable

engagements:

> The Board [of arbitrators] shall interpret this
> Reinsurance Agreement as an honorable engagement
> rather than as a merely technical legal
> obligation and shall make its award with a view
> to effecting the general purpose of this
> Reinsurance Agreement ....

See Exhibit A at Art. IX(D). See also Exhibit B at Art.

XIV(d); Exhibit C at Art. XIV(d); Exhibit D at Art. IX;

Exhibit E at Art. XIII, Exhibit F at Art. XIV(d); Exhibit G

at Art. XIV(d).

13. The Contracts further emphasize the parties'

intent to have the Panel interpret the agreements as an

"honorable undertaking" by including an explicit, broad,

and unconditional follow the fortunes clause:

> <u>HONORABLE UNDERTAKING</u>
>
> This Agreement shall be construed as an honorable
> undertaking between the parties hereto not to be
> defeated by technical legal construction, it
> being the intention of this Agreement that the
> fortunes of the Reinsurer [Argonaut] shall *follow
> the fortunes* of the Company [Global].

(Emphasis added). See, e.g., Exhibit B at Art. XV; Exhibit

C at Art. XV; Exhibit F at Art. XVI; Exhibit G at Art. XVI.

6

B.    The May 23, 2007 USB-Hartford/First State Award

14.    By letter dated October 20, 2005, Global demanded arbitration against Argonaut of "all disputed issues relating to U.S. Branch's claim for payment of outstanding retrocessional balances owed to it by Argonaut in connection with U.S. Branch's commutation with its cedents, the Hartford and First State companies ("Hartford"). A copy of the arbitration demand is attached hereto as Exhibit H.

15.    The arbitration proceeded before a three-member panel (the USB-Hartford/First State Panel) comprised of Paul C. Thomson, III and Richard L. White, as the party-appointed arbitrators for Argonaut and Global, respectively, and James J. Phair, as the Umpire. The arbitration was conducted pursuant to a Confidentiality Agreement, which remains in effect. A copy of the Confidentiality Agreement is attached to the Miletic Declaration as Exhibit I.

16.    Following discovery, the parties submitted pre-hearing briefs and attended a five-day arbitration hearing, from April 16, 2007 to April 20, 2007.

17.  The Panel issued its Award on May 23, 2007,

# REDACTED

**REDACTED**

# REDACTED

A copy of the Award is attached to the Miletic Declaration as Exhibit J, and is incorporated herein by reference.

18.   Following the Award,

# REDACTED

This supplemental order was made part of the Panel's May 23, 2007 Final Award. <u>See</u> Exh. K to the Miletic Decl., Supplemental Order Setting Forth the Dispute Resolution Mechanism and Protocol.

<u>Count I</u>

20.   Global incorporates each of the allegations contained in paragraphs 1 through 18 of this Petition.

21.   No motion has been made to vacate, modify, or correct the May 23, 2007 Award or the Supplemental Order dated June 27, 2007.

10

22.  Global is entitled to confirmation of the May 23, 2007 Award, including the Supplemental Order of June 27, 2007 which was incorporated into the Final Award, pursuant to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and 9 U.S.C. §§201 *et seq.*

WHEREFORE, Global requests that the Petition be granted in all respects, and that the Court issue a judgment confirming the Award and granting Global such other and further relief as is just and proper.

Dated:   Short Hills, New Jersey
         September 25, 2007

                                        BUDD LARNER, P.C.
                                        150 John F. Kennedy Parkway
                                        Short Hills, New Jersey 07078
                                        (973) 379-4800
                                        Attorneys Petitioner
                                        GLOBAL  Reinsurance  Corporation-U.S. Branch

BY: _____
                  Joseph J. Schiavone (JS 7303)
                  Jeffrey S. Leonard (JL 5931)
                  Ivan V. Miletic (IM 9922)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of the Arbitration    :   Docket No. _____
Between:                             :
                                     :
 GLOBAL Reinsurance Corporation      :
- U.S. Branch,                       :
                                     :
        Petitioner/Respondent        :
                                     :
                                     :
- against -                          :
                                     :
Argonaut Insurance Company           :
                                     :   **FILED UNDER SEAL**
        Respondent                   :

---

## NOTICE OF PETITION TO CONFIRM ARBITRATION AWARD

BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
(973) 379-4800
Attorneys for Petitioner GLOBAL Reinsurance Corporation
- U.S. Branch

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Redacted Version

-------------------------------------------
In the Matter of the Arbitration    : Docket No. ____
Between:                            :
                                    :
GLOBAL REINSURANCE CORPORATION – U.S. :
BRANCH,                             :
                                    :
                     Petitioner,    :    **FILED UNDER SEAL**
                                    :
          -against-                 :
                                    :
ARGONAUT INSURANCE COMPANY,         :
                                    :
                     Respondent.    :
-------------------------------------------

---

### Brief in Support of Petition to Confirm Arbitration Award and in Support of Motion to Seal the Record

---

> BUDD LARNER, P.C.
> 150 John F. Kennedy Parkway
> CN 1000
> Short Hills, NJ  07078-0999
> (973) 379-4800
> Attorneys for Petitioner,
> GLOBAL Reinsurance Corporation -
> U.S. Branch

On the Brief:

Joseph J. Schiavone
Jeffrey S. Leonard
Ivan V. Miletic

653438w

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................... ii

PRELIMINARY STATEMENT ...................................1

The Parties, Jurisdiction and Venue .....................2

Factual Background ......................................4

    A.  The Retrocessional Contracts and Arbitration
       Clauses.........................................4

    B.  The May 23, 2007 XOL Award......................7

ARGUMENT .............................................11

    POINT I ..........................................11

    THE FINAL AWARD SHOULD BE CONFIRMED..............11

    POINT II .........................................11

    THE RECORD IN THIS PROCEEDING SHOULD BE
    SEALED...........................................11

        A.  The Parties and Arbitration Panel
           Relied on the Confidential Nature
           Of Arbitration Information ..............11

        B.  The Public Has No Interest in These
           Proceedings, and Global Would Be
           Harmed by Disclosure of Arbitration
           Information ............................13

        C.  The Panel and Parties; Decision to
           Agree that the Arbitration Be
           Confidential Should be Implemented
           by the Court ...........................14

CONCLUSION ...........................................15

653438w

## TABLE OF AUTHORITIES

PAGE

CASES

**9**

Dirussa v. Dean Witter Reynolds Inc., 121 F. 2d 818 (2d
   Cir. 1997) ........................................... 15

Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S,
   333 F.3d 383, 389 (2d Cir., 2003) ..................... 14

Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgt.,
   Inc., 2005 WL 1522783 (E.D.N.Y. 2005) ............. 13, 16

Gambale v. Deutsche Bank AG 377 F.3d 133, 143 (2d Cir.
   2004) .............................................. 14


**10**

28 U.S.C. §1331 ......................................... 3
28 U.S.C. §1391 (b)(2) .................................. 4
28 U.S.C. §1391 (c) ..................................... 4
9 U.S.C. §204 ........................................... 4
9 U.S.C. §9 ............................................ 11
New York Convention of the Federal Arbitration Act, 9 U.S.C
   §201-203 ........................................... 1, 3

## PRELIMINARY STATEMENT

This is a petition pursuant to the New York Convention of the Federal Arbitration Act, 9 U.S.C §201-203 to confirm a reinsurance arbitration award issued on 23 May 2007 (the "May 23, 2007 Award") between the Petitioner GLOBAL Reinsurance Corporation - U.S. Branch ("Global") and Respondent Argonaut Insurance Company ("Argonaut") and as supplemented by the Panel's June 27, 2007 Order. As the parties have recently had several arbitrations, the parties have commonly referred to this arbitration as the "USB-Hartford/First State" arbitration.

Global as a branch office of a foreign reinsurer and Argonaut, as its retrocessionaire, are parties to various retrocessional reinsurance contracts under which Argonaut reinsures Global. The contracts contain a broad arbitration clause. Global commenced an arbitration to recover amounts due under the contracts. The arbitration related, in part, to losses arising from claims stemming from a commutation between the Hartford Group Company ("Hartford") cedents and Global.

Following lengthy discovery and a five-day hearing, the duly constituted arbitration panel issued theMay 23, 2007 Award, which it later supplemented on June 27, 2007 and incorporated into the May 23, 2007 Award. No motion to

vacate or modify the Final Award has been served, and Global is entitled to a judgment confirming the May 23, 2007 Award, as supplemented under the New York Convention.

Global is also seeking to file its Petition and all other papers in this matter under seal. Good cause to seal the record exists for two reasons. First, the underlying reinsurance arbitration was conducted pursuant to a Confidentiality Agreement, which remains in effect. <u>See</u> Declaration of Ivan V. Miletic dated September 25, 2007 ("Miletic Decl."), Exhibit I at ¶2. That Agreement provides that all arbitration information is to be kept confidential, and requires that, subject to court approval, any disclosures of such information or documents to a court be sealed. <u>Id.</u> at ¶3. Indeed, the parties are obligated to cooperate in resisting disclosure of arbitration-related materials.

Second, the public has no legitimate or real interest in the confidential arbitration documents and, as shown below, Global would be harmed if the arbitration documents and information were to be disclosed.

<u>The Parties, Jurisdiction and Venue</u>

Global is a U.S. branch of a foreign reinsurance company organized and existing under the laws of Germany, with its principal place of business in Cologne, Germany. It is authorized to write certain insurance and reinsurance in New York, and it maintains a place of business in New York, New York.

Upon information and belief, Argonaut is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 9 U.S.C. §201-203. The arbitration agreements at issue are contained in retrocessional reinsurance contracts between Global and Argonaut. Those contracts constitute commercial agreements between a citizen of a foreign country and a citizen of the United States. The foreign country, Germany, and the United States are signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq.*

In addition, the Court has subject matter jurisdiction over this matter based on alienage pursuant to 28 U.S.C. §1332. This proceeding ancillary to this arbitration is between a citizen of a certain state, Argonaut, as a

3

citizen of Illinois, and Global, a foreign corporation, and the amount in controversy in this action exceeds the sum of $75,000.

Venue is proper in this district pursuant to 28 U.S.C. §1391 (b)(2) and 9 U.S.C. §204, because the contracts between Global and Argonaut provide for the arbitration to take place in New York, New York, and although the parties mutually agreed to re-locate the arbitration to New Jersey, a substantial part of the events giving rise to the claim occurred in this district.  Additionally, venue is proper under 28 U.S.C. §1391 (c) as Argonaut is subject to service of process in this district.

Factual Background

A.    The Retrocessional Contracts and Arbitration Clauses

Reinsurance enables an insurance company to insure its liability under insurance policies that it issues to its insureds.  In reinsurance, the insurer (often referred to in this context as the "cedent") transfers a portion of its liability to a reinsurer.  A retrocessional contract is reinsurance that reinsures a reinsurer.  The reinsurer in this context is sometimes referred to as the "retrocessionaire."

Global and Argonaut are parties to certain retrocessional reinsurance contracts (the "Contracts")

4

under which Argonaut reinsures Global. A copy of the Excess of Loss Reinsurance Contract, effective from January 1, 1972 through December 31, 1975 is attached to Miletic Decl. as Exhibit A; a copy of the First Excess of Loss Facultative Casualty Contract, effective January 1, 1966 through December 31, 1975 is attached to the Miletic Decl. as Exhibit B; a copy of the Fourth Casualty Excess of Loss Contract, effective January 1, 1971 through December 31, 1975 is attached to the Miletic Decl. as Exhibit C; a copy of the Quota Share Retrocessions Agreement, effective July 26, 1963 through December 31, 1965 is attached to the Miletic Decl. as Exhibit D; a copy of the First Surplus Facultative Casualty Retrocessions Contract, effective July 1, 1973 through December 31, 1975 is attached to the Miletic Decl. as Exhibit E; a copy of the Clash Treaty No. 4777, effective January 1, 1973 through December 31, 1975 is attached to the Miletic Decl. as Exhibit F; and a copy of the Clash Treaty No. 4753, effective October 1, 1970 through December 31, 1975 is attached to the Miletic Decl. as Exhibit G.

The Contracts, although having slight variances of language, contain an arbitration clause that provides in part that:

> A. Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Reinsurance Agreement or any part thereof, whether arising before or after termination of the Reinsurance Agreement shall be referred to a Board of Arbitration consisting of two (2) arbitrators and an umpire, who shall be active or retired officers of Insurance or Reinsurance Companies. The seat of the Board of Arbitration shall be in New York unless the disputants agree otherwise."

Miletic Decl., Exhibit A at Article IX; Exhibit B at Article XV; Exhibit C at Article XIV; Exhibit D at Article IX; Exhibit E at Article XIII; Exhibit F at Article XV; and Exhibit G at Article XV. Under the Contracts, all disputes are required to be resolved by arbitration before a three-member Board of Arbitration (also referred to herein as the "Panel"), with each party designating an arbitrator and the two arbitrators selecting an umpire. Miletic Decl., Exhibit A at Article IX; Exhibit B at Article XV; Exhibit C at Article XIV; Exhibit D at Article IX; Exhibit E at Article XIII; Exhibit F at Article XV; and Exhibit G at Article XV.

The Contracts, although having slight variances of language, all provide that the agreements are honorable engagements:

> The Board [of arbitrators] shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal

6

> obligation and shall make its award with a view
> to effecting the general purpose of this
> Reinsurance Agreement ....

See Exhibit A at Art. IX(D). See also Exhibit B at Art.
XIV(d); Exhibit C at Art. XIV(d); Exhibit D at Art. IX;
Exhibit E at Art. XIII, Exhibit F at Art. XIV(d); Exhibit G
at Art. XIV(d).

The Contracts further emphasize the parties' intent to have the Panel interpret the agreements as an "honorable undertaking" by including an explicit, broad, and unconditional follow the fortunes clause:

### HONORABLE UNDERTAKING

> This Agreement shall be construed as an honorable
> undertaking between the parties hereto not to be
> defeated by technical legal construction, it
> being the intention of this Agreement that the
> fortunes of the Reinsurer [Argonaut] shall *follow
> the fortunes* of the Company [Global].

(Emphasis added). See, e.g., Exhibit B at Art. XV; Exhibit
C at Art. XV; Exhibit F at Art. XVI; Exhibit G at Art. XVI.

B.    <u>The May 23, 2007 Award</u>

By letter dated October 20, 2005, Global demanded arbitration against Argonaut of "all disputed issues relating to U.S. Branch's claim for payment of outstanding retrocessional balances owed to it by Argonaut in connection with U.S. Branch's commutation with its cedents, the Hartford and First State companies ("Hartford"). A copy of the arbitration demand is attached hereto as Exhibit H.

The arbitration proceeded before a three-member panel (the USB-Hartford/First State Panel) comprised of Paul C. Thomson, III and Richard L. White, as the party-appointed arbitrators for Argonaut and Global, respectively, and James J. Phair, as the Umpire. The arbitration was conducted pursuant to a Confidentiality Agreement, which remains in effect. A copy of the Confidentiality Agreement is attached to the Miletic Declaration as Exhibit I. Following lengthy discovery, the parties submitted pre-hearing briefs and attended a five-day arbitration hearing from April 16, 2007 to April 20, 2007.

The Panel issued its Award on May 23, 2007,

# REDACTED

**REDACTED**

# REDACTED

A copy of the Award is attached to the Miletic Decl. as Exhibit J, and is incorporated herein by reference.

Following the Award,

# REDACTED

This Supplemental Order was made part of the Panel's May 23, 2007 Final Award.  <u>See</u> Exh. K to the Miletic Decl., Supplemental Order Setting Forth the Dispute Resolution Mechanism and Protocol.

<u>ARGUMENT</u>

<u>POINT I</u>

THE FINAL AWARD
<u>SHOULD BE CONFIRMED</u>

Pursuant to 9 U.S.C. §9, the court "must grant" an order confirming an arbitration award unless the award is vacated, modified or corrected. 9 U.S.C §9.  No grounds exist to disturb the USB-Hartford/First State Panel's Award of May 23, 2007, as supplemented by the Order of June 27, 2007.  As such, the court should grant an order confirming the USB-Hartford/First State Panel's May 23, 2007 Award, as

supplemented by the June 27, 2007 Order which was incorporated by the Panel into the May 23, 2007 Award.

POINT II

THE RECORD IN THIS PROCEEDING
SHOULD BE SEALED

A.    The Parties and Arbitration Panel Relied on the Confidential Nature of Arbitration Information

Reinsurance arbitrations generally are conducted on a confidential basis; this is one of the reasons why most reinsurance contracts contain arbitration clauses and why most reinsurance disputes are resolved in arbitration rather than through the courts.

The USB-Hartford/First State Panel here recognized these realities when it entered into a strict Confidentiality Agreement governing this matter. In that Agreement, the Panel and the Parties not only required that information and documents relating to the arbitration remain confidential, but it expressly found that "serious injury" could result from any breach of confidentiality and provided a remedy for such a breach:

> The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

12

Miletic Decl., Exh. I at ¶6.

The Confidentiality Agreement obligates the parties to maintain the confidentiality of arbitration-related information and documents, and requires that, subject to court approval, any such documents or information disclosed to a court be sealed. Further, the parties are directed by the Agreement to "cooperate with each other in resisting or limiting disclosure" of arbitration-related materials. Id. at ¶5. For this reason, Argonaut could not oppose this motion to seal; indeed, Argonaut is obligated by the Agreement to cooperate in obtaining a sealing order.

Courts in this Circuit generally uphold and apply parties' confidentiality agreements in the arbitration context, recognizing that the maintenance of confidentiality advances the important public policy interest in encouraging alternative dispute resolution. "There are important policy interest [sic] involved in protecting the expectations of confidentiality belonging to parties who have chosen an alternative means of dispute resolution." Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgt., Inc., 2005 WL 1522783, at *3 (E.D.N.Y. June 28, 2005). The Second Circuit has further explained that "honoring the parties' express wish for confidentiality may

13

facilitate settlement, which courts are bound to encourage." Gambale v. Deutsche Bank AG 377 F.3d 133, 143 (2d Cir. 2004). These principles apply with even greater force where, as here, the requirement of confidentiality was imposed by an arbitration panel because of the deference that a court must afford to the arbitrators' rulings. See Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (to interfere with arbitration process "would frustrate the intent of the parties, and thwart the usefulness of arbitration.")

   B.    The Public Has No Interest in These Proceedings,
         and Global Would Be Harmed by Disclosure of
         Arbitration Information

   The documents that will be filed in this action contain confidential and proprietary information concerning agreements between a reinsurer and its reinsureds and between a reinsurer and its retrocessionaires. The public has no legitimate interest in these documents.

   Further, Global will be injured if other reinsureds or retrocessionaires have access to the confidential business information contained in the documents. For example, these documents include confidential information concerning a commutation and settlements that Constitution entered into with several of its reinsureds. Because Global is engaged

in commutation and settlement negotiations with other reinsureds, the release of any of these documents would compromise those negotiations, causing injury to Constitution and its retrocessionaires.

    C.    The Panel and Parties' Decision to Agree that the Arbitration Be Confidential Should Be Implemented by the Court

The Court should order the sealing of all pleadings and papers in this action. This is consistent with the Agreement entered into by the Parties and the USB-Hartford/First State Panel. Miletic Decl., Exhibit I.

In Dirussa v. Dean Witter Reynolds Inc., 121 F. 2d 818 (2d Cir. 1997), the Second Circuit affirmed an order sealing the entire court file, except for the Court's opinions and orders. In that case, the parties had entered into a confidentiality agreement in the course of an arbitration. The agreement required all papers in any subsequent action to be filed under seal. Id. at 826. Here, too, the Confidentiality Agreement entered by the Arbitration Panel and Parties requires that "subject to court approval,... all submissions of Arbitration Information to a court shall be sealed." Miletic Decl., Exh. I at ¶3. In light of the strong public policy in favor of preserving the confidentiality of arbitration

proceedings, the Court should seal the entire file in this action.

## CONCLUSION

For the foregoing reasons, Global requests that the Petition be granted in all respects, and that the Court seal the record pertaining to this petition, and issue a judgment confirming the May 23, 2007 Award, as supplemented by the Panel in its June 27, 2007 Order and granting Global such other and further relief as is just and proper.

Dated:    Short Hills, New Jersey
          September 25, 2007

> BUDD LARNER, P.C.
> 150 John F. Kennedy Parkway
> Short Hills, New Jersey 07078
> (973) 379-4800
> Attorneys Petitioner GLOBAL
> Reinsurance Corporation
> - U.S. Branch
>
> By: _____
>
> Joseph J. Schiavone (JS 7303)
> Jeffrey S. Leonard (JL 5931)
> Ivan V. Miletic (IM 9922)