# EXHIBIT 2

CANCELLATION ADDENDUM

to the

INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE AND TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, N.Y., (hereinafter called the "Company") of the one part, and

ARGONAUT INSURANCE COMPANY, Menlo Park, Cal.

(hereinafter called the "Subscribing Reinsurer") of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is
terminated effective at midnight December 31, 1975. The Subscribing
Reinsurer shall be liable for all losses occurring prior to the date of
termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Cancellation Addendum, in
duplicate, as of the dates undermentioned.

At New York, N.Y., this     8th     day of    April,        1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                      _____
Vice President                                Vice President & Secretary

and at _____ this _____     day of _____ 1976

_____                      _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

<u>ADDENDUM NO. I</u>

to the

INTERESTS AND LIABILITIES AGREEMENT
FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, New York (including the liability of other members of the
Gerling Group of Insurance Companies, to the extent of their interest
in the business the subject matter hereof) (hereinafter called the
"Company") and

**ARGONAUT INSURANCE COMPANY, Menlo Park, California**

(hereinafter called the "Subscribing Reinsurer").

IT IS HEREBY MUTUALLY AGREED that effective January 1, 1975,
Article VI, Premium, in the underlying Agreement is amended to read
as follows:

"The Company shall pay to the Reinsurer a premium calculated at 0.70%
(Zero point Seventy percent) of its gross net earned premium income
in respect of business accepted by the Company in its Facultative &
Treaty Casualty Department as reported in its annual statement.

By "gross net earned premium income" is meant the earned proportion
of the Company's gross written premium in respect of the subject matter
of this Agreement less cancellations and return of premiums.

The Company shall pay to the Reinsurer annually, in quarterly installments,
a Minimum and Deposit Premium of $50,000 (Fifty Thousand Dollars).
Should the Premium for each annual period, calculated in accordance with
the first paragraph of this Article, exceed the Minimum and Deposit
Premium, the Company agrees to pay the difference to the Reinsurer.

IN WITNESS WHEREOF, the parties hereto, by their respectively duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y.  this  **6th**                    day of  **March**           1975

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By: GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____        _____
        Vice President                            Vice President & Secretary

and at  *Menlo Pk.*         this    *7th*      day of  *April*        1975
        *CALIF*

## REINSURANCE AGREEMENT

### FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
### $500,000  Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
New York, N. Y.
(including the liability of GERLING GLOBAL REINSURANCE COMPANY,
Toronto, Ontario, Canada)

(hereinafter called the "COMPANY")

of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND
LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED

(hereinafter called the "REINSURER")

of the other part

WHEREAS the Company is desirous of reinsuring its CASUALTY
LIABILITY arising under business classified by the Company as:

CASUALTY FACULTATIVE REINSURANCES and

CASUALTY TREATY REINSURANCES

NOW, THEREFORE, it is hereby agreed by and between the parties
hereto one with the other as respects said Casualty Business:

- 2 -

## ARTICLE I

This Agreement is only to pay the excess of an ultimate net loss to the Company of $500,000 (Five Hundred Thousand Dollars) each and every accident and/or occurrence with a limit of liability to the Reinsurers of $500,000 (Five Hundred Thousand Dollars) ultimate net loss each and every accident and/or occurrence arising under the business hereby reinsured.

As respects Liability assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss for which the Company shall become liable and shall pay in excess of $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss in respect of each annual period of any one original insured under one or more original policies.

The term "each and every accident and/or occurrence" as used herein shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a) Products Liability; said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product";

(b) All other classes of Personal Injury Liability and/or Bodily Injury Liability; said term shall also be understood to mean, as regards each original insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency";

(c) Property Damage (other than Automobile and Products) risks; said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same".

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that:

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

- 3 -

(ii)  the Company may elect the date on which the period of not exceeding 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months, then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d)  An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

## ARTICLE II

It is warranted for the purpose of this Agreement, the Company's maximum net liability in respect of -

   a)  Facultative Reinsurances is $575,000 (Five Hundred Seventy Five Thousand Dollars) combined single limit any one Original Insured, any one event.
   b)  It is also warranted that two or more Assureds must be involved, before there is a loss collectible excess of $500,000 from facultative business only.
   c)  Any one Treaty is $375,000 (Three Hundred Seventy Five Thousand Dollars) combined single limit any one event, any one ceding company.

## ARTICLE III

EXCLUSIONS

This Agreement shall specifically exclude coverage in respect of the following classes or classifications:

In respect of Facultative & Treaty Reinsurances:

   a) Nuclear Risks, as per attached clauses;

   b) Risks of war, bombardment, invasion, insurrection, rebellion, revolution,

- 4 -

military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause;

c)   Ocean Marine Business when written as such;

d)   Financial Guarantee and Insolvency;

e)   Directors' and Officers' Liability Insurances;

f)   Securities and Exchange Commission Liability Insurances;

g)   Errors and Omissions Coverages for Banks;

In respect of Facultative Reinsurance:

h)   Excess Catastrophe Reinsurance Treaties of Insurance Companies;

i)   Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

j)   Underground Coal Mining  -  but only as respects Excess Workmen's Compensation;

k)   Operation of Aircraft  -  but only as respects Excess Workmen's Compensation;

l)   Fireworks Manufacturers  -  but only as respects Excess Workmen's Compensation

m)   Fuse Manufacturers  -  but only as respects Excess Workmen's Compensation;

n)   Explosive Risks  -  but only as respects Excess Workmen's Compensation;

o)   Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

- 5 -

Exclusions i) to o) shall not apply to reinsurances covering original Assureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purpose of this Contract, "incidental operations" shall be deemed to mean that not more than 10% of the annual revenue from all operations is derived from operations in any of the above exclusions.

In the event the Company becomes interested in a prohibited risk other than a) and d) above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company, either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (Thirty) days thereafter.

## ARTICLE IV

### ATTACHMENT

This Agreement shall take effect at the date and times specified in the Interests and Liabilities Agreement attached hereto and shall apply to all losses occurring on and after that date and time.

Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the coverage on occupational or other disease and any policy which provides an aggregate limit of liability shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liabilities Agreement and as of the next renewal or anniversary date of Policies in force.

## ARTICLE V

### CANCELLATION

This Agreement may be cancelled at midnight any December 31st by either party giving the other at least 90 (Ninety) days' notice in advance by registered mail.

- 6 -

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on reinsurances in force at the end of said period of 90 (Ninety) days until their natural expiration or next anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the coverage on occupational or other disease and any policy which provides an aggregate limit of liability shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

## ARTICLE VI

PREMIUM

The Company shall pay to the Reinsurer a premium calculated at 0.45% (Zero point Forty Five percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative & Treaty Casualty Departments as reported in its annual statement.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums.

The Company shall pay to the Reinsurer annually, in quarterly installments, a Minimum and Deposit Premium of $25,000 (Twenty-five Thousand Dollars). Should the Premium for each annual period, calculated in accordance with the first paragraph of this Article, exceed the Minimum and Deposit Premium, the Company agrees to pay the difference to the Reinsurer.

## ARTICLE VII

CURRENCY

Premiums and losses payable hereunder shall be in United States Dollars.

- 7 -

## ARTICLE VIII

ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvage recoveries and other reinsurance, provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of ARTICLE XIII of this Reinsurance Agreement known as "Insolvency Clause".


## ARTICLE IX

CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to cooperate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in cooperation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the the Reinsurer elects not to cooperate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurers' share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

- 8 -

## ARTICLE X

### DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

(a)   Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which Reinsurer hereunder becomes liable, then no expenses shall be payable by the Reinsurer;

(b)   Should, however, the sum which is paid in adjustment of such claims or suits result in an amount being recovered under this Agreement, then the expenses shall be borne by the Company and the Reinsurer in the ratio of their respective liabilities as finally determined provided, however, that the Reinsurer shall not be liable for any part of the salaries of officials or office expenses of the Company.

## ARTICLE XI

### COMMUTATION

In the event of the Company becoming liable to make periodical payments under any business reinsured hereunder, the Reinsurer at any time after 24 (Twenty Four) months from the date of the occurrence, shall be at liberty to redeem the payments falling due from it by the payment of a lump sum.

In such event, the Company and the Reinsurer shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalize the claim. The Reinsurer's proportion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurer from its liability for such claim so capitalized.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 9 -

## ARTICLE XII

### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company shall relieve the Reinsurer of liability provided such errors and/or omissions are rectified as soon after discovery as possible. Nevertheless, the Reinsurer shall not be liable in respect of any business which may have been inadvertently included in the premium computation but which ought not to have been included by reason of the conditions of this Agreement.

## ARTICLE XIII

### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured, without diminution because of the insolvency of the Company, directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the

-10-

proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

## ARTICLE XIV

### LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrangements hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

## ARTICLE XV

### ARBITRATION

a) Any dispute or difference hereafter arising with reference to the inter-
   pretation, application or effect of this Reinsurance Agreement or any part
   thereof, whether arising before or after termination of the Reinsurance
   Agreement, shall be referred to a Board of Arbitration consisting of 2
   (Two) arbitrators and an umpire, who shall be active or retired officers
   of Insurance or Reinsurance Companies. The seat of the Board of Arbi-
   tration shall be in New York unless the disputants agree otherwise.

b) One (1) arbitrator shall be chosen by the Company and the other by the
   Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

c) Arbitration shall be initiated by either the Company or the Reinsurer
   (the petitioner) demanding arbitration and naming its arbitrator. The other
   party (the respondent) shall then have thirty (30) days, after receiving
   demand in writing from the petitioner, within which to designate its
   arbitrator. In case the respondent fails to designate its arbitrator within
   the time stated above, the petitioner is expressly authorized and em-

-11-

powered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

d) Each party shall submit its case to the Board of Arbitration within thirty (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent, in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

e) The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph c) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

## ARTICLE XVI

### HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

## ARTICLE XVII

### TAXES (Not Applicable to Domestic Reinsurers)

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% (One Percent) of the premium payable hereon to the extent such premium is subject to Federal

-12-

Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% (One Percent) from the amount of the return and the Company should take steps to recover the tax from the United States Government.

## ARTICLE XVIII

### SERVICE OF SUIT (Not Applicable to Domestic Reinsurers)

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the Superintendent of Insurance of Albany, New York, and that in any suit instituted against the Reinsurers upon this Agreement, the Reinsurers will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Company to give a written undertaking to the Company that they will enter a general appearance upon behalf of the Reinsurers in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, district or territory of the United States which makes provision therefor, the Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
   (a) become effective on or after 1st May, 1960, or
   (b) become effective before that date and contain the Limited Exclusion Provision set out above;
   provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (5) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 60 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), of those classes of policies

(a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b) described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

2/4/65
4/1955

ADDENDUM NO. 1

to the

INTERESTS AND LIABILITIES AGREEMENT

FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, of the one part
and

ARGONAUT INSURANCE COMPANY, Menlo Park, Calif.

of the other part.

It is hereby understood and agreed that effective January 1, 1972
the third and fourth paragraphs of ARTICLE VI, Premium, are deleted and
the following third paragraph is substituted therefor:

The Company shall pay to the Reinsurer annually, in quarterly
installments, a Minimum and Deposit Premium of $25,000 (Twenty-five
Thousand Dollars). Should the Premium for each annual period, calculated
in accordance with the first paragraph of this Article, exceed the
Minimum and Deposit Premium, the Company agrees to pay the difference
to the Reinsurer.

All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto, by their respective
duly authorized officers, have executed this Agreement, in duplicate,
as of the dates undermentioned.

At New York, N.Y.                    this  20th  day  of January 1972.

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By GERLING GLOBAL OFFICES, INC., U. S. MANAGER


_____          _____
Vice President                            Secretary

and at                                    this _____ day of _____


_____          _____

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
New York, N.Y.

FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL RE-
INSURANCE CORPORATION, U.S. BRANCH, (hereinafter called the "COMPANY")
of the one part, and

**ARGONAUT INSURANCE COMPANY, Menlo Park, Calif.**

(hereinafter called the "SUBSCRIBING REINSURER"), of the other part, that
the SUBSCRIBING REINSURER shall have a 10 % ( **ten**
) share in the interests and liabilities of the "REINSURER" as set
forth in the document attached hereto, entitled FACULTATIVE & TREATY
CASUALTY EXCESS OF LOSS , $500,000 Excess $500,000. The share of the
SUBSCRIBING REINSURER shall be separate and apart from the share of the
other reinsurers, and shall not be joint with those of the other reinsurers, and
the SUBSCRIBING REINSURER shall in no event participate in the interests and
liabilities of the other reinsurers.

This Agreement shall take effect at 12.01 a.m. 1st October, One Thousand Nine
Hundred and Seventy and may be cancelled as per the attached Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N.Y. this        6th        day of        May        1971

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

President                                Secretary

and at                this                day of                197

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

<u>REINSURANCE AGREEMENT</u>

<u>FACULTATIVE & TREATY CASUALTY EXCESS OF LOSS</u>
<u>$500,000 Excess $500,000</u>

between

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES
BRANCH, NEW YORK, N.Y., (including the liability of GERLING
GLOBAL REINSURANCE COMPANY, TORONTO, ONTARIO,
CANADA)

(hereinafter called the "Company")

of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS
AND LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT
IS ATTACHED

(hereinafter called the "Reinsurer")

of the other part

WHEREAS the Company is desirous of reinsuring its CASUALTY
LIABILITY arising under business classified by the Company as:

CASUALTY FACULTATIVE REINSURANCES and

CASUALTY TREATY REINSURANCES

NOW, THEREFORE, it is hereby agreed by and between the parties
hereto one with the other as respects said Casualty Business:

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

-2-

## ARTICLE I

This Agreement is only to pay the excess of an ultimate net loss to the Company of $500,000 (Five Hundred Thousand Dollars) each and every accident and/or occurrence with a limit of liability to the Reinsurers of $500,000 (Five Hundred Thousand Dollars) ultimate net loss each and every accident and/or occurrence arising under the business hereby reinsured.

As respects Products Bodily Injury Liability Insurance assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss for which the Company shall become liable and shall pay in excess of $500,000 (Five Hundred Thousand Dollars) aggregate ultimate net loss in respect of each annual period of any one original insured under one or more original policies.

The term "each and every accident and/or occurrence" as used herein shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a) Products Liability; said term shall also be understood to mean "injuries to all persons and all damage to property of other proceeding from the use or consumption of one prepared or acquired lot of merchandise or product";

(b) All other classes of Personal Injury Liability and/or Bodily Injury Liability; said term shall also be understood to mean, as regards each original insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency";

(c) Property Damage (other than Automobile and Products) risks; said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same".

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that:

(i) the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

- 5 -

(ii) the Company may elect the date on which the period of not exceeding 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months, then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d) An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sutained by the Company at the date when compensable disability of the employee commenced and at no other date.

## ARTICLE II

It is warranted for the purpose of this Agreement, the Company's maximum net liability in respect of -

(i)     Facultative Reinsurances is $500,000 (Five Hundred Thousand Dollars) combined single limit any one Original Insured, any one event

(ii)    Any one Treaty is $500,000 (Five Hundred Thousand Dollars) combined single limit any one event, any one ceding company.

## ARTICLE III

### EXCLUSIONS

This Agreement shall specifically exclude coverage in respect of the following classes or classifications:

In respect of Facultative & Treaty Reinsurances:

a) Nuclear Risks, as per attached clauses:

b) Risks of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any govern-

-4-

ment or public authority as excluded under a standard policy containing a standard war exclusion clause;

c) Ocean Marine Business when written as such;

d) Financial Guarantee and Insolvency;

e) Director's and Officer's Liability Insurances;

f) Securities and Exchange Commission Liability Insurances;

g) Errors and Omissions Coverages for Banks;

In respect of Facultative Reinsurance:

h) Excess Catastrophe Reinsurance Treaties of Insurance Companies;

i) Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

j) Underground Coal Mining - but only as respects Excess Workmen's Compensation;

k) Operation of Aircraft - but only as respects Excess Workmen's Compensation;

l) Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

m) Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

n) Explosive Risks - but only as respects Excess Workmen's Compensation;

o) Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

-5-

Exclusions i) to o) shall not apply to reinsurances covering original Assureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purpose of this Contract, "incidental operations" shall be deemed to mean that not more than 10% of the annual revenue from all operations is derived from operations in any of the above exclusions.

In the event the Company becomes interested in a prohibited risk other than (a) and (d) above, without its knowledge, in respect of which no other Reinsurance arrangements are available to the Company, either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise of a Reinsured Company, this Agreement shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding 30 (Thirty) days thereafter.

## ARTICLE IV

### ATTACHMENT

This Agreement shall take effect at the date and times specified in the Interests and Liabilities Agreement attached hereto and shall apply to all losses occurring on and after that date and time.

Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the coverage on occupational or other disease which is provided under paragraph (d) of ARTICLE I shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liabilities Agreement and as of the next renewal or anniversary date of Policies in force at Midnight, 31st December of the year of attachment.

## ARTICLE V

### CANCELLATION

This Agreement may be cancelled at Midnight any December 31st by either party giving the other at least 90 (Ninety) days' notice in advance by registered mail.

-6-

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on reinsurances in force at the end of said period of 90 (Ninety) days until their natural expiration or next anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the coverage on occupational or other disease which is provided under paragraph d) of ARTICLE I shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in Force at the effective date of cancellation of this Agreement.

## ARTICLE VI

### PREMIUM

The Company shall pay to the Reinsurer a premium calculated at 1/2% (One Half Percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative & Treaty Casualty Departments as reported in its annual statement.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums.

The Company shall pay to the Reinsurer at inception an annual Deposit Premium of $15,000 (Fifteen Thousand Dollars). Should the premium for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be $15,000 (Fifteen Thousand Dollars) for each annual period this Agreement is in force.

-7-

The first accounting period shall be from October 1, 1970 to December 31, 1971 for which a Minimum and Deposit premium of $18,750 (Eighteen Thousand Seven Hundred and Fifty) shall be paid in two instalments of $11,250 (Eleven Thousand Two Hundred and Fifty) at October 1, 1970 and $7,500 (Seven Thousand Five Hundred) at July 1, 1971. Henceforth every accounting period shall be annually commencing January 1, 1972.

## ARTICLE VII

CURRENCY

Premiums and losses payable hereunder shall be in United States Dollars.

## ARTICLE VIII

ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvage recoveries and other reinsurance, provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of ARTICLE XIII of this Reinsurance Agreement known as "Insolvency Clause".

## ARTICLE IX

CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to co-operate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the

-8-

Company in co-operation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to co-operate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurers' share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

### ARTICLE X

### DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

(a) Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which Reinsurer hereunder becomes liable, then no expenses shall be payable by the Reinsurer;

(b) Should, however, the sum which is paid in adjustment of such claims or suits result in an amount being recovered under this Agreement, then the expenses shall be borne by the Company and the Reinsurer in the ratio of their respective liabilities as finally determined provided, however, that the Reinsurer shall not be liable for any part of the salaries of officials of or office expenses of the Company.

### ARTICLE XI

### COMMUTATION

In the event of the Company becoming liable to make periodical payments under any business reinsured hereunder, the Reinsurer at any time after 24 (Twenty Four) months from the date of the occurrence, shall be at liberty to redeem the payments falling due from it by the payment of a lump sum.

-9-

In such event, the Company and the Reinsurer shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalize the claim. The Reinsurer's proportion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurer for its liability for such claim so capitalized.

## ARTICLE XII

### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company shall relieve the Reinsurer of liability provided such errors and/or omissions are rectified as soon after discovery as possible. Nevertheless, the Reinsurer shall not be liable in respect of any business which may have been inadvertently included in the premium computation but which ought not to have been included by reason of the conditions of this Agreement.

## ARTICLE XIII

### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured, without diminution because of the insolvency of the Company directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsur-

- .0 -

rer may investigate such claim and interpose, at its own expense, in the
proceeding where such claim is to be adjudicated any defense or defenses
which it may deem available to the Company or its liquidator or receiver
or statutory successor. The expense thus incurred by the Reinsurer shall be
chargeable subject to court approval against the insolvent Company as part
of the expense of liquidation to the extent of a proportionate share of the
benefit which may accrue to the Company solely as a result of the defense
undertaken by the Reinsurer.

## ARTICLE XIV

### LEGALITY

It is specially provided, anything to the contrary notwithstanding,
that if any law or regulation of the Federal or any State or Local Government
of the United States or the decision of any Court shall render illegal the
arrangements hereby made, this Agreement may be terminated immediately
by the Company upon giving notice to the Reinsurer of such law or decision
and of its intention to terminate this Agreement provided always that the
Reinsurer cannot comply with such law or with the terms of such decisions.

## ARTICLE XV

### ARBITRATION

a) Any dispute or difference hereafter arising with reference to the inter-
   pretation, application or effect of this Reinsurance Agreement or any part
   thereof, whether arising before or after termination of the Reinsurance
   Agreement, shall be referred to a Board of Arbitration consisting of 3
   (Two) arbitrators and an umpire, who shall be active or retired officers
   of Insurance or Reinsurance Companies. The seat of the Board of Arbi-
   tration shall be in New York unless the disputants agree otherwise.

b) One (1) arbitrator shall be chosen by the Company and the other by the
   Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

c) Arbitration shall be initiated by either the Company or the Reinsurer
   (the petitioner) demanding arbitration and naming its arbitrator. The other
   party (the respondent) shall then have thirty (30) days, after receiving
   demand in writing from the petitioner, within which to designate its
   arbitrator. In case the respondent fails to designate its arbitrator within
   the time stated above, the petitioner is expressly authorized and em-

- 1 -

powered to name the second arbitrator, and the respondent shall not be deemed aggrieved thereby. The arbitrators shall designate an umpire within thirty (30) days after both arbitrators have been named. In the event the two (2) arbitrators do not agree within thirty (30) days on the selection of an umpire, each shall nominate one (1) umpire. Within thirty (30) days thereafter the selection shall be made by drawing lots. The name of the party first drawn shall be the umpire.

d) Each party shall submit its case to the Board of Arbitration within thirty (30) days from the date of the appointment of the umpire, but this period of time may be extended by unanimous consent, in writing, of the Board. The Board shall interpret this Reinsurance Agreement as an honorable engagement rather than as a merely technical legal obligation and shall make its award with a view to effecting the general purpose of this Reinsurance Agreement in a reasonable manner, rather than in accordance with the literal interpretation of the language. It shall be relieved from all judicial formalities and may abstain from following the strict rules of law. The decision in writing of the Board or a majority of the Board rendered at the earliest convenient date shall be final and binding upon all parties.

e) The Company and the Reinsurer shall each pay the fee of its own arbitrator and half the fee of the umpire, and the remaining costs of the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph c) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

## ARTICLE XVI

### HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

## ARTICLE XVII

### TAXES (Not Applicable to Domestic Reinsurers)

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% (One Percent) of the premium payable hereon to the extent such premium is subject to Federal

-12-

Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% (One Percent) from the amount of the return and the Company should take steps to recover the tax from the United States Government.

## ARTICLE XVIII

### SERVICE OF SUIT (Not Applicable to Domestic Reinsurers)

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the Superintendent of Insurance of Albany, New York, and that in any suit instituted against the Reinsurers upon this Agreement, the Reinsurers will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Company to give a written undertaking to the Company that they will enter a general appearance upon behalf of the Reinsurers in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, district or territory of the United States which makes provision therefor, the Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

... have reinsurance hereunder that does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

... under any way respecting the application of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobile liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or such or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

... without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

... are also to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

<u>CANCELLATION ADDENDUM</u>

to the

<u>INTERESTS AND LIABILITIES AGREEMENT</u>

FACULTATIVE AND TREATY CASUALTY EXCESS OF LOSS
$500,000 Excess $500,000

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, N.Y., (hereinafter called the "Company") of the one part, and

**ARGONAUT INSURANCE COMPANY, Menlo Park, Cal.**

(hereinafter called the "Subscribing Reinsurer") of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that this Agreement is
terminated effective at midnight December 31, 1975. The Subscribing
Reinsurer shall be liable for all losses occurring prior to the date of
termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Cancellation Addendum, in
duplicate, as of the dates undermentioned.

At New York, N.Y., this    **8th**    day of    **April,**    1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                           Vice President & Secretary

and at              this           day of           1976

_____          _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH