UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In the Matter of the Arbitration Between: | : |
| GLOBAL REINSURANCE CORPORATION – U.S. BRANCH, | :    **07 Civ. 8196 (PKC)** |
| | : |
| Petitioner, | : |
| | : |
| - against – | : |
| | : |
| ARGONAUT INSURANCE COMPANY, | : |
| | : |
| | : |
| Respondent. | : |

---

| | |
|---|---|
| In the Matter of the Arbitration Between: | : |
| GLOBAL REINSURANCE CORPORATION – U.S. BRANCH, | :    **07 Civ. 8350 (PKC)** |
| | : |
| Petitioner, | : |
| | : |
| - against – | : |
| | : |
| ARGONAUT INSURANCE COMPANY, | : |
| | : |
| Respondent. | : |

---

**MEMORANDUM OF LAW OF PETITIONER GLOBAL REINSURANCE CORPORATION –
U.S. BRANCH IN OPPOSITION TO MOTION FOR RECONSIDERATION**

---

BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ  07078-2703
(973) 379-4800
Attorneys for Petitioner
GLOBAL Reinsurance
Corporation – U.S. Branch

On the Brief:
Joseph J. Schiavone, Esq.
Jeffrey S. Leonard, Esq.
Ivan V. Miletic, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................... 1

ARGUMENT ...................................................... 1

The Court Correctly Found That Global Would Suffer
Harm If The Awards Were Unsealed and that the Harm
Outweighs the Public's Right of Access. ...................... 1

A.  The Court Correctly Found That the Public's
    Interest in the Awards Was Low. ......................... 3

B.  The Court Correctly Found That Global Would Be
    Harmed by Unsealing the Awards. ......................... 5

C.  Argonaut's Argument Breaches the Arbitrators'
    Confidentiality Order ................................... 8

CONCLUSION ................................................... 10

# TABLE OF AUTHORITIES

**Page**

Cases

Hall Street Associates, L.L.C. v. Mattel, Inc.,
  No. 06-989, slip op. at 10 (U.S. March 25, 2008) .............. 2

Herschaft v. New York City Campaign Finance Board,
  139 F.Supp.2d 282, 283 (E.D.N.Y. 2001) ....................... 3

Liberty Re (Bermuda) Ltd. v. Transamerica
Occidental Life Insurance Co.,
2005 WL 1216292 (S.D.N.Y. May 23, 2005) ...................... 3

Zinnamon v. The Bank of New York,
  2006 WL 1652662 (E.D.N.Y.June 8, 2006) ...................... 2

Statutes

9 U.S.C. § 9 ................................................. 2

Other Authorities

ARIAS-U.S., Practical Guide,
Chapter III: The Organizational Meeting,
  3.8 Confidentiality, Comment C ............................. 3

Eugene Wollan, Handbook On Reinsurance Law,
§8.07, at 8-33 (2003 Supp.) .................................. 4

James Veach, Confirming Confidential Awards
in "Open Court," 10-16 Mealey's Lit. Rep.
Reinsurance 7 (1999) ......................................... 4

672178.w

## PRELIMINARY STATEMENT

The motion of Argonaut Insurance Company ("Argonaut") for reconsideration of the January 4, 2008 Memorandum and Order ("January 4, 2008 Order") is an attempt at the proverbial second bite of the apple and should be denied. The Court was correct in allowing the underlying arbitration awards and the pleadings that quoted from them to be redacted and/or to remain under seal. The Court properly found that Petitioner GLOBAL Reinsurance Corporation - U.S. Branch ("Global") would be harmed if the awards or their content were released and balanced that harm against the public's right of access. Although Argonaut is bound by the Confidentiality Order and Confidentiality Agreement in the underlying arbitrations to resist disclosure and cooperate with Global in seeking to have "Arbitration Information" filed under seal, Argonaut is doing just the opposite. Its insistence that the awards be unsealed demonstrates what Global has suspected all along: that Argonaut wants to harm Global at every turn. As explained below, the harm is real, and outweighs any countervailing argument for public access.

## ARGUMENT

**The Court Correctly Found that Global Would Suffer Harm if the Awards Were Unsealed and that the Harm Outweighs the Public's Right of Access.**

Preliminarily, it must be noted that the standard for

granting a motion for reconsideration is "strict, and reconsideration will generally be denied." Zinnamon v. The Bank of New York, 2006 WL 1652662 (E.D.N.Y.June 8, 2006) (quoting Herschaft v. New York City Campaign Finance Board, 139 F.Supp.2d 282, 283 (E.D.N.Y. 2001)). "A motion for reconsideration is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." Id.

Argonaut has failed to meet that strict standard. Argonaut argues that the underlying arbitration awards (and portions of the pleadings that quote from them) in these two uncontested arbitration confirmation proceedings should be unsealed because the reinsurance community allegedly has a general interest in commutations.[1] It further argues that Global has not demonstrated that it would suffer sufficient harm in respect of its own

---

[1] Argonaut admits that it is not seeking to vacate the awards. For that reason, the awards must be confirmed. See Hall Street Associates, L.L.C. v. Mattel, Inc., No. 06-989, slip op. at 10 (U.S. March 25, 2008) (explaining that under 9 U.S.C. § 9, "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions [where the award is vacated, modified, or corrected] applies."). A dispute has arisen as to the meaning of a portion of one of the awards (the XOL Panel's award in docket 07-cv-8196). Global will request at the upcoming conference that the Court delay confirmation of the XOL award until after the arbitration Panel has an opportunity to clarify its award.

cedents and its other retrocessionaires if the awards were released. Argonaut's arguments fall flat.

**A.    The Court Correctly Found that the Public's Interest In The Awards Was Low.**

Argonaut makes a new argument, which is improper on a motion for reconsideration, by asserting that the reinsurance industry has an interest in commutations. However, under Argonaut's expansive and misguided argument, any confidential arbitration would be open to full public view, once a court becomes involved, because of an alleged generalized, industry interest in the subject matter -- whether the industry is reinsurance, computers, construction, or any other industry. Such an argument ignores that arbitration awards, which are not required to be reasoned and do not have the formality of a judicial decision, do not create binding precedent like the body of case law developed by the courts.

Moreover, the reinsurance industry fully supports arbitration confidentiality and awards as evidenced by the industry's practice of encouraging confidentiality in arbitrations. See Keogh Decls., ¶12; see also ARIAS-U.S., Practical Guide, Chapter III: The Organizational Meeting, 3.8 Confidentiality, Comment C[2]; Liberty Re (Bermuda) Ltd. v.

---

[2] The Declarations of Barry Keogh, dated December 5, 2007, were previously submitted in response to the Court's Order to Show

Transamerica Occidential Life Insurance Co., 2005 WL 1216292
(S.D.N.Y. May 23, 2005)(in contested reinsurance arbitration
proceedings in which the court remanded the matter to the panel
for clarification of its award, the court balanced the
confidentiality agreement and the federal policy of fostering
arbitration and upheld sealing the record, with the exception of
the court's orders and opinions).

Indeed, in one of the publications that Argonaut cited to
the Court in response to the Order to Show Cause, the author
explained in detail why "the reinsurance community favors
keeping arbitration awards confidential." James Veach,
Confirming Confidential Awards in "Open Court," 10-16 Mealey's
Lit. Rep. Reinsurance 7 (1999). See also Eugene Wollan,
Handbook On Reinsurance Law, §8.07, at 8-33 (2003 Supp.)("Most
of the organizations active in reinsurance arbitrations continue
to favor confidentiality as the hallmark").[3]

This case does not involve a matter of public interest like
safety, health or other consumer rights that might tip the
scales in favor of public access. The awards are the result of
two confidential arbitrations between two reinsurance companies.
As the Court correctly found in the January 4, 2008 Order,

---

Cause and the ARIAS-U.S. Practical Guide is available at
www.arias-us.org.

[3] Mr. Wollen's book was also cited by Argonaut, albeit at
§8.09[c][1].

4

"[t]he public interest in the relationship between an insurer and its reinsurers is relatively low." In fact, the public's interest in the relationship here is even more tenuous because neither Global nor Argonaut is an insurer in these matters; both companies acted as reinsurers.

There is no valid reason to revisit that finding or the Court's Order.

**B.    The Court Correctly Found that Global Would be Harmed by Unsealing the Awards.**

The Court correctly found in the January 4, 2008 Order that Global would be harmed by the release of the awards to the public record:

> Global Re makes the valid point that "very confidential information about projections of past, current and future liabilities as well as privileged claim information" is exchanged between the parties to a retrocessional contract and that such information ought not be made part of the public record (Keogh Decl.) But Global Re has not made a strong showing of the relationship between such information and its proposed redactions to the awards. Nevertheless, I conclude that disclosure of the decretal portions of the awards does present the risk that it will impair Global Re's negotiating position with other reinsurers and that such interest outweigh the public's right of access. Because it is a close question, I reserve the right to revisit the issue.

January 4, 2008 Order at 3-4. Unsealing the awards -- despite the Panels' Confidentiality Order and Agreement -- would inhibit and harm Global's relationships with its own cedents. Those cedents would be reluctant to share confidential claim

information, data and documents with Global if the hallmark of a confidential arbitration -- the awards -- were open to public access. The chilling effect that it would have on Global's ability to obtain confidential information from its cedents is real. <u>See</u> Keogh Declarations, previously submitted.

Argonaut and other recalcitrant retrocessionaires also would be given an advantage, to Global's detriment, if Global were unable to effectively commute and/or settle claims with its own cedents. Argonaut has refused to support Global not only in its commutation program but also in its normal claims presentations. The less claims information that Global is able to obtain from its own cedents, the more Argonaut and other retrocessionaires or reinsurers will try to assert that they have no obligation to pay Global's reinsurance claims.

The Court correctly observed that releasing the awards would harm Global in its relationships with its other reinsurers. Argonaut asserts that because the Court used the term "reinsurers," there is no link between Mr. Keogh's Declarations, which used the term "cedents," and the Court's finding of harm, even though Global in its brief used the terms "cedents" and "retrocessionaires." The Court's use of the term "reinsurers" instead of "cedents" and/or "retrocessionaires" in the January 4, 2008 Order is inconsequential and provides no reason to grant reconsideration. Harm is harm. If Global's

ability to commute and/or settle with its own cedents is inhibited, it follows that Global's ability to present those claims to its retrocessionaires is likewise inhibited.

Argonaut also makes the odd and unsupported argument that it will somehow be harmed if the awards are not unsealed because Global was allegedly being "coy" or inconsistent in selecting what it wanted to redact or seal in response to the Court's Order to Show Cause. Argonaut's argument is based on the fact that in the XOL proceeding, Global did not request and the Court did not order the sealing of an exhibit (Exh. I to the Miletic Decl.) that refers to Argonaut's election to avail itself of the award's alternative relief provision.

Far from being "coy" or inconsistent, Global's decision not to maintain its position that the exhibit should be sealed reflected its effort to respond to the Court's concern about public access. Global significantly pared down its list of what should remain sealed or redacted, limiting it to those items that actually disclosed the content of the awards and the awards themselves. The exhibit in question does not disclose the content of the awards. It is Argonaut that is being coy, by arguing that it "won" the arbitrations and by faulting Global for the fact that the exhibit is not sealed. Argonaut could have but did not seek to have that document remain under seal. Had Argonaut bothered to contact Global after the Court issued

its January 4, 2008 Order, to request that the exhibit (and the reference to it in the Petition) be redacted, Global would have joined in Argonaut's belated request although neither the exhibit nor the petition that references it discloses the content of the arbitration award.

The harm that Global will suffer in its relationships with its own cedents as well as with its other retrocessionaires if the awards were to be released is real. The Court correctly found that the harm to Global outweighs the public's right of access.

**C.    Argonaut's    Argument    Breaches    the    Arbitrators' Confidentiality Order.**

Argonaut is bound by the Confidentiality Order and Confidentiality Agreement entered by the Panels. Its collateral attack on the Confidentiality Order and Agreement, by its unsupported assertion that it can argue *against* sealing the awards, when the Confidentiality Order and Confidentiality Agreement state just the opposite, should be seen for what it is, an untimely attempt to vacate orders of the arbitration panels.

Argonaut never sought to vacate the Confidentiality Agreement dated May 17, 2006 from the Phair Panel (attached as Exhibit 1 to the previously filed Keogh Declaration accompanying Global's response to the Order to Show Cause under docket 07-cv-

8

8350), or the Confidentiality Order dated May 15, 2006 from the XOL Panel (attached as Exhibit 1 to the Keogh Declaration previously filed under docket 07-cv-8196). The Confidentiality Agreement and Order do not cease to apply when a party files an action to confirm or vacate the award. Although the Confidentiality Agreement and Order recognize that the courts have the authority to determine what may be sealed ("[i]n connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed"), they explicitly require that "all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information." See Keogh Decl., Exh. 1 (previously submitted).

The Arbitration Panels further found that "the parties recognize that serious injury could result to any party and its business if the other breaches its obligations under this Agreement." Id. at ¶6. Argonaut cannot now argue otherwise -- that Global will not be harmed -- and move for release of the awards. Argonaut's effort to do so is a collateral, untimely attack on the arbitrators' Confidentiality Agreement and Order.

## CONCLUSION

For the foregoing reasons, Argonaut's Motion for Reconsideration should be denied.

Dated:    Short Hills, New Jersey
          March 27, 2008

                        BUDD LARNER, P.C.
                        150 John F. Kennedy Parkway
                        Short Hills, New Jersey 07078
                        (973) 379-4800
                        Attorneys for Petitioner
                        GLOBAL Reinsurance Corporation -
                        U.S. Branch


                        BY: _____
                            Joseph T. Schiavone (JS 7303)
                            Jeffrey S. Leonard (JL 5931)
                            Ivan V. Miletic (IM 9922)

672171w

10