# EXHIBIT C

4905

GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH
NEW YORK, N.Y.

FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
Fourth Excess - $2,000,000 Excess $3,000,000

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U.S. BRANCH, AND THEIR QUOTA SHARE
REINSURERS, (hereinafter collectively called the "Company"), of the one
part, and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California

(hereinafter called the "Subscribing Reinsurer"), of the other part, that the
Subscribing Reinsurer shall have a      2.5 % ( Two point Five percent ) 
share in the interests and liabilities of the "Reinsurer" as set forth in the
document attached hereto, entitled FACULTATIVE CASUALTY EXCESS OF
LOSS FOR COMMON ACCOUNT, Fourth Excess - $2,000,000 Excess
$3,000,000. The share of the Subscribing Reinsurer shall be separate and
apart from the share of the other reinsurers, and shall not be joint with those
of the other reinsurers, and the Subscribing Reinsurer shall in no event
participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m., 1st January, One Thousand
Nine Hundred and Seventy Three and may be cancelled as per the attached
Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorised
officers, have executed this Agreement, in duplicate, as of the dates under-
mentioned.

At New York, N.Y., this      29th day of December,   1972

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice President & Secretary                 Senior Vice President

and at _____ this   _____ day of _____, 1973

_____                    _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001653

## REINSURANCE AGREEMENT

### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
#### Fourth Excess - $2,000,000 Excess $3,000,000

**between**

**GERLING GLOBAL REINSURANCE CORPORATION, UNITED STATES BRANCH, NEW YORK, N.Y., (including the liability of GERLING GLOBAL REINSURANCE COMPANY, TORONTO, ONTARIO, CANADA)**

**(hereinafter collectively called the "Company")**

**of the one part**

**and**

**THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENT TO WHICH THIS AGREEMENT IS ATTACHED.**

**(hereinafter called the "Reinsurer")**

**of the other part.**

**WHEREAS** the Company is desirous of reinsuring certain of its liability arising under business accepted by it in its Facultative Casualty Department

**NOW, THEREFORE,** it is hereby agreed by and between the parties hereto one with the other as respects Facultative Casualty business:

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001654

- 2 -

## ARTICLE I

### INSURANCE CLAUSE

(A)  The Reinsurer agrees for the consideration herinafter appearing to pay to the Company up to but not exceeding $2,000,000 (Two Million Dollars) ultimate net loss each and every accident and/or occurrence any one original insured for which the Company shall become liable and shall pay in excess of $3,000,000 (Three Million Dollars) ultimate net loss each and every accident and/or occurrence any one original insured under one or more original policies.

(B)  As respects Liability assumed by the Company under Policies containing an aggregate limit of liability, the Reinsurer agrees to pay to the Company up to but not exceeding $2,000,000 (Two Million Dollars) aggregate ultimate net loss for which the Company shall become liable and shall pay in excess of $3,000,000 (Three Million Dollars) aggregate ultimate net loss in respect of each annual period of any one original insured under one or more original policies.

(C)  The Reinsurer agrees to accept motor truck cargo business when written in conjunction with bodily injury and/or property damage liability in excess of a minimum combined single limit of $2,000,000 (Two Million Dollars). The term "each and every accident and/or occurrence" as used herin shall be understood to mean "each and every accident or occurrence or series of accidents or occurrences arising out of any one event" provided that as respects:

(a)  Products Liability; said term shall also be understood to mean "injuries to all persons and all damage to property of others proceeding from the use or consumption of one prepared or acquired lot of merchandise or product";

(b)  All other classes of Bodily Injury Liability; said term shall also be understood to mean, as regards each original insured, "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency";

(c)  Property Damage (other than Automobile and Products) risks; said term shall, subject to provisions (i) and (ii) below, also be understood to mean "loss or losses caused by a series of operations, events or occurrences arising out of operations at one specific site and which cannot be attributed to any single one of such operations, events or occurrences but rather to the cumulative effect of same".

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001655

- 3 -

In assessing each and every accident and/or occurrence within the foregoing definition, it is understood and agreed that:

(i)   the series of operations, events or occurrences shall not extend over a period longer than 12 (Twelve) consecutive months, and

(ii)   the Company may elect the date on which the period of not exceeding 12 (Twelve) consecutive months shall be deemed to have commenced.

In the event that the series of operations, events or occurrences extend over a period longer than 12 (Twelve) consecutive months, then each consecutive period of 12 (Twelve) months, the first of which commences on the date elected under (ii) above, shall form the basis of claim under this Agreement.

(d)   An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Company shall within a Policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Company at the date when compensable disability of the employee commenced and at no other date.

### ARTICLE II

### UNDERLYING REINSURANCE AND CO-REINSURANCE

It is warranted that the Company retains within the GERLING Group of Insurance Companies:

> The first $250,000
> 50% of $250,000 Excess $250,000
> 20% of $500,000 Excess $500,000
> 2.5% of $1,000,000 Excess $1,000,000
> 2.5% of $1,000,000 Excess $2,000,000
> 2.5% of this Agreement

ultimate net loss each and every accident and/or occurrence any one original insured under one or more policies.

It is understood and agreed that in calculating the amount of any loss here-under, and also in computing the amount in excess of which this Agreement attaches, the net loss of the Company shall not be considered as being reduced by any amount or amounts recoverable under the underlying excess of loss reinsurance.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001656

-4-

## ARTICLE III

### EXCLUSIONS

1.  This Agreement shall specifically exclude coverage in respect of Policies of Reinsurance issued by the Company in respect of the following classes or classifications:

(a)  Aviation liability risks, except in cases where such Aviation liability risks are incorporated in a Policy covering Comprehensive or General Liability;

(b)  Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, Policies issued by the Company in respect of Railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

(c)  Excess Catastrophe Reinsurance Treaties of Insurance Companies;

(d)  Ocean Marine Business when written as such;

(e)  Directors' and Officers' legal liability;

(f)  Underground Coal Mining - but only as respects Excess Workmen's Compensation;

(g)  Operation of Aircraft - but only as respects Excess Workmen's Compensation;

(h)  Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

(i)  Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

(j)  Explosive Risks - but only as respects Excess Workmen's Compensation;

(k)  Risk of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001657

- 5 -

policy containing a standard war exclusion clause;

(l)    Pharmaceutical and Drug Manufacturers and Distributors;

(m)    Excess Workmen's Compensation not written in conjunction with
Bodily Injury and Property Damage unless excess of at least
$100,000 (One Hundred Thousand Dollars) plus self-insured retention;

(n)    Public Utilities unless excess of at least $250,000 (Two Hundred and
Fifty Thousand Dollars);

(o)    Nuclear Risks as per attached wording.

The aforementioned exclusions, except c, d, k, l and o shall not
apply to reinsurances covering original Assureds regularly engaged
in other operations which involve only incidental operations in any
of the above exclusions. For purpose of this Contract, "incidental
operations" shall be deemed to mean that not more than 10% of the
annual revenue from all operations is derived from operations in
any of the above exclusions.

2.    In the event the Company becomes interested in a prohibited risk
other than o) above, without its knowledge, in respect of which
no other Reinsurance arrangements are available to the Company
either by an existing Insured extending its operations or by an
inadvertent acceptance by an Agent or otherwise of a Reinsured
Company, this Agreement shall attach in respect to such prohibited
risks but only until discovery by the Company and for not exceeding
30 (Thirty) days thereafter.

### ARTICLE IV

**ATTACHMENT**

This Agreement shall take effect at the date and time specified in the
Interests and Liabilities Agreement attached hereto and shall apply to all
losses occurring on and after that date and time.

Notwithstanding the above paragraph, the liability of the Reinsurer in
respect of the aggregate coverage on occupational or other disease and
any Policy which provides an aggregate limit of liability shall attach as
of the effective date of Policies becoming effective on or after the date
and time specified in the Interests and Liability Agreement and as of
the next renewal or anniversary date of Policies in force.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001658

- 6 -

## ARTICLE V

### CANCELLATION

This Agreement may be cancelled at Midnight any December 31st by either party giving the other at least 100 (One Hundred) days' notice in advance by registered mail.

Nevertheless, the Company at its sole option shall have the right to require this Agreement to continue to apply to all losses occurring on business in force during said period of 100 (One Hundred) days until their natural expiration or next anniversary date, whichever first occurs subject to the payment of the earned premium on such business.

Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

## ARTICLE VI

### PREMIUM

The Company shall pay to the Reinsurer premium calculated at 2% (Two percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $105,000 (One Hundred and Five Thousand Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $80,000 (Eighty Thousand Dollars) for each annual period this Agreement is in force.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001659

-7-

## ARTICLE VII

### ULTIMATE NET LOSS CLAUSE

"Ultimate Net Loss" shall mean the sum actually paid in cash in the settlement of losses for which the Company is liable, after deducting all salvages, recoveries and other reinsurance, provided, however, that in the event of the insolvency of the Company, "Ultimate Net Loss" shall mean the amount of loss which the insolvent Company has incurred or is liable for, and payment by the Reinsurer shall be made to the receiver or statutory successor of the Company in accordance with the provisions of Article XII of this Reinsurance Agreement known as the "Insolvency Clause".

## ARTICLE VIII

### CLAIMS

The Company shall advise the Reinsurer with reasonable promptitude of any loss occurrence or event in which the Reinsurer is likely to be involved and shall provide the Reinsurer with full information relative thereto.

The Reinsurer, through its appointed representatives, shall have the right to co-operate with the Company in the defense and/or settlement of any claim or claims in which it may be interested. All settlements made by the Company in co-operation with the Reinsurer's appointed representatives shall be binding on the Reinsurer, and all settlements made by the Company in cases where the Reinsurer elects not to co-operate with the Company shall be binding on the Reinsurer.

The Company agrees that all papers connected with the adjustment of claims shall at any reasonable time be at the command of the Reinsurer or parties designated by it for inspection.

Reinsurers not authorized to do business in the State of New York shall upon request make cash advances for losses incurred but not paid in an amount not to exceed the Reinsurer's share of such unpaid claims. Cash advances shall be made within 10 (Ten) days after notification by the Company.

## ARTICLE IX

### DIVISION OF SETTLEMENT COSTS CLAUSE

Expenses incurred by the Company in connection with the investigation and adjustment of claims and suits shall be apportioned as follows:

GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

ARGO GERLING-HARTFORD 001660

-8-

(a) Should the claims or suits arising out of any one occurrence be adjusted for a sum not exceeding the amount in excess of which Reinsurer hereunder becomes liable., then no expenses shall be payable by the Reinsurer;

(b) Should, however, the sum which is paid in adjustment of such claims or suits result in an amount being recovered under this Agreement, then the expenses shall be borne by the Company and the Reinsurer in the ratio of their respective liabilities as finally determined provided, however, that the Reinsurer shall not be liable for any part of the salaries of officials of or office expenses of the Company.

## ARTICLE X

### COMMUTATION

In the event of the Company becoming liable to make periodical payments under any business reinsured hereunder, the Reinsurer at any time after 24 (Twenty Four) months from the date of the occurrence, shall be at liberty to redeem the payments falling due from it by the payment of a lump sum.

In such event, the Company and the Reinsurer shall mutually appoint an Actuary or Appraiser to investigate, determine and capitalize the claim. The Reinsurer's proportion of the amount so determined shall be considered the amount of loss hereunder and the payment thereof shall constitute a complete release of the Reinsurer for its liability for such claim so capitalized.

## ARTICLE XI

### ERRORS AND OMISSIONS

No accidental errors and/or omissions upon the part of the Company shall relieve the Reinsurer of liability provided such errors and/or omissions are rectified as soon after discovery as possible. Nevertheless, the Reinsurer shall not be liable in respect of any business which may have been inadvertently included in the premium computation but which ought not to have been included by reason of the conditions of this Agreement.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001661

-9-

## ARTICLE XII

### INSOLVENCY CLAUSE

In consideration of the continuing and reciprocal benefits to accrue hereunder to the Reinsurer, the Reinsurer hereby agrees that as to all reinsurance made, ceded, renewed or otherwise becoming effective under this Agreement, the reinsurance shall be payable by the Reinsurer on the basis of the liability of the Company under the contract or contracts reinsured, without diminution because of the insolvency of the Company directly to the Company or to its liquidator, receiver or other statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of insolvency of the Company and (b) where the Reinsurer with the consent of the direct Assured or Assureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payee.

It is further agreed and understood that in the event of insolvency of the Company, the liquidator or receiver or statutory successor of the insolvent Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent Company on the policy or bond reinsured with the Reinsurer within a reasonable time after such claim is filed in the insolvency proceeding; and that during the pendency of such claim the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses which it may deem available to the Company or its liquidator or receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

### ARTICLE XIII

### LEGALITY

It is specially provided, anything to the contrary notwithstanding, that if any law or regulation of the Federal or any State or Local Government of the United States or the decision of any Court shall render illegal the arrangements hereby made, this Agreement may be terminated immediately by the Company upon giving notice to the Reinsurer of such law or decision and of its intention to terminate this Agreement provided always that the Reinsurer cannot comply with such law or with the terms of such decisions.

GERLING GLOBAL REINSURANCE CORPORATION

U. S. BRANCH

ARGO GERLING-HARTFORD 001662

-10-

## ARTICLE XIV

### ARBITRATION

(a)    Any dispute or difference hereafter arising with reference to the inter-
pretation, application or effect of this Reinsurance Agreement or any
part thereof, whether arising before or after termination of the Re-
insurance Agreement, shall be referred to a Board of Arbitration con-
sisting of two (2) arbitrators and an umpire, who shall be active or
retired officers of Insurance or Reinsurance Companies. The seat of the
Board of Arbitration shall be in New York unless the disputants agree
otherwise.

(b)    One (1) arbitrator shall be chosen by the Company and the other by the
Reinsurer. The umpire shall be chosen by the two (2) arbitrators.

(c)    Arbitration shall be initiated by either the Company or the Reinsurer
(the petitioner) demanding arbitration and naming its arbitrator. The
other party (the respondent) shall then have thirty (30) days, after
receiving demand in writing from the petitioner, within which to desig-
nate its arbitrator. In case the respondent fails to designate its arbi-
trator within the time stated above, the petitioner is expressly authorized
and empowered to name the second arbitrator, and the respondent shall
not be deemed aggrieved thereby. The arbitrators shall designate an
umpire within thirty (30) days after both arbitrators have been named.
In the event the two (2) arbitrators do not agree within thirty (30) days
on the selection of an umpire, each shall nominate one (1) umpire. With-
in thirty (30) days thereafter the selection shall be made by drawing lots.
The name of the party first drawn shall be the umpire.

(d)    Each party shall submit its case to the Board of Arbitration within
thirty (30) days from the date of the appointment of the umpire, but this
period of time may be extended by unanimous consent in writing, of the
Board. The Board shall interpret this Reinsurance Agreement as an
honorable engagement rather than as a merely technical legal obligation
and shall make its award with a view to effecting the general purpose of
this Reinsurance Agreement in a reasonable manner, rather than in
accordance with the literal interpretation of the language. It shall be
relieved from all judicial formalities and may abstain from following
the strict rules of law. The decision in writing of the Board or a
majority of the Board rendered at the earliest convenient date shall be
final and binding upon all parties.

(e)    The Company and the Reinsurer shall each pay the fee of its own
arbitrator and half the fee of the umpire, and the remaining costs of

ARGO GERLING-HARTFORD 001663

-11-

the arbitration shall be paid as the Board shall direct. In the event both arbitrators are chosen by the petitioner, as provided in paragraph (C) above, the Company and the Reinsurer shall each pay one half (1/2) of the fees of both of the arbitrators and the umpire, and the remaining costs of the arbitrations shall be paid as the Board shall direct.

## ARTICLE XV

### HONORABLE UNDERTAKING

This Agreement shall be construed as an honorable undertaking between the parties hereto not to be defeated by technical legal construction, it being the intention of this Agreement that the fortunes of the Reinsurer shall follow the fortunes of the Company.

## ARTICLE XVI

### TAXES (Not Applicable to Domestic Reinsurers)

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax 1% (One Percent) of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct 1% (One Percent) from the amount of the return and the Company should take steps to recover the tax from the United States Government.

## ARTICLE XVII

### SERVICE OF SUIT (Not Applicable to Domestic Reinsurers)

It is agreed that in the event of the failure of the Reinsurers to pay any amount claimed to be due hereunder, the Reinsurers hereon, at the request of the Company, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001664

-12-

It is further agreed that service of process in such suit may be made upon the Superintendent of Insurance of Albany, New York, and that in any suit instituted against the Reinsurers upon this Agreement, the Reinsurers will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Reinsurers in any such suit and/or upon the request of the Company to give a written undertaking to the Company that they will enter a general appearance upon behalf of the Reinsurers in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, district or territory of the United States which makes provision therefor, the Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Company or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001665

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company(ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception date and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel components, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

  (a) any nuclear reactor,

  (b) any equipment or device designed or used for (1 separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to contain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material:

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

  (a) become effective on or after 1st May, 1960, or

  (b) become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

  (i) Cargo and Automobile Policies issued by the Company(ies) on New York risks, or

  (ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

  (4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

  (a) described in Clause II of paragraph (2) effective before 1st June, 1958, or

  (b) described in paragraph (3) effective before 1st March, 1958,

shall be free from and their natural expiry dates or 1st June, 1963, whichever first occurs, from the application of the other provisions of this Clause.

  (5) Without in any way restricting the operation of paragraph (3) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, each policy shall be deemed to include such Exclusion Provisions.

2/4/60
#1265

ARGO GERLING-HARTFORD 001667

**U.S.A.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I. Nuclear reactor power plants including all auxiliary property on the site, or

    II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

    III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

    IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any Insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b) where said Insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

    (a) substantial quantities, and

    (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

    (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

ARGO GERLING-HARTFORD 001668

*1971 - 1972*                                                    *4908*

## ADDENDUM NO. II

### to the

INTERESTS AND LIABILITIES AGREEMENT
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
Fourth Excess - $2,000,000 Excess $3,000,000
Dated in New York, N.Y., October 7, 1971

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH,
New York, N.Y. AND THEIR QUOTA SHARE REINSURERS, of the one part
and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California
of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1972
the following paragraphs or articles are amended to read:

1) Article I Insuring Clause (B)
As respects Liability assumed by the Company under Policies
containing an aggregate limit of liability, the Reinsurer agrees to pay
to the Company up to but not exceeding $2,000,000 (Two Million Dollars)
aggregate ultimate net loss for which the Company shall become
liable and shall pay in excess of $3,000,000 (Three Million Dollars)
aggregate ultimate net loss in respect of each annual period any
one original insured under one or more original policies.

2) Article II Underlying Reinsurance and Co-Reinsurance
It is warranted that the Company retains within the GERLING Group
of Insurance Companies:

> The first $250,000
> 50% of $250,000 Excess $250,000
> 5% of $500,0000 Excess $500,000
> 2.5% of $1,000,000 Excess $1,000,000
> 2.5% of $1,000,000 Excess $2,000,000
> 2.5% of this Agreement

ultimate net loss each and every accident and/or occurrence any one
original insured under one or more policies.

It is understood and agreed that in calculating the amount of any loss
hereunder, and also in computing the amount in excess of which this
Agreement attaches, the net loss of the Company shall not be considered
as being reduced by any amount or amounts recoverable under the
underlying excess of loss reinsurance.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001669

- 2 -

3) <u>Article IV Attachment - Paragraph 2</u>
Notwithstanding the above paragraph, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall attach as of the effective date of Policies becoming effective on or after the date and time specified in the Interests and Liabilities Agreement and as of the next renewal or anniversary date of Policies in force.

4) <u>Article V Cancellation - Paragraph 3</u>
Notwithstanding the second paragraph above, the liability of the Reinsurer in respect of the aggregate coverage on occupational or other disease and any Policy which provides an aggregate limit of liability shall continue until the next renewal or anniversary date, whichever first occurs, of Policies in force at the effective date of cancellation of this Agreement.

It is furthermore mutually understood and agreed that this Agreement is terminated as of December 31, 1972 in accordance with Article V.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N.Y., this *15th* day of *December*, 1972.

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER


_____          _____
Assistant Vice President           Vice President & Secretary


and in *Menlo Park, California* this *22nd* day of *December*, 1972


_____          _____


GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001670

4468

## ADDENDUM NO. 1
### to the
### INTERESTS AND LIABILITIES AGREEMENT

### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
#### Fourth Excess - $2,000,000 Excess $3,000,000

between
**GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, N.Y., AND THEIR QUOTA SHARE REINSURERS, of the one part
and**

**ARGONAUT INSURANCE COMPANY, Menlo Park, California**

of the other part.

It is hereby understood and agreed that effective January 1, 1972 the third paragraph of ARTICLE VI, Premium, of the attached Agreement is amended to read as follows:

The Company shall pay to the Reinsurer, in quarterly installments, Reinsurer's proportion of an annual Deposit Premium of $90,000 (Ninety-thousand Dollars). Should the Premium for each annual period calculated in accordance with the first paragraph of this Article exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $75,000 (Seventyfivethousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, N.Y.                          this 13'th day of January 1972

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice-President                             Secretary

and at  MENLO PARK, CALIF.      this 14th day of January 1972

_____                    _____
GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001671

4458

### ADDENDUM NO. 1

#### to the

### REINSURANCE AGREEMENT
### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### FOURTH EXCESS $1,000,000 EXCESS $3,000,000

#### between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "Company"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED (hereinafter called the "Reinsurer"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1974, the first paragraph of Article VI, Premium, shall read:

The Company shall pay to the Reinsurer premium calculated at 1.7 % (One point seven percent) of its gross net earned income in respect of business accepted by the Company in its Facultative Casualty Department.

All other terms and conditions of the Agreement, the subject of this Addendum No. 1, remain unchanged.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y., this    8th    day of February,    1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                          Vice President & Secretary

and at Menlo Park/Calithis    14TH    day of FEB.    1974

#### ARGONAUT INSURANCE COMPANY

_____          _____
                                          ASST. V.P.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001672

*4-12-8*

### ADDENDUM NO. 1

### to the

### INTERESTS AND LIABILITIES AGREEMENT
### FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
### Fourth Excess $2,000,000 Excess $3,000,000

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "Company"), of the one part, and ARGONAUT INSURANCE COMPANY, Menlo Park, California (hereinafter called the "Subscribing Reinsurer"), of the other part, that the "Subscribing Reinsurer" shall have a 4.5% (four point five percent) share in the interests and liabilities of the "Reinsurer" as set forth in the document attached hereto, entitled FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT, Fourth Excess - $2,000,000 Excess $3,000,000. The share of the "Subscribing Reinsurer" shall be separate and apart from the share of the other reinsurers, and shall not be joint with those of the other reinsurers, and the "Subscribing Reinsurer" shall in no event participate in the interests and liabilities of the other reinsurers.

This Agreement shall take effect at 12:01 a.m. January 1st, One Thousand Nine Hundred and Seventy Four and may be cancelled as per the attached Agreement, and supersedes all other wordings agreed to and signed by the "Subscribing Reinsurer".

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Agreement, in duplicate, as of the dates undermentioned.

At New York, New York,      this 11th day of February,      1974

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at Menlo Park, Cal.      this *14TH* day of *FEB*      1974

ARGONAUT INSURANCE COMPANY

_____          _____
                                  *Ass't V.P.*

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001673

*4968*

## ADDENDUM NO. 2

### to the

### REINSURANCE AGREEMENT
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
FOURTH EXCESS $2,000,000  EXCESS $3,000,000

#### between

### GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
New York, N.Y.

and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "COMPANY"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED (hereinafter called the "REINSURER"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1975.

1. Paragraph 1 (1) of Article III, Exclusions, shall read:

    (1)     Pharmaceutical and Drug Manufacturers,

2. Article VI, Premium, shall read:

    The Company shall pay to the Reinsurer premium calcucated at 2.5% (Two and a half percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

    By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

    The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $175,000 (One Hundred and Seventy Five Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $150,000 (One Hundred and Fifty Thousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions of the Agreement, the subject of this Addendum No. 2, remain unchanged.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

- 2 -

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Addendum, in duplicate, as
of the dates undermentioned.

At New York, New York, this 14th day of April, 1975

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
        Vice President                 Vice President & Secretary

and at  Menlo Pk,        this 18th day of April        1975
        Calif.

        ARGONAUT INSURANCE COMPANY, Menlo Park, California

_____          _____
                                          Ass't V.P.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

ARGO GERLING-HARTFORD 001675

*1973 -*

## ADDENDUM NO. 2

### to the

### REINSURANCE AGREEMENT
FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT
FOURTH EXCESS $2,000,000 EXCESS $3,000,000

#### between

### GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
New York, N.Y.

and THEIR QUOTA SHARE REINSURERS (hereinafter collectively called the "COMPANY"), of the one part, and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENTS TO WHICH THIS AGREEMENT IS ATTACHED (hereinafter called the "REINSURER"), of the other part.

IT IS HEREBY UNDERSTOOD AND AGREED that effective January 1, 1975,

1. Paragraph 1 (1) of Article III, Exclusions, shall read:

   (1)    Pharmaceutical and Drug Manufacturers,

2. Article VI, Premium, shall read:

   The Company shall pay to the Reinsurer premium calcucated at 2.5% (Two and a half percent) of its gross net earned premium income in respect of business accepted by the Company in its Facultative Casualty Department.

   By "gross net earned premium income" is meant the earned proportion of the Company's gross written premium in respect of the subject matter of this Agreement less cancellations and return of premiums and premiums on Reinsurances which inure to the benefit of this Agreement.

   The Company shall pay to the Reinsurer in quarterly installments Reinsurer's proportion of an annual Deposit Premium of $175,000 (One Hundred and Seventy Five Dollars). Should the premiums for each annual period exceed the said Deposit Premium for each annual period, the Company agrees to pay the difference to the Reinsurer, but should it be less, it is agreed that the Minimum Premium payable to the Reinsurer shall be its proportion of $150,000 (One Hundred and Fifty Thousand Dollars) for each annual period this Agreement is in force.

All other terms and conditions of the Agreement, the subject of this Addendum No. 2, remain unchanged.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001676

- 2 -

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, New York, this 14th day of April, 1975

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
By GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice President                             Vice President & Secretary

and at                  this        day of              1975

ARGONAUT INSURANCE COMPANY, Menlo Park, California

_____                    _____

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

ARGO GERLING-HARTFORD 001677

*4908*

## CANCELLATION ADDENDUM

### to the

## FACULTATIVE CASUALTY EXCESS OF LOSS FOR COMMON ACCOUNT

### Fourth Excess $2,000,000 Excess $3,000,000

#### between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, New York, and their QUOTA SHARE REINSURERS,

#### and



### ARGONAUT INSURANCE COMPANY, Menlo Park, California

IT IS HEREBY UNDERSTOOD AND AGREED that in accordance with Article V of the above Contract the participation of the Subscribing Reinsurer is terminated effective Midnight, December 31, 1975.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N.Y., this 29th day of June, 1976

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH
BY GERLING GLOBAL OFFICES INC., U.S. MANAGER

_____                    _____
Vice President                             Vice President & Secretary

and at *Menlo Park, Ca.* this 1st day of *July,* 1976

_____                    _____
                                           *Carol C. Seyfried*
                                           OL·141

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH
Up to 1975

ARGO GERLING-HARTFORD 001678

# EXHIBIT D

**GERLING GLOBAL REINSURANCE CORPORATION**
U. S. BRANCH
**717 FIFTH AVENUE**
**NEW YORK 22, NEW YORK**
TELEPHONE: PLAZA 5-5900

# REINSURANCE AGREEMENT

WITH

**GUARANTY REINSURANCE CO.**
Chicago, Illinois

COVERING Quota Share Retrocessions Agreement for
Facultative Casualty Business

EFFECTIVE July 26, 1963

AGREEMENT NO. 4158

GLARO 003312

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
NEW YORK, N. Y.

QUOTA SHARE RETROCESSIONS AGREEMENT FOR
FACULTATIVE CASUALTY BUSINESS

INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the
"Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other
part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share
in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in
the document attached hereto, entitled "QUOTA SHARE RETROCESSION
AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of
the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from
the share of the other RETROCESSIONAIRES and shall not be joint with
those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-
SIONAIRE shall in no event participate in the interests and liabilities of the
other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached
Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorised officers, have executed this Agreement in duplicate, as of the
dates under-mentioned.

At New York, N. Y., this 15th    day of August,    19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____
        Stig Winberg, President
and at                    this        day of                19

_____

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GLARG 002313

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Reinsurance Clause | Article I | Page 1 |
| Exclusions | Article II | Page 4 |
| General Provisions | Article III | Page 5 |
| Excess of Loss for Joint Account | Article IV | Page 6 |
| Premium and Commissions | Article V | Page 6 |
| Accounts and Statistics | Article VI | Page 8 |
| Loss Settlements | Article VII | Page 8 |
| Access to Records | Article VIII | Page 9 |
| Arbitration | Article IX | Page 9 |
| Insolvency | Article X | Page 10 |
| Alterations | Article XI | Page 11 |
| Term and Cancellation | Article XII | Page 11 |

## QUOTA SHARE RETROCESSION AGREEMENT
## FOR FACULTATIVE CASUALTY BUSINESS

between

### GERLING GLOBAL REINSURANCE CORPORATION
### U. S. BRANCH, New York, N. Y.
(hereinafter called the "Reinsurer")

and

the Companies specified in the respective Interests and Liabilities Agreement to which this Agreement is attached (hereinafter called the "Retrocessionaires").

### ARTICLE 1

1. The Reinsurer undertakes to retrocede and the Retrocessionaire agrees to accept under this Agreement the quota share percentage participation set forth in the Interests and Liabilities Agreement of limits totalling up to Two Million Dollars ($2,000,000) in respect of any one risk covered under policies issued by the Reinsurer coming within the scope of this Agreement. The Reinsurer shall retain net for his own account the remaining twenty per cent (20%). The Reinsurer undertakes to arrange excess of loss protection for account of its Retrocessionaires and itself in respect of losses exceeding $500,000 for the following $1,500,000 any one event.

2. The classes of business covered by this Agreement shall be those normally written in the Reinsurer's Facultative Casualty Department as hereinafter defined and subject to specified exclusions. The reinsurance policies underwritten by the Reinsurer shall be reinsurance of other companies operating in the United States of America, its territories and possessions, retrocessions shall follow the territorial provisions of the policies retroceded.

3. The Reinsurer will issue reinsurance policies covering excess limits in respect of:

   a. Bodily Injury and/or Personal Injury Liability and Property Damage Liability, and

-2-

b. Employers' Liability and/or Workmen's Compensation Insurance, and

c. Liabilities assumed by the Reinsurer under so-called "Umbrella" policies,

of every description with various limits of liability, but no policy shall be ceded under this Agreement where the underlying amounts are less than:

| $10,000 any one person | ) | In respect of Liability |
| $20,000 any one accident or occurrence | ) | for Bodily Injury |
| $ 5,000 any one accident or occurrence | ) | In respect of Liability for Property Damage |

or

$25,000 combined single limit over both Liability for Bodily Injury and Liability for Property Damage.

Where Employers' Liability and/or Workmen's Compensation is written separately no risk shall be ceded under this Agreement where the underlying limits in respect of Employers' Liability and/or Workmen's Compensation are less than:

a. $25,000 each employee, $25,000 any one disaster, Workmen's Compensation and/or Employers' Liability;

b. $25,000 each employee, occupational diseases, with respect to multiple limit policies;

c. $25,000 any one disaster, Workmen's Compensation and/or Employers' Liability and/or each employee, occupational diseases, with respect to combined single limit policies.

Where the Reinsurer writes excess of a combined single limit retention covering Property Damage, Bodily Injury and/or Personal Injury, Workmen's Compensation and/or Employers' Liability, this reinsurance Agreement shall provide for a combined minimum retention of $50,000.

-3-

Where any policy of the underlying insurers, or any policy of another insurance carrier reinsured by the Reinsurer contains an aggregate limit, the coverage provided by the Reinsurer's policy is understood to be in excess of such aggregate limit, and an aggregate limit shall be applied to the amount of excess coverage provided under this Agreement.

4.  This Agreement shall apply up to the limits stated in Article I, 1, irrespective of whether the Reinsurer issues its reinsurance policies covering:

    a.  Liability for Bodily Injury and/or Personal Injury Liability only, or

    b.  Liability for Property Damage only, or

    c.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with separate limits, or

    d.  Liability for Bodily Injury and/or Personal Injury and Liability for Property Damage with one combined single limit, or

    e.  Liability for Employers' Liability and/or Workmen's Compensation Insurance, or

    f.  Liability for Employers' Liability and/or Workmen's Compensation Insurance written in conjunction with Bodily Injury and/or Personal Injury Liability and/or Property Damage with one combined single limit.

5.  The Reinsurer shall be the sole judge as to what constitutes one risk.

6.  The Reinsurer shall have the right to place facultative retrocessions outside of this Agreement when in the judgment of the Reinsurer such retrocessions will be in the interest of Retrocessionaires and such facultative retrocessions shall be deducted from the amount of reinsurance written by the Reinsurer for the purpose of determining the amount of liability which the Reinsurer is obligated to retrocede hereunder.

-4-

## ARTICLE II

1. This Agreement shall specifically exclude coverage in respect of policies of reinsurance issued by the Reinsurer in respect of the following classes or classifications:

    a. Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a policy covering comprehensive or general liability.

    b. Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Agreement to cover, but not by way of limitation, policies issued by the Reinsurer in respect of railroads covering contractual liability or railroads' protective, or owners' protective, or owners' and contractors' protective insurance.

    c. Excess catastrophe reinsurance treaties of insurance companies.

    d. Ocean Marine business when written as such.

    e. Nuclear risks as per attached wording.

    f. Underground Coal Mining - but only as respects Excess Workmen's Compensation.

    g. Operation of Aircraft - but only as respects Excess Workmen's Compensation.

    h. Fireworks Manufacturers - but only as respects Excess Workmen's Compensation.

    i. Fuse Manufacturers - but only as respects Excess Workmen's Compensation.

    j. Explosive Risks - but only as respects Excess Workmen's Compensation.

    k. Risk of War, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause.

-5-

2.   In the event the Reinsurer becomes interested in a profibited risk
     as described above, without his knowledge, in respect of which no
     other reinsurance arrangements are available to the Reinsurer,
     either by an existing insured extending its operations or by an
     inadvertent acceptance by an agent or otherwise of a reinsured
     company, this Agreement shall attach in respect to such prohibited
     risks but only until discovery by the Reinsurer and for not exceeding
     thirty (30) days thereafter.


## ARTICLE III

1.   It is the intention of this Agreement that the Retrocessionaires
     shall share to the extent of their interest in this Agreement the
     fortunes of the Reinsurer.

2.   The liability of the Retrocessionaires on any one risk retroceded
     under this Agreement shall commence and expire simultaneously
     with that of the Reinsurer, it being understood that all retrocessions
     shall be subject to the same clauses and conditions as the original
     reinsurances.

3.   Any inadvertent errors or omissions on the part of the Reinsurers
     shall not relieve the Retrocessionaires of any liability hereunder
     but shall be rectified immediately upon discovery.

4.   The Reinsurer shall have the right at any time to reduce, increase,
     revise, cancel or alter in any manner he may deem advisable
     any retrocession to the Retrocessionaires under this Agreement
     provided that the share of the Retrocessionaires remains within
     the limits stipulated in Article I, 1., of this Agreement and to
     credit or debit the Retrocessionaires with their appropriate share
     of premiums.

- 6 -

### ARTICLE IV

The Reinsurer undertakes to maintain the excess of loss reinsurance for the joint account of itself and the quota share Retrocessionaire mentioned in Article I above and to give the Retrocessionaire all particulars concerning this reinsurance when so requested. Further, the Reinsurer shall consult the Retrocessionaire prior to effecting any change in this reinsurance protection.

The Reinsurer will credit the Retrocessionaire with its pro rata share of all recoveries under this reinsurance and the Retrocessionaire agrees to reimburse the Reinsurer for its pro rata share of the reinsurance premium payable for the said reinsurance .

### ARTICLE V

1. The consideration paid by the Reinsurer to the Retrocessionaires shall be the gross net written premiums (i.e., gross premiums less return premiums) applicable to the share retroceded less the Retrocessionaire's pro rata share of the reinsurance premiums payable by the Reinsurer for the excess of loss reinsurance arranged for joint account of the Reinsurer and the Retrocessionaires as set out in Articles I and IV, less reinsurance premiums ceded in accordance with Article I, 6., and less commission and taxes as follows:

   a. Commissions payable by the Retrocessionaires to the Reinsurer shall be the amount of commission allowed by the Reinsurer plus an overriding commission of seven and one-half (7 1/2%) percent of the gross net written premiums. Such commissions include provision for all commissions, brokerages, premium taxes, Board Exchange or Bureau assessments and for all other expenses of whatever nature excepting loss adjustment expenses.

2. In addition to the foregoing commission, the Retrocessionaires shall pay the Reinsurer a contingent commission of twenty-five per cent (25%) of the net annual profit resulting from this Agreement, such profit being arrived at as follows:

   a. Net Premiums Earned to be:

      (1) The unearned premium reserve at the close of the previous year.

      (2) Plus the net premiums ceded during the current year.

STERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GLARG 803328

- 7 -

    (3)   Less the unearned premium reserve at the close of the current year.

b.  Net Losses Incurred to be:

    (1)  Losses and loss adjustment expenses paid during the current year less recoveries under excess of loss protection for common account.

    (2)  Plus the reserve for outstanding losses and loss adjustment expenses at the close of the current year

    (3)  Less the reserve for outstanding losses and loss adjustment expenses at the close of the previous year.

    (4)  Plus fifteen per cent (15%) of the reserve for outstanding losses at the close of the current year.

    (5)  Less fifteen per cent (15%) of the reserve for outstanding losses at the close of the previous year.

c.  Net Expenses Incurred to be:

    (1)  Commissions allowed as computed in Article V, 1. a.

    (2)  Retrocessionaires' management expenses of seven and one-half per cent (7 1/2%) of net written premium ceded

    (3)  Pro rata share of premium for excess of loss protection for common account

    (4)  Deficit, if any, from the preceding year's contingent commission statement.  No deficit to be carried forward for more than three years.

The amount by which the net premiums earned under a. exceed the total amount of net losses incurred and net expenses incurred under b. and c. shall be the net profit.

This calculation shall be made annually on a calendar year basis.  The calculation of the contingent commission shall be prepared by the Reinsurer

- 5 -

as soon as possible after year-end and shall be forwarded to the Retrocessionaires without delay.

In case of cancellation of this Agreement in accordance with Section 4 a. of Article XII, no contingent commission statement shall be rendered until after the expiration of all risks and the settlement of all losses applying to this Agreement .

### ARTICLE VI

1. The Reinsurer shall furnish the Retrocessionaires as soon as practicable after the close of each quarter with accounts in original currency summarizing:

    (a)  Gross net written premiums.

    (b)  Commissions applicable as mentioned in Article V - 1. a.

    (c)  Overriding commission as mentioned in Article V - 1. a.

    (d)  Loss and loss expense paid.

    The balance due by either party shall be paid within sixty (60) days of the close of the account quarter

2. When rendering the quarterly accounts as per March 31, June 30 and September 30, the Reinsurer shall also report the Retrocessionaires' portion of the unearned premiums and outstanding losses as far as available from original ceding companies

3. As soon as possible after the end of each calendar year, the Reinsurer shall also furnish the Retrocessionaires with the statistical information necessary for their annual statements, e. g. premiums, premiums in force by term and year of expiration, losses paid, loss adjustment expenses, estimate of outstanding losses and unearned premiums by major class.

### ARTICLE VII

1. The Reinsurer alone will settle all claims and such settlements shall under all circumstances be binding on the Retrocessionaires in accord-

- 9 -

ance with the terms of this Agreement.

2. The Retrocessionaires shall likewise pay their pro rata share of all expenses connected with the settlement of losses and any resistance to an negotiations concerning them. The Retrocessionaires shall participate in any sums which may be recovered either as salvage or otherwise and shall benefit proportionately in all discounts.

3. In the event that any loss recoverable by the Reinsurer under this Agreement is in excess of Ten Thousand Dollars ($10,000), the Retrocessionaires shall upon demand forthwith remit their share of such loss.

## ARTICLE VIII

The Retrocessionaires shall at all reasonable times have the right to inspect at the offices of the Reinsurer the records, documents and reports referring to any business transacted under this Agreement.

## ARTICLE IX

1. As a precedent to any right of action hereunder if disputes arise out of this Agreement, as well as differences, concerning the validity of this Agreement, the dispute shall be referred to two arbitrators, one to be chosen by each party. In the event of either party failing to appoint its arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate both arbitrators.

2. Prior to entering into arbitration, the two arbitrators shall appoint an umpire within thirty (30) days of their nomination. In the event of the two arbitrators failing to agree upon the appointment of an umpire within the prescribed thirty (30) days, each of them shall then name three, of whom the other shall decline two and the decision shall be made by drawing lots. The arbitrators, as well as the umpire, must be active or retired, disinterested executive officers of Insurance or Reinsurance Companies.

3. The arbitrator and/or the umpire shall consider this contract as an honorable agreement rather than merely as a legal obligation and they

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 10 -

are relieved of all judicial formalities and may abstain from following the strict rules of law and shall make their decision according to the practice of reinsurance business only.  Each party shall submit its case to the arbitrators within thirty (30) days after their appointment.  The arbitrators shall make their decision within four (4) months after the appointment of the umpire.  The decision of the arbitrators shall be final and binding on both parties and not subject to appeal; but failing to agree, they shall call in the umpire and the decision of the majority shall be final and binding on both parties and not subject to appeal.

4.  Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expense of the arbitration.  Arbitration shall take place in New York, N.Y., unless some other location is mutually agreed upon

### ARTICLE X

1.  In the event of insolvency of the Reinsurer, retrocessions under this Agreement shall be payable by the Retrocessionaires on the basis of the liability of the Reinsurer under the policies retroceded without diminution because of the insolvency of the Company, to the Reinsurer or its liquidator, receiver, or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Reinsurer, and (b) where the Retrocessionaires, with the consent of the ceding company or companies, has assumed such policy obligations of the Reinsurer as direct obligations of the Retrocessionaires to the payees under such policy and in substitution for the obligations of the Reinsurer to such payees

2.  It is further understood and agreed that in the event of the insolvency of the Reinsurer, the liquidator, receiver or statutory successor of the Reinsurer shall give written notice to the Retrocessionaires of the pendency of a claim against the insolvent Reinsurer on the policy retroceded within a reasonable time after such claim is filed in the insolvency proceeding and that during the pendency of such claim the Retrocessionaires may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Reinsurer or its liquidator, receiver or statutory successor.  The expense thus incurred by the Retrocessionaires' shall be chargeable, subject to court approval, against

- 11 -

the Insolvent Reinsurer as part of the expense of the liquidation to the extent of a proportionate share of the benefits which may accrue to the Reinsurer solely as a result of the defense undertaken by the Retrocessionaires.

3. Where two or more Retrocessionaires are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the Retrocession Agreement as though such expense had been incurred by the Reinsurer.

## ARTICLE XI

Alterations to this Agreement shall be made by correspondence or Addendum. The correspondence or Addendum relating to such alterations shall be taken as forming part of this Agreement and become equally binding.

## ARTICLE XII

1. This Agreement shall take effect on the date set forth in the Interests and Liabilities Agreement of which this Agreement forms part and is concluded for an indefinite period

2. This Agreement may be cancelled at Midnight any December 31st by either party giving the other at least three (3) months notice in advance by registered mail.

3. The Retrocessionaires shall continue to participate in retrocessions falling within the terms of this Retrocession Agreement during the said period of three (3) months. .

4. In the event of cancellation of this Agreement, the Reinsurer shall have the option of terminating the liability in force at the date of cancellation as follows:

a.   The Retrocessionaires shall remain liable for all retrocessions in force at date of termination of this Retrocession Agreement until their natural expiry date and for all outstanding losses at date of termination until their final settlement.

STERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 12 -

b.  The Retrocessionaires shall be relieved of all liability hereunder and in consideration of this shall return their proportionate shares of the unearned premiums less commissions and taxes in accordance with Section 1 of Article V to the Reinsurer.

5. Either party may cancel this Treaty forthwith by giving notice in writing by registered letter, should the other party at any time:

a.  Lose the whole or any part of its paid-up capital.

b.  Go into liquidation, whether voluntary or compulsory, or suffer a receiver to be appointed.

c.  Amalgamate with or pass under the control of any other Company or Corporation.

In addition, should any law or regulation become operative which may prohibit or render illegal any part of the arrangements made under this Treaty, the Reinsurer may forthwith terminate this Treaty insofar as it relates to the business to which such law or regulation may apply

GL ARO 003536

## U.S.A.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE.

1. This Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2. Without in any way restricting the operation of paragraph (1) of this Clause, this Reinsurance does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

   I. Nuclear reactor power plants including all auxiliary property on the site, or

   II. Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and "critical facilities" as such, or

   III. Installations for fabricating complete fuel elements or for processing substantial quantities of "special nuclear material", and for reprocessing, salvaging, chemically separating, storing or disposing of "spent" nuclear fuel or waste materials, or

   IV. Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3. Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance of property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate:

   (a) where Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

   (b) where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. Nevertheless on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radioactive contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4. Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named insured specifically insured against.

5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6. The term "special nuclear material" shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7. Reassured to be sole judge of what constitutes:

   (a) substantial quantities, and

   (b) the extent of installation, plant or site.

Note.—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that:

   (a) all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply,

   (b) with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

GL ARG 003327

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE

(1) This reinsurance does not cover any loss or liability accruing to the Company (ies) as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Company(ies) (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I. It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobile, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or
(b) become effective before that date and contain the Limited Exclusion Provision set out above;

provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, Farmers Comprehensive Personal Liability Policies or policies of a similar nature, issued by the Company(ies) on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Company(ies) (new, renewal and replacement) affecting the following coverages: Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had the policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

GL ARO 003328

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V. The inception dates and thereafter of all original policies affording coverage specified in this paragraph (XI), whether new, renewal or replacement, being policies which either

(a) become effective on or after 1st May, 1960, or

(b) become effective before that date and contain the Broad Exclusion Provision set out above; provided this paragraph (B) shall not be applicable to

(i) Garage and Automobile Policies issued by the Company(ies) on New York risks, or

(ii) statutory liability insurance required under Chapter 40, General Laws of Massachusetts, until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverage described in this paragraph (XI), (other than those policies and coverage described in (i) and (ii) above, which became effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in any Nuclear Incident Exclusion Clause-Liability-Reinsurance endorsements prior to February 4, 1960, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are hereby liberal to the holders of such policies.

(4) Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Company(ies), for those classes of policies

(a) described in Class II of paragraph (3) effective before 1st June, 1962, or

(b) described in paragraph (4) effective before 1st March, 1962,

shall by free until their natural expiry dates or 1st June, 1965, whichever first occurs, from the application of the other provisions of this Clause.

(5) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Company(ies) in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions security used on such policies by the Company(ies); provided that if the Company(ies) shall fail to include such Exclusion Provisions in any such policy when it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provision.

1/4/00

CL.ARO 003329

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
NEW YORK, N. Y.

## QUOTA SHARE RETROCESSIONS AGREEMENT FOR
## FACULTATIVE CASUALTY BUSINESS

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY MUTUALLY AGREED, by and between GERLING GLOBAL
REINSURANCE CORPORATION, U. S. BRANCH (hereinafter called the
"Reinsurer"), of the one part, and

GUARANTY REINSURANCE COMPANY, CHICAGO, ILLINOIS

(hereinafter called the "SUBSCRIBING RETROCESSIONAIRE"), of the other
part, that the SUBSCRIBING RETROCESSIONAIRE shall have a 10 % share
in the interests and liabilities of the "RETROCESSIONAIRES" as set forth in
the document attached hereto, entitled "QUOTA SHARE RETROCESSION
AGREEMENT FOR FACULTATIVE CASUALTY BUSINESS." The share of
the SUBSCRIBING RETROCESSIONAIRE shall be separate and apart from
the share of the other RETROCESSIONAIRES and shall not be joined with
those of the other RETROCESSIONAIRES and the SUBSCRIBING RETROCES-
SIONAIRE shall in no event participate in the interests and liabilities of the
other RETROCESSIONAIRES.

This Agreement shall become effective July 26, 1963
and is cancellable in the manner set forth in ARTICLE XII of the attached
Retrocession Agreement.

IN WITNESS WHEREOF the parties hereto, by their respective duly
authorized officers, have executed this Agreement in duplicate, as of the
dates under-mentioned.

At New York, N. Y., this 15th     day of August,          19 63
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
by
GERLING GLOBAL OFFICES INC. - U. S. MANAGER

_____
          Stig Winberg, President
and at Chicago, Illinois      this 30th day of August,       1963
GUARANTY REINSURANCE COMPANY

_____
          John J. Hagerty, President

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003330

## ADDENDUM NO. 1

## DEPOSIT AGREEMENT

entered into this 23rd day of December 1964, between GUARANTY REINSURANCE COMPANY, Chicago, Illinois (hereinafter called the "Retrocessionaire") and GERLING GLOBAL REINSURANCE CORPORATION - U.S. BRANCH, New York, N. Y. (hereinafter referred to as the "Reinsurer").

The provisions contained in this Deposit Agreement shall prevail over any contrary provisions or clauses found in the Quota Share Retrocessions Agreement for Facultative Casualty Business, effective July 25, 1963.

## ARTICLE I

It is agreed that the Retrocessionaire shall deposit an amount not less than the reserve for unearned premiums and outstanding losses (including incurred but not reported losses) for its proportionate share of all cessions of the Reinsurer to the abovementioned Retrocessionaire.  This deposit shall be made at the Retrocessionaire's option in cash or in securities satisfactory to the Reinsurer.

The deposit shall be considered as collateral security to indemnify the Reinsurer for all losses, costs and expenses resulting from failure(s) of the Retrocessionaire to perform fully any of its obligations to the Reinsurer under the above Agreement.

## ARTICLE II

The foregoing deposit shall be adjusted as follows:

The Reinsurer shall furnish the Retrocessionaire as soon as possible after the first day of the last month of each calendar quarter with an estimate of the unearned premiums and outstanding losses as at the end of the calendar quarter concerned.  The Retrocessionaire is then obliged to adjust immediately the deposit to equal the amount of unearned premiums and outstanding losses as at the end of the calendar quarter concerned.

In the event a loss occurs and is not included in the estimated reserve for outstanding losses forwarded to the Retrocessionaire, in accordance with paragraph two of this Article, the Retrocessionaire shall upon request immediately increase the deposit by an amount equal to the Retrocessionaire's share of such loss.

## ARTICLE III

In the event of termination of the abovementioned Agreement, the deposit shall be readjusted quarterly and refunded to the Retrocessionaire or augmented by the Retrocessionaire in proportion to the outstanding liability of the Retrocessionaire at the end of any given quarter.  It shall be entirely refunded to the Retrocessionaire after all liabilities of the Retrocessionaire have been extinguished.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 003331

-2-

## ARTICLE IV

The purpose of the present Agreement shall be to safeguard the surplus position of the Reinsurer in relation to the jurisdiction in the United States in which it is licensed to do business. As soon as it has been established that the Retrocessionaire is duly licensed or approved as Reinsurer in the relative jurisdictions, it is the intention that the present Agreement shall be cancelled and all deposits refunded to the Retrocessionaire.

IN WITNESS WHEREOF this Agreement has been drawn up in duplicate and executed in due form by each of the contracting parties.

Date:                            GUARANTY REINSURANCE COMPANY
Chicago, Illinois

                                 By_____


Date: December 23, 1964          GERLING GLOBAL REINSURANCE CORPORATION - U.S. BRANCH
New York, N. Y.                  By GERLING GLOBAL OFFICES INC., U. S. MANAGER


                                 _____
                                                        EXECUTIVE VICE PRESIDENT

                                 _____
                                                        SECRETARY

TERMINATION ADDENDUM
to the
QUOTA SHARE RETROCESSIONS AGREEMENT
FOR FACULTATIVE CASUALTY BUSINESS
between
GERLING GLOBAL REINSURANCE CORPORATION - U. S. BRANCH
and
GUARANTY REINSURANCE COMPANY
("Retrocessionaire")

IT IS HEREBY UNDERSTOOD AND AGREED the the Retrocessionaire's participation
of ten (10%) percent in attached contract is terminated as of Midnight,
December 31, 1965.

In accordance with ARTICLE XII, paragraph 4 b., the Retrocessionaire shall
be relieved of all liability thereafter and in consideration of this shall
return its proportionate share of the unearned premiums less commissions
and taxes.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized
officers, have executed this Termination Addendum in duplicate.

At New York, N. Y., this 19th day of February, 1965.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH
By GERLING GLOBAL OFFICES INC.,
U. S. MANAGER

_____
Senior Vice President

_____
Secretary

and at Chicago, Illinois, this 17th day of March 1965.

GUARANTY REINSURANCE COMPANY

By _____

# EXHIBIT E

6103

## INTERESTS AND LIABILITIES AGREEMENT

### IT IS HEREBY AGREED

#### by and between

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
New York, N. Y.

#### and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California

(hereinafter referred to as the "SUBSCRIBING RETROCESSIONAIRE")

that the SUBSCRIBING RETROCESSIONAIRE shall have a 7.5% share in the interests and liabilities of the "Retrocessionaire" as set forth in the attached Contract entitled:

FIRST SURPLUS FACULTATIVE CASUALTY
RETROCESSION CONTRACT
Effective: July 1, 1973

This Agreement shall become effective at July 1, 1973, and shall continue in force until terminated in accordance with the provisions of the attached Contract.

The share of the SUBSCRIBING RETROCESSIONAIRE in the interests and liabilities of the Retrocessionaire with respect to said Contract shall be separate and apart from the shares of the other retrocessionaires and the interests and liabilities of the SUBSCRIBING RETROCESSIONAIRE shall not be joint with those of the other retrocessionaires and the SUBSCRIBING RETROCESSIONAIRE shall in no event participate in the interests and liabilities of the other retrocessionaires.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement in duplicate as of the dates undermentioned at:

New York, N. Y., this     25th     day of     October     1973

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at Menlo Park this  28th     day of November     1973

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001561

## GERLING GLOBAL REINSURANCE CORPORATION

### U.S. BRANCH

### FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT

**Effective: July 1, 1973**

between

GERLING GLOBAL REINSURANCE CORPORATION, U.S. BRANCH, New York, New York, including reinsurances to other members of the Gerling Group of insurance companies (hereinafter referred to as the "Company") of the one part

and

THE COMPANIES SPECIFIED IN THE RESPECTIVE INTERESTS AND LIABILITIES AGREEMENT TO WHICH THIS CONTRACT IS ATTACHED (hereinafter referred to as the "RETROCESSIONAIRE") of the other part.

GERLING GLOBAL REINSURANCE CORPORATION
U.S. BRANCH

GL ARG 001562

- 2 -

## ARTICLE I

### Classes of Business Reinsured

By this contract the Retrocessionaire obligates itself to accept as reinsurance of the Company and the Company obligates itself to cede to the Retrocessionaire the whole of its First Surplus Liability, as hereinafter defined, under all policies, binders, contracts, and certificates of reinsurance (hereinafter referred to as "certificates") for casualty excess of loss facultative reinsurance assumed through the Company's casualty facultative department as reinsurance of other companies domiciled in the United States of America, its territories and possessions, and Canada.

The liability of the Retrocessionaire as respects each such cession shall commence and expire obligatorily and simultaneously with that of the Company, subject to the following terms and conditions contained herein.

### ARTICLE II

### Exclusions

This Contract shall specifically exclude coverage in respect of certificates of reinsurance issued by the Company in respect of the following classes or classifications:

A. Aviation Liability risks, except in cases where such Aviation Liability risks are incorporated in a certificate covering Comprehensive or General Liability;

B. Railroads in respect of Bodily Injury Liability to third parties resulting from the transportation of freight and passengers only. It is agreed that it is the intention of this Contract to cover, but not by way of limitation, certificates issued by the Company in respect of railroads covering Contractual Liability or Railroads' Protective, or Owners' Protective, or Owners' and Contractors' Protective Insurance;

C. Obligatory Reinsurance Treaties of insurance companies;

D. Ocean Marine business when written as such;

E. Directors' and Officers' Legal Liability;

F. Underground Coal Mining - but only as respects Excess Workmen's Compensation;

GL ARG 001563

- 3 -

G. Operation of Aircraft - but only as respects Excess Workmen's Compensation;

H. Fireworks Manufacturers - but only as respects Excess Workmen's Compensation;

I. Fuse Manufacturers - but only as respects Excess Workmen's Compensation;

J. Explosive Risks - but only as respects Excess Workmen's Compensation;

K. Risk of war, bombardment, invasion, insurrection, rebellion, revolution, military or usurped power or confiscation by order of any government or public authority as excluded under a standard policy containing a standard war exclusion clause;

L. Nuclear risks as defined in the "Nuclear Incident Exclusion Clause - Liability - Reinsurance" which is attached to this Contract.

The above-mentioned exclusions other than C, D, K, and L shall not apply to reinsurances covering original insureds regularly engaged in other operations which involve only incidental operations in any of the above exclusions. For purposes of this Contract, "incidental operations" shall be deemed to mean that not more than 10 % of the annual revenue from all operations is derived from operations in any of the above exclusions.

In the event the Company becomes interested in a prohibited risk other than Exclusion L described above, without its knowledge, in respect of which no other reinsurance arrangements are available to the Company, either by an existing insured extending its operations or by an inadvertent acceptance by an agent or otherwise of a reinsured company, this Contract shall attach in respect to such prohibited risks but only until discovery by the Company and for not exceeding thirty (30) days thereafter.

### ARTICLE III

Definition of First Surplus Liability

A. The term "First Surplus Liability" shall mean that portion of the gross liability of the Company as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured which exceeds the amount of its net retention.

GL ARG 001564

- 4 -

B.   The Company is granted permission to carry excess of loss reinsurance covering the classes of business covered hereunder, recoveries under which shall inure solely to the benefit of the Company, and such reinsurance shall not reduce the Company's "net retention" for purposes of this Contract. It is warranted, however, that the Company's pure net retention under such excess of loss reinsurance shall not be less than $250,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

C.   It is understood that multiple layers of excess facultative reinsurance written on the same risk and for the same line of business will be aggregated for purposes of determining gross liability for which cessions under this reinsurance are based.

### ARTICLE IV

#### Retention and Limit

A.   The Company's net retention with respect to business ceded to this Contract shall not be less than Two Hundred and Fifty Thousand Dollars ($250,000) as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured. Cessions to the Contract shall not exceed an amount equal to the Company's net retention hereunder as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured, and shall be subject to a maximum cession to the Contract of $2,500,000 as respects each and every accident and/or occurrence and/or in the aggregate, any one original insured.

B.   If, in the underwriting judgement of the Company, it appears to be to the benefit of the Retrocessionaire, the Company has the right to restrict allotments with respect to any one cession hereunder in such a manner that the liability of the Retrocessionaire thereon shall be less than the maximum provided for in this Contract.

### ARTICLE V

#### Loss Adjustment or Claims Expense

A.   In the event of loss hereunder, the Retrocessionaire shall bear its proportionate share of any allocated adjustment expenses incurred by the Company, whether on its own account or as reimbursement to companies reinsured by the Company for adjustment of expenses under

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001565

- 5 -

the terms of its reinsurance certificate. Such expenses shall include expenses of litigation, if any, and all other allocated loss expenses of the Company and/or reinsured company (except those of their salaried employees and home office expenses) incurred in connection therewith. As respects expenses incurred by the Company for internal claims auditing purposes, only expenses in excess of $1,000 as respects any one loss will be allocated to this Contract and subject to recovery hereunder.

B.  The Retrocessionaire's contribution for such adjustment expenses shall be in addition to the Retrocessionaire's liability set forth in Article IV.

### ARTICLE VI

## Ceding Commission

The Company shall receive a ceding commission equal to the original acquisition cost on all written premium ceded under the Contract plus an override of 7.5 % on all earned premiums under the Contract. Return commission shall be allowed on return premiums at the same rate previously allowed. It is expressly agreed that this ceding commission includes provision for all dividends, commissions, brokerages, taxes, board exchange or bureau assessments, and for all other expenses of whatever nature (excepting loss adjustment expenses).

### ARTICLE VII

## Reports and Remittances

A.  Quarterly

1.  Within 60 days following the end of each calendar quarter, the Company shall provide a report to the Retrocessionaire, on forms mutually acceptable, setting forth:

    a) Net written premiums ceded;
    b) Ceding commission broken down between acquisition cost on ceded written premium and override on earned premium;
    c) Net paid losses.

    The balance, if any, of (a) less (b) and (c) shall be remitted by the Company concurrently with the report. Any balance due the Company shall be remitted by the Retrocessionaire as promptly as possible following receipt and verification of the Company's report. It is agreed, however, that when the amount due from the Retrocessionaire

GL ARG 001566

- 6 -

as a result of loss or losses arising out of or caused by one event exceeds $50,000, the Retrocessionaire will, at the option and upon the demand of the Company, pay by special remittance the amount due immediately upon receipt of a special loss account from the Company containing all relevant details in connection with the loss or losses.

2. Within sixty (60) days following the end of each calendar quarter, the Company shall compute and report summary figures for ceded unearned premium and outstanding losses at the end of the quarter.

B. Annually

The Company shall furnish annually at December 31 to the Retrocessionaire such information as may be required by the Retrocessionaire for preparation of its annual convention statements.

## ARTICLE VIII

Loss Settlement

A. Losses shall be reported as hereinbefore provided except that the Company shall, as promptly as possible, advise the Retrocessionaire of specific cases involving unusual circumstances or large loss possibilities.

B. All payment of claims made by the Company will be binding upon the Retrocessionaire. However, the Retrocessionaire may, at its own expense, participate in an advisory capacity in the defense of any claim.

C. The Retrocessionaire shall receive its proportionate share of all salvages received by the Company.

## ARTICLE IX

Original Conditions

All reinsurance falling under this Contract shall be subject to the same rates, terms, conditions and waivers, and to the same modifications, alterations and cancelments as the respective reinsurance certificate of the Company. The Retrocessionaire shall be credited with its exact proportion of the premiums received by the Company prior to any disbursement of dividend.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

- 7 -

## ARTICLE X

### Errors and Omissions

The position of the Company shall not be prejudiced by any error or omission in reporting cessions or cancellations under this Contract or in claiming losses collectible hereunder.

## ARTICLE XI

### Access to Records

The Retrocessionaire by its duly appointed representatives shall have the right at any reasonable time to examine all papers in the possession of the Company referring to business effected hereunder.

## ARTICLE XII

### Insolvency

A. In the event of the insolvency of the reinsured Company, this reinsurance shall be payable directly to the Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Company without diminution because of the insolvency of the Company or because the liquidator, receiver, conservator or statutory successor of the Company has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Retrocessionaire of the pendency of a claim against the Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Retrocessionaire within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Retrocessionaire may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses that it may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Retrocessionaire shall be chargeable, subject to the approval of the Court, against the Company as part of the expense of the conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Retrocessionaire.

B. Where two or more retrocessionaires are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of this Contract as though such expense had been incurred by the Company.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001568

- 8 -

C. It is further understood and agreed that, in the event of insolvency of the Company, the reinsurance under this Contract shall be payable directly by the Retrocessionaire to the Company or to its liquidator, receiver or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the Contract specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the Retrocessionaire with the consent of the direct insured or insureds has assumed such policy obligations of the Company as direct obligations of the Retrocessionaire to the payees under such policies and in substitution for the obligations of the Company to such payees.

## ARTICLE XIII

### Arbitration

A. As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising with respect to this Contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration. One Arbiter shall be chosen by the Company, the other by the Retrocessionaire, and an Umpire shall be chosen by the two Arbiters before they enter upon arbitration, all of whom shall be active or retired disinterested executive officers of insurance or reinsurance companies. In the event that either party should fail to choose an Arbiter within 30 days following a written request by the other party to do so, the requesting party may choose two Arbiters who shall in turn choose an Umpire before entering upon arbitration. If the two Arbiters fail to agree upon the selection of an Umpire within 30 days following their appointment, each Arbiter shall name three nominees, of whom the other shall decline two, and the decision shall be made by drawing lots.

B. Each party shall present its case to the Arbiters within 30 days following the date of appointment of the Umpire. The Arbiters shall consider this Contract as an honorable engagement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of the Arbiters shall be final and binding on both parties but failing to agree, they shall call in the Umpire and the decision of the majority shall be final and binding upon both parties.

C. If more than one retrocessionaire is involved in the same dispute, all such retrocessionaires shall constitute and act as one party for purposes of this Article and communications shall be made by the Company to each of the

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001569

- 9 -

retrocessionaires constituting one party, provided, however, that nothing herein shall impair the rights of such retrocessionaires to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the retrocessionaires participating under the terms of this Contract from several to joint.

D. Each party shall bear the expense of its own Arbiter, and shall jointly and equally bear with the other the expense of the Umpire and of the arbitration. In the event that the two Arbiters are chosen by one party, as above provided, the expense of the Arbiters, the Umpire and the arbitration shall be equally divided between the two parties.

E. Any arbitration proceedings shall take place at New York, New York.

## ARTICLE XIV

### Unlicensed Retrocessionaires

Retrocessionaires not registered or licensed in the State of New York agree to receive premiums on an earned basis and to deposit with the Company the proportionate share of outstanding losses in either cash, securities or Letter of Credit acceptable to the Company. Such request shall be completed within ten (10) days after notification.

## ARTICLE XV

### Commencement and Termination

A. This Contract shall become effective at 12:01 A.M., July 1, 1973, with respect to business issued or renewed at or after that time and date, and shall remain in force until terminated as provided in paragraph B.

B. Either party may terminate this Contract at any December 31 by giving to the other party not less than ninety (90) days prior notice by registered letter, stating the effective time and date of termination.

C. Unless otherwise mutually agreed, reinsurance hereunder shall remain in full force and effect on all business in force at the effective time and date of termination until expiration, cancellation, or next premium anniversary date of such business, but in no event exceeding twelve (12) months following the date of termination. However, the Company may, by notifying the Retrocessionaire prior to the date of termination, exercise

GL ARG 001570

- 10 -

the option of reassuming the in force liability at the date of termination
Should this option be exercised, the Retrocessionaire shall return to the
Company the unearned premium at the date of termination, computed on
a monthly pro rata basis, less a ceding commission equal to the following:

Acquisition cost, determined by dividing the commission paid for the last
twelve (12) months by the premiums written for the last twelve (12) months.

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001571

<u>U.S.A.</u>    NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE
(Approved by Lloyd's Underwriters' Fire and Non-Marine Association)

(1) This reinsurance does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this reinsurance all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.***

    I. It is agreed that the policy does not apply under any liability coverage, to { *injury, sickness, disease, death or destruction* } with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
        (a) become effective on or after 1st May, 1960, or
        (b) become effective before that date and contain the Limited Exclusion Provision set out above;
    provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this reinsurance the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.***

It is agreed that the policy does not apply:
    I. Under any Liability Coverage, to { *injury, sickness, disease, death or destruction* } { *bodily injury or property damage* }
        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to { *immediate medical or surgical relief* } { *first aid,* } to expenses incurred with respect to { *bodily injury, sickness, disease or death* } { *bodily injury* } resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to *injury, sickness, disease, death or destruction* bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the *injury, sickness, disease, death or destruction* arises out of the furnishing bodily injury or property damage by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only to *injury to or destruction of property at such nuclear facility.* property damage to such nuclear facility and any property thereat.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means,

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*With respect to injury to or destruction of property, the word "injury" or "destruction"* "property damage" includes all forms of radioactive contamination of property, *includes all forms of radioactive contamination of property.*

V. The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4) Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurance Conference of Canada.

---

*NOTE.* The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing these words.

21/9/67
N.M.A. 1590



## *Argonaut Insurance Company*

**HOME OFFICE: 250 MIDDLEFIELD ROAD • MENLO PARK, CALIFORNIA 94025**

MAR 25 1976

*Cable: Argonaut*

March 23, 1976

Mr. Bernd Vogelsang
Vice President/Secretary
Gerling Global Reinsurance Corporations
717 Fifth Avenue
New York, NY 10022

Re: First Surplus Facultative Casualty
Retrocession Contract 1975
Gerling Global Reins. Co., Toronto
Gerling Global Reins. Corp., U.S.
Your Ref: #6103, Our Ref: QS-73

WE ARE PLEASED TO ENCLOSE:

_____ The signed Interests and Liabilities Agreement

_____ The signed Contract Wordings

____X____ The signed Endorsement/Addendum No. **Termination**

_____ The signed Duplicate

_____ The signed Binders/Slips

_____ The signed copies of our Certificate

Yours very truly,

CArol C. Seyfried, Property Facultative Reis

GL ARG 001558

<u>CANCELLATION ADDENDUM</u>

<u>INTERESTS AND LIABILITIES AGREEMENT</u>

IT IS HEREBY AGREED by and between GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH, New York, N. Y., and

ARGONAUT INSURANCE COMPANIES, Menlo Park, California (hereinafter referred to as the "Subscribing Retrocessionaire") that the Subscribing Retrocessionaire's 7.5 % ( seven point five percent -------------- ) share in the interests and liabilities of the "Retrocessionaire", as set forth in the attached Contract entitled "FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT", shall be cancelled effective at midnight December 31, 1975.

In accordance with Article XV, paragraph C, second sentence, the Subscribing Retrocessionaire shall be relieved of all liability for business in force at the date of termination against return of the unearned premium, but shall be liable for all losses occurring on or before the date of termination until their final settlement.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At New York, N. Y., this   16th      day of   March,        1976

GERLING GLOBAL REINSURANCE CORPORATION, U. S. BRANCH
By  GERLING GLOBAL OFFICES INC., U. S. MANAGER

_____          _____
Vice President                    Vice President & Secretary

and at *Menlo Park Ca.* this *22ND* day of *March* 1976

*Carol C. Syfried*

GERLING GLOBAL REINSURANCE CORPORATION
U. S. BRANCH

GL ARG 001559

**GERLING**
GLOBAL REINSURANCE COMPANY

### CANCELLATION ADDENDUM

### INTERESTS AND LIABILITIES AGREEMENT

IT IS HEREBY AGREED by and between GERLING GLOBAL REINSURANCE COMPANY, Toronto, Ontario, Canada and ARGONAUT INSURANCE COMPANIES, Menlo Park, California, U.S.A. (hereinafter referred to as the "SUBSCRIBING RETROCESSIONAIRE") that the SUBSCRIBING RETRO-CESSIONAIRE'S 7.5% (seven point five percent) share in the interests and liabilities of the "Retrocessionaire", as set forth in the attached Contract entitled "FIRST SURPLUS FACULTATIVE CASUALTY RETROCESSION CONTRACT", shall be cancelled effective at midnight December 31, 1975.

The Subscribing Retrocessionaire shall be relieved of all liability for business in force at the date of termination but shall be liable for all losses occurring on or before the date of termination until their final settlement.

IN CONSIDERATION OF THE FOREGOING, the Subscribing Retrocessionaire shall return to the Company 7.5% (seven point five percent) of the ceded unearned premium under this Contract at midnight December 31, 1975 less the previously paid ceding commission.

IN WITNESS WHEREOF the parties hereto, by their respective duly authorized officers, have executed this Addendum, in duplicate, as of the dates undermentioned.

At Toronto, Ontario, Canada, this 5th day of March, 1976

GERLING GLOBAL REINSURANCE COMPANY

_____            _____
Assistant Vice-President            Senior Vice-President & Sec.-Treas.

and at Menlo Park, California, U.S.A., this 22ND day of March, 1976

ARGONAUT INSURANCE COMPANIES

_____            _____

GL ARG 001560